1  DONNA R. ZIEGLER [142415]
   County Counsel
2  By:  MARY ELLYN GORMLEY  [154327]
   Assistant County Counsel
3  SAMANTHA STONEWORK-HAND [245788]
   Associate County Counsel
4  Office of County Counsel
   County of Alameda
5  1221 Oak Street, Suite 450
   Oakland, California 94612
6  Telephone:   (510) 272-6700

7  Attorney for County of Alameda, Alameda,
   Board of Supervisors, Wilma Chan,
8  Nate Miley and Keith Carson

9

10

11                    UNITED STATES DISTRICT COURT

12                    NORTHERN DIVISION OF CALIFORNIA

13

14  JOHN TEIXEIRA, STEVE NOBRIGA,          Case No.: CV12-3288 KAW
    GARY GAMAZA, CALGUNS
15  FOUNDATION (CGF), INC., SECOND         **REQUEST FOR JUDICIAL NOTICE IN**
    AMENDMENT FOUNDATION (SAF), INC.,      **SUPPORT OF DEFENDANTS'**
16  and CALIFORNIA ASSOCIATION OF          **MOTION TO DISMISS**
    FEDERAL FIREARMS LICENSEES (Cal-
17  FFL),                                  DATE: October 18, 2012
                                           TIME: 11:00 a.m.
18                                         DEPARTMENT: Ctrm 4, 3rd Floor

19                 Plaintiffs,

20        v.

21  COUNTY OF ALAMEDA, ALAMEDA
    BOARD OF SUPERVISORS (as a policy
22  making body), WILMA CHAN in her official
    capacity, NATE MILEY in his official
23  capacity, and KEITH CARSON in his official
    capacity,
24
25                 Defendants.

26

27

28

1

## REQUEST FOR JUDICIAL NOTICE

2       The Defendants County of Alameda, Alameda Board of Supervisors, and Wilma

3   Chan, Nate Miley and Keith Carson in their official capacities ("Defendants"), hereby

4   request that the Court take judicial notice of the following documents attached as

5   Exhibits A through E.  This request is made pursuant to Rule 201 of the Federal Rules

6   of Evidence and the authorities cited below.  This request is made in connection with

7   Defendants' motion to dismiss Plaintiff's Complaint for Damages, Injunctive Relief

8   and/or Declaratory Judgment (Doc. #1.)

| Exhibit | Description |
|---------|-------------|
| A | West County Board of Zoning Adjustments, Meeting Minutes of December 14, 2011, approved January 25, 2012 |
| B | Resolution No. Z-11-70 of the West County Board of Zoning Adjustments Adopted at the Hearing of December 14, 2011 Concerning Variance and Conditional Use Permit, PLN-2001-00096 ` |
| C | Alameda County Board of Supervisors Minute Order dated February 28, 2012 |
| D | Alameda County Ordinances, Sections 17.54.130-131, 17.54.140, 17.54.670, 17.54.710 and 17.54.820 |
| E | Declaration of Albert Lopez and Exhibit 1(email from San Lorenzo Village Holmes Association Administrator Kathy Martins and attachments) |

## MEMORANDUM OF POINTS AND AUTHORITIES

On a motion to dismiss, a court may take judicial notice of matters of public

record in accordance with Federal Rule of Evidence 201 without converting the motion

to dismiss to a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d

668, 688-89 (9th Cir. 2001) (citing *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d

1279, 1282 (9th Cir. 1986).  Courts may take judicial notice of documents that are

"referenced in the complaint," and their "authenticity is unquestioned."  Fed. R. Evid.

201(b); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (stating "a court may

consider a writing referenced in a complaint but not explicitly incorporated therein if the

complaint relies on the document and its authenticity is unquestioned").  As explained

further below, the Court may take judicial notice of Exhibits A through D.

1    *Exhibits A through C, E*:  As stated in *Lee*, on a motion to dismiss, the court may

2    take judicial notice of "undisputed matters of public record."  *Lee*, 250 F.3d at 690.

3    Undisputed matters include the "records and reports of administrative bodies."  *United*

4    *States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting *Interstate Nat. Gas Co. v.*

5    *S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).  Exhibits A through C are official

6    government records created by the public agencies West County Board of Zoning

7    Adjustments and the Alameda County Board of Supervisors.  Exhibit E is a declaration

8    from the Planning Director of the Alameda County Community Development Agency,

9    Planning Department attaching an email and related attachments kept in the course of

10   regularly conducted business activity.  These records are undisputed, easily verifiable,

11   and referenced throughout the Complaint.  (*See* Complaint for Damages, Injunctive

12   Relief and/or Declaratory Judgment at ¶¶ 30, 32, 33, 37.)

13       *Exhibit D*:  Exhibit D is comprised of several Alameda County ordinances related

14   to land use.  Municipal ordinances are proper subjects for judicial notice.  *Santa Monica*

15   *Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006); *see*

16   *also Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("[C]ity ordinances fall

17   within the category of 'common knowledge' and are therefore proper subjects for judicial

18   notice.").

19       For the foregoing reasons, Exhibits A through E may be properly considered by

20   the Court in ruling on Defendants' motion to dismiss.

21

22   DATED:       September 26, 2012        DONNA R. ZIEGLER,
                                            County Counsel, County of Alameda
23

24

25                                   By _____ /s/ *Mary Ellyn Gormley* _____
                                            MARY ELLYN GORMLEY
26                                          Assistant County Counsel

27                                          Attorneys for Defendants

28

`

`

`

**EXHIBIT A**

MINUTES OF MEETING
WEST COUNTY BOARD OF ZONING ADJUSTMENTS
DECEMBER 14, 2011
(APPROVED JANUARY 25, 2012)

The Regular Meeting was held at the hour of 1:30 p.m. in the Alameda County Building, 224 West Winton Avenue, Hayward, California, 94544.

REGULAR MEETING: 1:30 p.m.

MEMBERS PRESENT: Chair, Dawn Clark-Montenegro; Vice Chair, Kathy Gil; Members, Jewell Spalding, Frank Peixoto, and Jeff Moore.

MEMBERS EXCUSED: None.

OTHERS PRESENT: Phil Sawrey-Kubicek, Senior Planner; County Counsel, William Fleishhacker; Code Enforcement staff; and Yvonne Bea Grundy, Recording Secretary.

There were approximately 43 people in the audience.

CALL TO ORDER: The meeting was called to order by the Chair at 1:34 p.m.

ANNOUNCEMENTS BY THE CHAIR: The Chair made no special announcements.

**Neighborhood Preservation Ordinance Abatement Hearing:** There were no Agenda items scheduled for the Neighborhood Preservation Ordinance Hearing Calendar.

**Alcoholic Beverage Sale Regulations Administrative Hearings:** There were no Agenda items scheduled for the Alcoholic Beverage Sale Regulations Administrative Hearing Calendar.

OPEN FORUM: Open forum is provided for any members of the public wishing to speak on an item not listed on the agenda. Each speaker is limited to three (3) minutes. No one requested to be heard under open forum.

CONSENT CALENDAR:

There were no items on the Consent Calendar.

REGULAR CALENDAR

1. **AT&T MOBILITY / CREEKSIDE CENTER PK II, CONDITIONAL USE PERMIT, PLN-2011-00051** - Application to allow a telecommunications facility, in a "FA" (Freeway Access corridor within the Ashland Cherryland Business Specific) District, located at 20600 Mission Boulevard, north east of Mattox Road, unincorporated Cherryland area of Alameda County, designated Assessor's Parcel Number: 414-0056-020-03. (Continued from September 28, October 26 and November 16, 2011). **Staff Planner: Richard Tarbell.**

The staff recommendation was approval. Public testimony was opened,

Agent Pat Kelly was present on behalf of AT&T Mobility. There is an existing AT&T facility mounted on a light pole, and supporting equipment cabinetry at the site. The proposed facility is to be placed on

another light pole on the property. The installation will consist of three long term evolution antennas and raydome. The equipment area will be further extended 10 feet by 16 feet. The new antennas will improve indoor and outdoor service in the area. Initial Board questions were as follows:

- Were coverage maps prepared for the proposed facility
- Is it possible for the new facility can be combined with an existing facility
- What is the light pole height of the proposed facility
- Will further landscaping be added to the site; if so how will it be maintained

Ms. Kelly said she worked with staff to develop the most stealth design. The existing AT&T facility at the site cannot accommodate further antennas. Coverage maps had not been prepared because the new antennas will accommodate future evolution, and increased peak load. Three frequencies provide faster service. The unencumbered lamp pole was the best choice. Staff explained the existing landscaping will screen the cabinet enclosure area. Condition #20 can be modified to require further landscaping.   Public testimony was closed.

**Member Spalding motioned to accept the staff recommendation of approval with the following modification to Condition #20. Further landscaping shall be added to what exists at the cabinet area.   All landscaping existing and new shall continue to be watered and maintained in a living state.**

**The Vice Chair seconded the motion.  The motion to approve PLN, 2011-00051 AT&T Mobility / Creekside Center passed 5/0.**

        2.        **VALLEY GUNS & AMMO / STEVE NOBRIGA, CONDITIONAL USE PERMIT, VARIANCE, PLN-2011-00096** –   Application to allow the operation of a gun shop and operation at a distance less than 500 feet from a residentially zoned district where 500 feet is required, in an "FA" (Freeway Access within the Ashland, Cherryland Business District), located at 488 Lewelling Boulevard, south side, approximately 140 feet west of Hesperian Boulevard, in the unincorporated Ashland area of Alameda County, designated Assessor's Parcel Number: 413-0097-001-03. **Staff Planner: Richard Tarbell.** (Continued from November 16, 2011.)

Staff stated the application had been continued to obtain further information and review materials submitted by the Applicant. The recommendation was denial based on the Zoning Ordinance minimum distance requirement.   The Ordinance states distance is measured from the premises to Residentially Zoned property.  The staff interpretation of premise is from the building to Residential Zoned property line. In this case the distance is 445 feet.  The distance from the front door of the use to the property line is 492 feet.  The distance from the property line of the gun shop to the property line of the residential district is 432 feet.   Distance measurements presented by the Applicant conducted by the County Surveyor were from the front door of the gun shop to the front door of a premise. This does not comply with the Ordinance as to how measurements are to be conducted to the Residential Zoned District. Counsel added County Ordinances are subject to interpretation. Perhaps there is discretion to interpret the Ordinance differently. The authority to interpret the Ordinance is conducted by the decision making bodies. In this case the Board of Zoning Adjustments or the Board of Supervisor's if appealed. The importance of the 500 foot requirement is that if not met. A variance would be required. If a variance is then required, necessary findings must be made.   If the variance findings cannot be met, the conditional use could not be supported.

The Board asked the following initial questions:

- What is the zoning history of the area surrounding the site
- Does the Ordinance provide a definition of "premises"

Staff said the zoning history on Albion Avenue has always been Residential. The measurement was taken from the building to the rear property line of the Residential Zoned district. The nearest property was used. This is a property on Albion Avenue. Others may believe special circumstances are present because of the location of the freeway. When the Applicant inquired at the Permit Center, initially staff was unsure how to interpret measurement methodology, resulting in a door to door notation with a question mark. Ordinance interpretation has now been confirmed. Measurement is from building wall to property line. The Ordinance does not provide a definition of "premises". The Dictionary defines premises as land and the building on it or land and part of a building. In this case all measurements are less than 500 feet. Public testimony was opened.

The Applicant, Mr. Teixeira was present. He told the Board Walmart does not sell ammo. Big 5 Sporting Goods sells guns and ammo. However they have a different business model. The proposed business will sell antique guns, and offer hand gun safety and maintenance classes in addition to hunting safety. Classes will show users how lock and secure weapons. The Boy Scouts use this training to obtain their Merit Badges. Specialized sporting good weapons will be sold. Training for trap and skeet shooting will be offered. Consignment sales will be available. This provides proper disposal when someone passes away, as opposed to garage sales. Big 5 Sporting Goods does not offer that service. The shop will also offer gun smith and cleaning services. The gunsmith currently does a lot of work for the Sheriff's Department. Mr. Teixeira has applied for a $25,000 dollar façade improvement loan through Redevelopment. Additional landscaping will be added, and the exterior cleaned. He does not believe the distance is less than 500 feet to the closest Residential Zoning. The 880 Freeway, a 40 foot sound wall, eight lanes of Hesperian Boulevard, the paint store, a cyclone fence, and sound wall block direct travel to the gun shop from the property on Albion Avenue. Mr. Teixeira spoke to the property owner. He does not object to the use. Board questions were as follows:

- When did the Applicant close his prior shop
- Will the business partners form a corporation
- How was this location selected
- Did the Applicant hire an outside surveyor
- Is there a County maintained wall between Hesperian Boulevard and Albion Avenue
- Is there a wall behind the auto store
- How many people on the signed petition live in the immediate area

Mr. Teixeira sold his business in 2006. His wife wanted him to retire. He discovered making bird houses is boring. He will form a corporation with John Teixeira and Steve Nobriga. Another location in Castro Valley was identified. The site was stocked with merchandise. However it is located behind a park owned by Hayward Area Recreation Department. The location did not meet the 500 foot distance requirement. He then returned to the Planning Department to confirm the current location would be acceptable. The Planner on Duty did a Google search and told him the site met the 500 foot distance requirement. The next step was to pay $450 dollars in fees and meet with a Senior Planner, and Fire Department. The Fire Department had no objections as long as they were not using black powder at the site. The Sheriff's Department representative said once they obtain an approved permit they will show how doors and windows must be sealed and locked. At the meeting Planning provided instructions to measure from the front door to the property line of Walmart, Usher Inn, Big 5 Sporting Goods, and the

petition of 1,400 approval signatures was submitted. Over 200 people are law enforcement. They know the value. This is an invaluable service to the community. There is a benefit to providing a legal means for people to obtain guns.

Eight people testified in support of the Application. Most currently live in the area or were once local residents. They had worked for or conducted business with the Applicant over the years. Points raised were the shop would offer invaluable services such as, fire arms education. Safety training for community members and young hunters will also be provided. The Boy Scouts can use the training to obtain Merit Badges. Consignment gun sales will provide a safe gun disposal method for widows or seniors. This prevents guns passing hands at garage sales. The shop will conduct background checks. The shop will also offer gun smith services, and be an asset to the community. Over time many businesses in the area have closed. There is no official definition of the 500 foot rule. The term common sense has been used in the staff report. There will always be people who do not believe in guns. However guns will be around. There should be a place to learn their proper use, and to obtain them legally. If a gun shop is conducting illegal operations it will be shut down, as has been proven by the former shop, Traders. The Applicant has conducted business in the community for many years. He has been fair and honest.

Three local residents testified in opposition to the Application. Some of the points raised were the people present at the hearing would likely use common sense. However guns may be obtained legally or stolen. They can be used in the commission of crimes. The community does not need more guns in circulation. Society on the whole has not been responsible, as of late. More access to guns means exposure to people in the San Lorenzo community. The stores in the vicinity that already sell guns like Walmart already have problem issues, every week. This use will bring people from out of town. In addition there are several public and private schools within 500 feet, Saint John's Catholic School, a Chinese Lutheran School, and San Lorenzo High School. The Ordinance lists schools as a use that should not be within 500 feet because this is a sensitive segment of the population. The area is heavily trafficked with children. All of the staff measurements are over 500 feet. The Board should uphold the Ordinance. The shop appears to be a destination. People will seek it out. The use should be placed in a more suitable location. Public testimony was closed.

**The Chair called for a 5 minute recess. The hearing resumed at 7:45 p.m.**

Member Peixoto said everything hinges on distance measurements and the variance. The average distance from the five properties on Via Del Rio is 464.82 square feet from the gun shop. The County Surveyor calculates an average distance of 505.6 feet. There is a 40 foot difference. Staff responded the County Surveyor measured from door to door. County staff has established this not the proper method. The correct methodology is from the premises to the property line. Counsel said the Board may want to organize their discussion by considering three potential things. Is a variance is required. Staff has presented a rationale a variance is required. The disagreement appears to be from where the measurement should be taken. The second consideration could be is a variance not required. The third consideration is then the use permit. If the Board decides a variance is indeed required. Findings to support approval or denial are then required. The Board may decide to rely on testimony and information submitted by the Applicant such as path of travel when considering findings. Member Peixoto did not believe Google should not carry the same weight as the County Surveyor. Counsel said again, what is important is the points at which measurements are taken. Member Spalding said the definition of premise is important. This will determine the points at which measurements are taken. Typically when using the term premise it is within the context of the Alcohol Ordinance, from property line to property line. Member Peixoto said if he measured, he would measure from property line to property line. Counsel further clarified the only way to interpret the measurement as being greater than

500 feet is if measured from front door of the use to the building or residence. Member Moore said in his opinion a variance is required.  The Applicant may have a chance to make variance findings based on extenuating circumstance.  A finding that  the Freeway to the south and Hesperian Boulevard creates a barrier to the residential parcels, may be found.  You cannot walk across the Freeway, and a fence. If the rational holds that the attorney presented.  You must travel the street to get to the use location.  This well exceeds 500 feet. Member Spalding said in her opinion Big 5Sporting Goods, and another gun store are within 500 feet of the proposed use. Member Moore responded the proposed location is on a multi tenant parcel.  From his standpoint it is located far enough away.  Counsel clarified that if a finding was proposed it must be based on the distance from the Residential District.  The Board asked the Sheriff Officer present if unwanted guns could be dropped at a Sheriff station.  The Officer confirmed a firearm can by dropped off at a Sheriff station.  It would then be destroyed.  Further Board questions for staff were as follows:

- What is the measurement from the property line / parking lot of Big 5 to the Residential District
- What is the distance to the property line of the home on Via Del Rio

Staff said the home closest to the wall nearest the paint store is on Albion Avenue.  The distance from the front door of the use to the property line on Via Del Rio is 492 feet.  A measurement was not taken from the property line of Big 5 Sporting Goods because the established method is from the front door of the use considered to the Residential property line.  Member Moore added the language in the Ordinance "District" denoted property line, in his opinion when referring to Residential. Regarding a commercial site, premise is the face of the building.  In the absence of a clear definition, in his opinion the intent is to provide a buffer to things such as a school.  In making a finding, the Freeway is there.  In turn you have to make a reasonable path.    Member Spalding said consideration of detriment of the use must be considered.  Traditionally distance is measured in a consistent way.  The Vice Chair responded, the Alcohol Ordinance criteria, is not interchangeable.  The Alcohol Ordinance has a different purpose, to prevent multiple outlets from opening on top of one another.  This is a different Ordinance.  Member Spalding said consistence in methodology was her point.  The use is what is to be considered. A property can be sold. A variance goes with the property.  An application cannot be conditioned upon one person's approval.  Member Moore agreed with her premise, the use is what is to be considered.  A well run shop may not be a detriment.  The Chair said there was consensus among the Board, a variance was needed.

*Member Moore motioned to approve the variance based on special circumstance present at the site. The 880 Freeway and physical obstructions are present between the residential home on Albion Avenue and the premise.* Regarding Finding #1, the presence of the 880 Freeway to the south of the site creates a barrier. The physical building, Hesperian Boulevard, sound wall and home on Albion Avenue are a physical obstruction between and do not allow a straight line to the property.   Regarding Finding #2, granting the variance would not be special privilege.  The presence of the 880 Freeway to the south of the site creates a barrier. The physical building, Hesperian Boulevard, sound wall and home on Albion Avenue are a physical obstruction between and do not allow a straight line to the property.   Regarding Finding #3 the use will not be a detriment with proper Conditions of Approval associated with the Conditional Use Permit. *Member Peixoto seconded the motion.*

*The motion to approve Variance, PLN2011-00096 Valley Guns & Ammo passed 4/1.  Member Spalding was not in favor of approval of the variance.*

The Board then discussed the Conditional Use Permit. Member Peixoto said the proposed Tentative Findings one through three, contained in the staff report on page 11 were acceptable.  Member Spalding did not believe required Finding #3 could be met. There are too many children in the area, and another

gun store within 500 feet. She also believed the use was contrary to the intent as related to Finding #3. Tentative Finding #4 should remain unchanged. The use was detrimental. Member Moore said Member Spalding premise was correct. However this may be impacted based on imposed Conditions of Approval. He asked staff what were standard Conditions for a gun shop. Staff said standard Conditions would consider hours of operation, building improvements and landscaping. The Chair thought Title 17 Ordinances on page nine, and a Security Plan that required approval by the Sheriff's Department were appropriate. Public testimony was re-opened to obtain further information from the Applicant.

Member Moore asked Mr. Teixeira what was required for State licensing and security, also proposed building upgrades/improvements under consideration. Mr. Teixeira said new security doors and windows would be added. They will have bars on the inside. This is an ATF requirement. Everything must be locked and have cables run through it. There will be two 14 foot gates that lock in front of the gun cabinets. The gates will be alarmed. Handguns will be locked in a separate area. There will be alarms on the building. Lighting will be added to the back, front and sides of the store exterior. The State of California comes to inspect the site before the license is issued. The Sheriff then comes to the site to add any further requirements. Public testimony was closed.

The Chair said a Condition of Approval should be instituted that immediate review is necessary upon the sale of the business and/or building. Member Spalding asked if Conditions of Approval could be changed in the future. Member Moore agreed the protection of the community relies upon the Conditions of Approval. The permit can always be brought in for revocation proceedings. If the permit is approved, Conditions should be such, safety is long lasting. .

*Member Moore motioned to approve Conditional Use Permit, PLN-2011-00096 Valley Guns & Ammo.* Findings #1-3 shall remain unchanged as on page 11 of the staff report.

Finding #4 the use will not be contrary to the specific intent clauses or performance standards established for the District. A variance has been approved as part of this application.

Additional Required Findings under Section 17.54.130 shall be modified as follows:

A. Shall be modified to state, the *Eden General Plan* call for "Mixed uses" in the "General Commercial" designation, which is where this site is located. It has been determined that gun store/fire sales is an acceptable use.
B. Shall be modified, the finding can be made. The following sentence shall be added: a variance has been approved for this site.
C. Shall remain unchanged.
D. Shall remain unchanged.
E. The last sentence shall be stricken.
F. Shall remain unchanged.

Conditions of Approval:

The Applicant shall install an alarm and security system in accordance with County and Sheriff's requirements:

The Applicant shall paint the exterior of the building;
The Applicant shall provide signage in accordance with County requirements;
The Applicant shall install new doors and windows;
The Applicant shall install additional security measures in addition to what is shown on documentation

submitted, not limited to (2) 14 foot security gates that shall secure rifles and secure handguns with an alarm system;
The Applicant shall install exterior lighting, in the front, sides and rear of the building;
The Applicant shall install additional interior lighting;
The Applicant shall maintain the premises in good condition at all times, free of trash, debris and graffiti;
A Landscaping Plan is required and must be approved by the Planning Director;
A mandatory review shall be conducted one year from the date of approval. Another mandatory review shall take place five years from the date of approval;
The Applicant shall provide documentation of Penal Code requirement as set forth in requirement #F;
*Member Peixoto seconded the motion.*

**The Chair asked for a modification to the motion.** A Security Plan must be submitted and approved by the Sheriff's Office prior to issuance of Certificate of Occupancy by the Building Department.

Any sale and/or transfer of the business requires Planning Director notification within 30 days.

The Hours of Operation shall be Tuesday through Saturday from 10:00 a.m. to 5:00 p.m. The store will remain closed on Sunday and Monday.

The Lighting Plan must be approved by the Planning Director. The Lighting Plan may be combined with the Landscape Plan.

*Members Moore and Peixoto accepted the modification to the motion.*

*The motion to approve, Conditional Use Permit, PLN-2011-00096 Valley Guns & Ammo / Steve Nobriga passed 4/1. Member Spalding was not in favor of approval.*

**APPROVAL OF MINUTES:** The Minutes of December 7, 2011 were continued to the January 11, 2012 Meeting.

**APPROVAL OF BOARD OF ZONING ADJUSTMENTS 2012 HEARING CALENDAR:**
The Vice Chair motioned to accept the Board of Zoning Adjustments 2012 Calendar as presented. Member Spalding seconded the motion. The motion carried 4/0/1. Member Peixoto abstained.

**STAFF COMMENTS & CORRESPONDENCE:** Staff made no announcements.

**BOARD'S ANNOUNCEMENTS, COMMENTS AND REPORTS:** The Chair asked that if an appeal was filed in response to the BZA denial decision regarding, PLN-2011-00105 Zhen Rong. Planning staff should illuminate the fact that a corner lot within the zoning district allows a wider lot than a non corner.

**ADJOURNMENT:** There being no further business, the hearing adjourned at 4:25 p.m.

_____
ALBERT LOPEZ - SECRETARY
WEST COUNTY BOARD OF ZONING ADJUSTMENTS

**EXHIBIT B**

## RESOLUTION NO. Z-11-70 OF
## THE WEST COUNTY BOARD OF ZONING ADJUSTMENTS
## ADOPTED AT THE HEARING OF DECEMBER 14, 2011, CONCERNING VARIANCE
## and CONDITIONAL USE PERMIT, PLN-2011-00096

WHEREAS VALLEY GUNS & AMMO and STEVE NOBRIGA have filed for VARIANCE and CONDITIONAL USE PERMIT PLN-2011-00096, to allow the operation of a gun shop, and at a distance of less than 500 feet from a residentially zoned district, where 500 feet is required, in a FA (Freeway Access) District according to the *Ashland and Cherryland Business District Specific Plan*, allowing large scale, general commercial land uses that benefit from freeway access and exposure, located at 488 Lewelling Boulevard, south side, approximately 140 feet west of Hesperian Boulevard, in the unincorporated Ashland area of Alameda County, designated County Assessor's Parcel Number: 413-0097-001-03; and

WHEREAS the Board did hold a public hearing on said application at the hour of 1:30 p.m. on the 16th day of November and the 14th day of December, 2011, in the Alameda County Building, 224 West Winton Avenue, Public Hearing Room, Hayward, California; and

WHEREAS it satisfactorily appears from affidavits on file that proper notice of said public hearing was given in all respects as required by law; and

WHEREAS this application has been reviewed in accordance with the provisions of the California Environmental Quality Act and has been found to be categorically exempt; Article 19, Section 15303, Class 3, New Construction or Conversion of Small Structures, Consisting of construction and location of limited numbers of new, small facilities or structures; and the conversion of existing small structures from one use to another where only minor modifications are made in the exterior of the structure; and

WHEREAS a Pre-Hearing Analysis was submitted recommending the application be denied; and

WHEREAS the Applicant and a Representative appeared at said public hearings and presented testimony in support of the application; and

WHEREAS Neighbors appeared at said public hearings and offered testimony in opposition to the application; and

WHEREAS Neighbors appeared at said public hearings and offered testimony in support of the application; and

WHEREAS the Board did hear and consider all said reports, recommendations and testimony as hereinabove set forth;

NOW THEREFORE

BE IT RESOLVED that the Board finds that:

RESOLUTION NO. Z-11-70
DECEMBER 14, 2011
PAGE 2


## VARIANCE

(a)     There are special circumstances applicable which deprive the property of privileges enjoyed by other properties in the vicinity under the identical zoning classification. Highway 880, multi-lane thoroughfare Hesperian Boulevard, and walls and fences create a physical obstruction that does not allow direct traversable access at a distance less than 500 feet from the site to a residentially zoned district.

(b)     The granting of the application will not constitute a grant of special privileges inconsistent with the limitations upon other properties in the vicinity and zone as the proximity of the placement of Highway 880 located southwest of the property, Hesperian Boulevard thoroughfare, and walls and fences create a physical obstruction not allowing direct traversable access at a distance less than 500 feet from the site to a residentially zoned district. This situation is unique.

(c)     The use will not be detrimental to persons or property in the neighborhood or to the public welfare with the Conditions of Approval undertaken as contained herein.


## CONDITIONAL USE PERMIT

(a)     The use is required by the public need as there is a need to provide the opportunity to the public to purchase firearm sales in a qualified licensed establishment. Unincorporated Alameda County currently has four (4) licensed firearms sales business. The necessary number of firearms sales establishments to serve the public need is left up to the market.

(b)     The use will be properly related to other land uses and transportation and service facilities in the vicinity. The district in which the proposed sales activity is to occur is appropriate as the firearms sales shop is located in a mixed use retail/commercial area on a major thoroughfare where the surrounding public streets, and freeway access are adequate and all necessary improvements and services are available. The *Eden Area General Plan* calls for "Mixed uses" in the "General Commercial" designation, which is where this site is located. However, the General Plan goal to promote a "variety of uses" did not consider "gun store/firearms sales" as part of that desirable mix of uses.

RESOLUTION NO. Z-11-70
DECEMBER 14, 2011
PAGE 3

(c)     The use, if permitted, under all the circumstances and conditions of this particular case, will not materially affect adversely the health or safety of persons residing or working in the vicinity, or be materially detrimental to the public welfare or injuries to property or improvements in the neighborhood as the applicant possesses, in current form, all of the firearms dealer licenses required by federal and state law. The applicant has the required licenses and is knowledgeable about the firearms business operation having 38 years of prior firearms shop business ownership and experience. Firearms shall be properly licensed, inspected, and security installed and shall meet all applicable life-safety, and fire code requirements, with proper inventory security devices, and no adverse effects are otherwise anticipated.

(d)     The use will not be contrary to the specific intent clauses or performance standards established for the District in which it is to be considered. Although the Zoning Ordinance requires a Conditional Use Permit for firearms sales, and does not allow firearms sale within 500 feet of a residentially zoned district; elementary, middle or high school; pre-school or day care center; other firearms sales business; or liquor stores or establishments in which liquor is served; and the site proposed with this application is approximately 446 feet from a residentially zoned district. A Variance was submitted as part of this application, and has been approved.

## ADDITIONAL CONDITIONAL USE PERMIT FINDINGS:

(a)     The district in which the proposed sales activity is to occur is appropriate as the *Eden Area General Plan* calls for "mixed uses" in the "General Commercial" designation, which is where this site is located. A gun store is an appropriate use in the district and will promote the goal to have a "variety of uses".

(b)     The subject premises is within five hundred (500) feet of a residentially zoned district. However, Highway 880, multi-lane thoroughfare Hesperian Boulevard, and walls and fences create a physical obstruction that does not allow direct traversable access at a distance less than 500 feet from the site to a residentially zoned district. A variance has been approved for the reduced 500 foot distance.

(c)     The applicant will possess all of the firearms dealer licenses required by federal and state law. The applicant is knowledgeable about the firearms business operation having 38 years of prior firearms shop business ownership and experience.

RESOLUTION NO. Z-11-70
DECEMBER 14, 2011
PAGE 4

(d)  The applicant has been informed that, in addition to a conditional use permit, the applicant is required to obtain a firearms dealer license issued by the County of Alameda before sale activity can commence, and that information regarding how such license may be obtained has been provided to the applicant. Staff has discussed the licensing requirements with the applicant in meetings and he is aware of the licensing requirements.

(e)  The subject premises will be in full compliance with the requirements of the applicable building codes, fire codes and other technical codes and regulations which govern the use, occupancy, maintenance, construction or design of the building or structure. The premises is required to undergo alterations to bring it into full compliance with codes, regulations, occupancy, maintenance, construction, and safety design for the gun shop use.

(f)  The applicant will provide sufficient detail regarding the intended compliance with the Penal Code requirements for safe storage of firearms and ammunition to be kept at the subject place of business and building security. The applicant has had prior experience with the Code requirements to operate firearms and ammunition sales type of business, and as shown the firearms will be kept safe and secure.

**NOW THEREFORE**

**BE IT FURTHER RESOLVED** that the Board does hereby approve the said application as shown by materials labeled Exhibit "A" on file with the Alameda County Planning Department subject to the following conditions:

1.  This use permit is for the issuance of Conditional Use Permit, PLN-2011-00096 to Valley Guns & Ammo to allow the operation of a gun shop, located at 488 Lewelling Boulevard, south side, approximately 140 feet west of Hesperian Boulevard, in the unincorporated Ashland area of Alameda County, designated County Assessor's Parcel Number: 413-0097-001-03.

2.  The subject premises shall be in full compliance with the requirements of the applicable building codes, fire codes and other technical codes and regulations which govern the use, occupancy, maintenance, construction or design of the building or structure. The use shall comply at all times with the requirements of the following agencies and County Departments:

    a) Alameda County Fire Department
    b) Alameda County Public Works Agency, Building Inspection Department
    c) Alameda County Environmental Health Department
    d) Alameda County Sheriff's Department

RESOLUTION NO. Z-11-70
DECEMBER 14, 2011
PAGE 5

3.      A Security Plan shall be submitted for approval to the Planning Director and the Sheriff's Office prior to the issuance of a Certificate of Occupancy.    The installation of the plan shall include an alarm system, lighting, security gates, doors and windows.

4.      A site plan with elevations shall be submitted for approval to the Planning Director which includes exterior improvements.  The exterior improvements shall include paint, signage, lighting, and landscaping.

5.      The subject place of business and building security shall at all times be in compliance with Penal Code requirements for safe storage of firearms and ammunition.  Two, 14 foot security gate shall secure rifles and handguns.

6.      The entire premises must remain trash/debris and graffiti free at all times.

7.      The Hours of Operation shall be from 10:00 a.m. to 5:00 p.m. Tuesday through Saturday.  Closed on Sunday and Monday.

8.      The business shall remain under the ownership and control of the applicants.  The Alameda County Planning Director shall be notified within ten working days of any transfer and/or sale of the business.  Notification shall include the effective date of the change, and the name and phone number of the new owner.

9.      A mandatory review shall be conducted one year and five years from approval of Conditional Use Permit, PLN-2011-00096.  One, and five years after the date of this approval, at the option of the County, considering any information that has been received, following notice as required for the original permit, this Conditional Use Permit, PLN-2011-00096 may be set for public hearing as was provided for the original permit.  At said public hearing the mandatory one year and five year review will evaluate if conditions of approval may be added or deleted, or conditions may be modified so as to enable the continued making of the affirmative findings above.  Any conditions of approval modified or added shall have the same force and effect as if originally imposed.  Review costs shall be borne by the applicant.

        Pursuant to Section 17-52.070 of the Alameda County Zoning Ordinance said Variance shall be implemented with a term of three (3) years of its issuance or it shall be of no force or effect.  Said Variance shall remain revocable for cause in accordance with Section 17-54.030 of the Alameda County Zoning Ordinance.

RESOLUTION NO. Z-11-70
DECEMBER 14, 2011
PAGE 6


Pursuant to Section 17-52.050 of the Alameda County Zoning Ordinance said Conditional Use Permit shall be implemented within a term of three (3) years of its issuance or it shall be of no force or effect. If implemented, said Conditional Use Permit shall remain revocable for cause in accordance with Section 17-54.030 of the Alameda County Zoning Ordinance.


WEST COUNTY BOARD OF ZONING ADJUSTMENTS
ALAMEDA COUNTY PLANNING DEPARTMENT

**EXHIBIT C**

# ALAMEDA COUNTY BOARD OF SUPERVISORS

## ** MINUTE ORDER **

*The following was action taken by the Board of Supervisors on* <u>*February 28, 2012*</u>

**Approved as Recommended** ☐          **Other** ☑

### <u>Upheld the appeal and denied the project</u>

**Unanimous** ☐ **Carson** ☐ **Chan** ☐ **Haggerty** ☑ **Lockyer** ☑ **Miley** ☐ **- 3**
Vote Key      N=No, A=Abstain, X=Excused

Documents accompanying this matter:

☐ **Resolution(s)** _____

☐ **Ordinance(s)** _____

☐ **Contract(s)** _____

**File No.** _____ 27982 _____
**Item No.** _____ 5 _____

Document(s) to be signed by Agency/Purchasing Agent

☐ **Contract(s)** _____

Copies sent to:

Maria Palmeri, QIC 50701

Special Notes:

I certify that the foregoing is a correct copy of a Minute Order adopted by the Board of Supervisors, Alameda County, State of California.
ATTEST:
Crystal Hishida Graff, Clerk of the Board
Board of Supervisors

By: _R. Caballero_ _____
        Deputy

p:agenda\forms\minord.doc



# ALAMEDA COUNTY COMMUNITY DEVELOPMENT AGENCY

P L A N N I N G   D E P A R T M E N T

**Chris Bazar**
*Agency Director*

**Albert Lopez**
*Planning Director*

224
West Winton Ave
Room 111

Hayward
California
94544

phone
510 670 5400

fax
510 785 8793

www.acgov.org/cda

February 21, 2012

Agenda Item # 5
February 28, 2012

Honorable Board of Supervisors
Administration Building
1221 Oak Street, Fifth Floor
Oakland, CA 94612

Dear Board Members:

**SUBJECT:** Appeal by the San Lorenzo Village Homes Association of the West County Board of Zoning Adjustments' (WBZA) decision to approve a Conditional Use Permit and Variance, PLN2011-00096, to allow the operation of a gun shop at a distance of less than 500 feet from a residentially zoned district where 500 feet is required, in the FA (Freeway Access) Zoning District, on a property at 488 Lewelling Boulevard, south side, 140 feet west of Hesperian Boulevard, unincorporated Ashland area of Alameda County, designated Assessor's Parcel Number: 413-0097-001-03.

The following is a summary of the appeal; the complete record is attached.

## RECOMMENDATION:

West County Board of Zoning Adjustments (WBZA) Action: At its meeting on December 14, 2011, the WBZA approved the Variance application after making the required findings for the operation of a gun shop at a distance of less than 500 feet from a residentially zoned district after determining that existing surface streets provided enough of a barrier between the subject premises and the surrounding residential zoning districts to consider the physical barriers a special circumstance. The WBZA also approved the Conditional Use Permit application for the operation of the gun shop itself, after making the required findings. The WBZA also needed to make the six special findings for approving the Firearm Sales use, which they did.

Planning Staff Recommendation: Planning staff recommended that the West County Board of Zoning Adjustments deny the application because staff could not make the findings required to approve the Variance given that the subject use would be located closer than 500 feet from the nearest residential zoning district. The distance, measured from the perimeter of the building housing the use, to the property lines of surrounding residential zoning districts, is across typical surface streets, with no special circumstance as to location or barriers. Staff recommends that the Board of Supervisors find in favor of the appeal by the San Lorenzo Village Homes Association and overturn the BZA action to approve PLN2011-00096, Conditional Use Permit and Variance, thereby denying the project.

Appeal of the San Lorenzo Village Homes Association
PLN2011-00096, Conditional Use Permit and Variance
February 21, 2012
Page 2

## SUMMARY:

Project Description:  The applicant petitions to allow firearms sales (gun shop) at a distance of less than 500 feet from a residentially zoned district, where 500 feet is required.  The distance from a residential district has been determined to be approximately 446 feet in two directions. In one direction, the I-880 freeway and limited access creates a substantial barrier between the gun shop and the residential zoning district to the southwest. However, in the other direction, there are only surface streets between the gun shop and a residential zoning district to the southeast. The distances were measured from the closest building exterior wall of the gun shop to the property line of the residentially zoned districts.  No additional floor area or building expansion is proposed as part of this project.

Appeal:  The appellant is requesting that the decision of the WBZA to approve the project, be overturned. The statements for the appeal are based on the contention that the findings for the Conditional Use Permit and the Variance were not met.

The appellant cites the staff report regarding the Ordinance requirement for a 500-foot distance from a residentially zoned district, and takes issue that the WBZA members did not consider the wording in the Variance Finding that asks: "Are there are special circumstances applicable which deprive the property of privileges enjoyed by other properties in the vicinity under the identical zoning classification?" The appellant points out that while the proposed business is separated by a major street and a fence from the residential property (which the WBZA cited to make the "special circumstance" finding), it is closer than 500 feet and it does not deprive the proposed business of any "privilege enjoyed by other businesses in the area".

The second Variance finding asks if granting the application will constitute a grant of special privileges inconsistent with other properties in the vicinity.  The appellant states that the WBZA made this finding per the assumption that:  "the 500 foot rule was subject to interpretation and in this case since there was a busy street and a chain link fence within the 500 feet, the 500 foot measurement was unreasonable".  The appellant disagrees with this statement, arguing that: "there are many times in County ordinances that distances are used, especially the 500 foot separation distance.  The distance is unequivocal: it doesn't state – on the same side of the street, across a busy street, on the other side of a fence."

The appellant also disagreed with the Conditional Use Permit findings as they were made by the WBZA. According to the appellant, the WBZA relied too heavily on testimony from law enforcement testimonials and not enough on neighboring residents or staff analysis.

West County Board of Zoning Adjustments (WBZA) Action:  During the WBZA hearing on December 14, 2011, the WBZA, in a 4-1 vote, approved the Variance application making the finding that there are special circumstances applicable to the property, such as physical barriers like Hesperian Boulevard, located between the subject premises and the residential zoning district to the southeast. The WBZA then discussed the Conditional Use Permit and voted four 4-1 to approve the Conditional Use Permit.

Planning Considerations:  The Conditional Use Permit findings for Firearms Sales (six additional findings to the Conditional Use Permit findings), include the following:

Appeal of the San Lorenzo Village Homes Association
PLN2011-00096, Conditional Use Permit and Variance
February 21, 2012
Page 3

### 17.54.131 - Conditional uses—Firearms sales.

In addition to the findings required of the board of zoning adjustments under Sections 17.54.130 and 17.54.140, no conditional use permit for firearms sales shall issue unless the following additional findings are made by the board of zoning adjustments based on sufficient evidence:

A. That the district in which the proposed sales activity is to occur is appropriate;

B. That the subject premises is not within five hundred (500) feet of any of the following: residentially zoned district; elementary, middle or high school; pre-school or day care center; other firearms sales business; or liquor stores or establishments in which liquor is served;

C. That the applicant possesses, in current form, all of the firearms dealer licenses required by federal and state law;

D. That the applicant has been informed that, in addition to a conditional use permit, applicant is required to obtain a firearms dealer license issued by the county of Alameda before sale activity can commence, and that information regarding how such license may be obtained has been provided to the applicant;

E. That the subject premises is in full compliance with the requirements of the applicable building codes, fire codes and other technical codes and regulations which govern the use, occupancy, maintenance, construction or design of the building or structure;

F. That the applicant has provided sufficient detail regarding the intended compliance with the Penal Code requirements for safe storage of firearms and ammunition to be kept at the subject place of business and building security.

Of all the above findings, finding B presents the biggest challenge to the proposed gun shop in that there are two residentially zoned districts within 500 feet of the subject location. Staff believes there are no special circumstances to determine that surface streets constitute a substantial barrier that somehow mitigates the minimum distance requirement of 500 feet.

The complete record is attached.

Sincerely,

Chris Bazar, Director
Community Development Agency

Attachments

cc:    Appellant, Applicant, Members of the WBZA, CommPre, San Lorenzo Village Homes Association, Alameda County Sheriff's Office

**EXHIBIT D**

**Alameda County, California, Code of Ordinances >> Title 17 - ZONING >> Chapter 17.54 - PROCEDURES >>**

## Chapter 17.54 - PROCEDURES

### Sections:

17.54.010 - Zoning approval.

17.54.020 - Zoning approval—Lapse.

17.54.030 - Zoning approval—Permits revocable.

17.54.040 - Zoning approval—Not applicable to quarries.

17.54.050 - Uses not listed—Procedure.

17.54.060 - Uses not listed—Action.

17.54.070 - Administration or enforcement—Appeals.

17.54.080 - Variances.

17.54.081 - Variances—Firearms sales.

17.54.090 - Variances—Procedure.

17.54.100 - Variances—Action.

17.54.110 - Variances—Conditions.

17.54.120 - Variances—Effective date.

17.54.130 - Conditional uses.

17.54.131 - Conditional uses—Firearms sales.

17.54.132 - Conditional uses—Superstores.

17.54.135 - Conditional uses—Planning commission action.

17.54.140 - Conditional uses—Action.

17.54.141 - Conditional uses—Action—Firearms sales.

17.54.150 - Conditional uses—Changes and renewals.

17.54.160 - Conditional uses—Combined applications.

17.54.170 - Conditions.

17.54.180 - Prior uses.

17.54.190 - Conditional uses—Effective date.

17.54.200 - Conditional uses—Violation.

17.54.210 - Site development review.

17.54.220 - Site development review—Procedure.

17.54.225 - Site development review for garage conversions—Applications.

17.54.226 - Site development review for relocation agreement billboards—Applications and criteria.

17.54.230 - Site development review—Applications.

17.54.240 - Site development review—Investigation.

17.54.250 - Site development review—Investigation by consultants.

17.54.260 - Site development review—Action.

17.54.270 - Site development review—Effective date.

17.54.280 - Site development review—Conformity required.

17.54.290 - Site development review—Plan modifications.

17.54.300 - Single-family residence—Cluster permit.

17.54.310 - Cluster permit.

17.54.320 - Preliminary cluster development plan—Application.

17.54.330 - Preliminary plan—Professional services required.

17.54.340 - Preliminary plan—Information required.

17.54.350 - Preliminary plan—Action by the planning commission.

17.54.360 - Cluster permit—Application.

17.54.370 - Cluster permit plan—Persons authorized to prepare.

17.54.380 - Cluster permit plan.

17.54.390 - Cluster permit plan—Hearing by the planning commission.

17.54.400 - Cluster permit plan—Findings and action by the planning commission.

17.54.410 - Cluster permit—Time limit.

17.54.420 - Cluster permit—Building permits to conform.

17.54.430 - Cluster permit—Other expiration.

17.54.440 - Applicability—Title 17.

17.54.450 - Minimum project area.

17.54.460 - Density.

17.54.470 - Peripheral setback.

17.54.480 - Yards.

17.54.490 - Standards—Private open area.

17.54.500 - Modification of building site requirements.

17.54.510 - Cluster plan building site objectives.

17.54.520 - Common areas—Provision and design.

17.54.530 - Common areas—Preservation and maintenance.

17.54.540 - Vehicular and pedestrian access and circulation.

17.54.550 - Arrangement of buildings and facilities.

17.54.560 - Planting and fencing.

17.54.570 - Grading.

17.54.580 - Drainage.

17.54.590 - Applications—Petitions and appeals—Form and scope.

17.54.591 - Applications—Firearms sales.

17.54.600 - Applications—Where filed.

17.54.610 - Applications—Acceptance.

17.54.620 - Applications—Fees.

17.54.630 - Applications—Exceptions to requirement of fee.

17.54.640 - Applications—Effect of denial.

17.54.650 - Hearings—Notice.

17.54.660 - Hearings—Continuance.

17.54.670 - Appeals.

17.54.680 - Appeals—Transmittal of record.

17.54.690 - Appeals—Representation.

17.54.700 - Appeals—Notice of hearing.

17.54.710 - Board of supervisors—Action on appeals.

17.54.720 - Amendments.

17.54.730 - Amendments—Initiation of.

17.54.740 - Amendments—Content of petition.

17.54.750 - Amendments—Notice of hearing.

17.54.760 - Reserved.

17.54.770 - Failure to post notices.

17.54.780 - Amendments—Planning commission action.

17.54.790 - Amendments—Consensual conditions.

17.54.800 - Amendments—Board of supervisors action.

17.54.810 - Amendments—Board of supervisors action—Failure to act.

17.54.820 - Limitations of actions.

17.54.830 - Public notice.

## 17.54.130 - Conditional uses.

Certain uses, referred to in this title as conditional uses, are hereby declared to possess characteristics which require special review and appraisal in each instance, in order to determine whether or not the use:

A.  Is required by the public need;

B.  Will be properly related to other land uses and transportation and service facilities in the vicinity;

C.  If permitted, will under all the circumstances and conditions of the particular case, materially affect adversely the health or safety of persons residing or working in the vicinity, or be materially detrimental to the public welfare or injurious to property or improvements in the neighborhood; and

D.  Will be contrary to the specific intent clauses or performance standards established for the district, in which it is to be located.

A use in any district which is listed, explicitly or by reference, as a conditional use in the district's regulations, or in Section 17.52.580 shall be approved or disapproved as to zoning only upon filing an application in proper form and in accordance with the procedure governing such uses set forth hereinafter.

*(Prior gen. code § 8-94.0)*
*(Ord. No. 2010-17, § 96, 12-21-10)*

## 17.54.131 - Conditional uses—Firearms sales.

In addition to the findings required of the board of zoning adjustments under Sections 17.54.130 and 17.54.140, no conditional use permit for firearms sales shall issue unless the following additional findings are made by the board of zoning adjustments based on sufficient evidence:

A.  That the district in which the proposed sales activity is to occur is appropriate;

B.  That the subject premises is not within five hundred (500) feet of any of the following: Residentially zoned district; elementary, middle or high school; pre-school or day care center; other firearms sales business; or liquor stores or establishments in which liquor is served;

C.  That the applicant possesses, in current form, all of the firearms dealer licenses required by federal and state law;

D.  That the applicant has been informed that, in addition to a conditional use permit, applicant is required to obtain a firearms dealer license issued by the county of Alameda before sale activity can commence, and that information regarding how such license may be obtained has been provided to the applicant;

E.  That the subject premises is in full compliance with the requirements of the applicable building codes, fire codes and other technical codes and regulations which govern the use, occupancy, maintenance, construction or design of the building or structure;

F.  That the applicant has provided sufficient detail regarding the intended compliance with the Penal Code requirements for safe storage of firearms and ammunition to be kept at the subject place of business and building security.

*(Ord. 2002-60 (part); Ord. 98-53 § 1 (part))*

superstore will not have a net adverse economic impact within the market area. Such finding shall be based on the economic impact analysis described in subsection A of this section, any public comments on the economic impact analysis received during the public review period specified in subsection B of this section, and any other information submitted to and received by the planning director, planning commission, and/or board of supervisors prior to the close of any public hearing(s) on the application.

*(Ord. 2006-18 § 2 (part))*

## 17.54.135 - Conditional uses—Planning commission action. 

The planning commission, sitting as a board of zoning adjustments, shall receive, hear and decide certain applications for a conditional use permit and after the conclusion of the hearing may authorize approval as to zoning of the proposed use if the evidence contained in or accompanying the application or presented at the hearing is deemed sufficient to establish that, under all circumstances and conditions of the particular case, the use is properly located in all respects as specified in Section 17.54.130, and otherwise the planning commission shall disapprove the same. In each case, notice of the hearing shall be given pursuant to Section 17.54.830.

*(Ord. 99-26 (part))*
*(Ord. No. 2009-17, § 5, 4-14-09)*

## 17.54.140 - Conditional uses—Action.

Except as provided in Section 17.17.020 or Section 17.54.135, the board of zoning adjustments shall receive, hear and decide applications for a conditional use permit and after the conclusion of the hearing may authorize approval as to zoning of the proposed use if the evidence contained in or accompanying the application or presented at the hearing is deemed sufficient to establish that, under all circumstances and conditions of the particular case, the use is properly located in all respects as specified in Section 17.54.130, and otherwise the board of zoning adjustments shall disapprove the same. In each case, notice of the hearing shall be given pursuant to Section 17.54.830.

Where for any reason a board of zoning adjustments is unable to take an action on an application, the planning director has the power to transfer the application to the planning commission, who shall then receive, hear, and decide such applications as specified in Section 17.54.130.

*(Ord. 2002-60 (part): Ord. 2000-53 § 1 (part); Ord. 99-26 (part); prior gen. code § 8-94.1)*
*(Ord. No. 2009-17, § 6, 4-14-09; Ord. No. 2010-17, § 97, 12-21-10)*

## 17.54.141 - Conditional uses—Action—Firearms sales.

In order for a conditional use permit for firearms sales to become effective and remain operable and in full force, the following are required of the applicant:

A. A final inspection from appropriate building officials demonstrating code compliance;

B. Within thirty (30) days of obtaining a conditional use permit, and prior to any sales activity, a firearms dealer license shall be secured from the appropriate county agency;

C. The county-issued firearms dealer's license be maintained in good standing;

D. The maintenance of accurate and detailed firearms and ammunition transaction

E.  Transaction records shall be available for inspection as required by the California Penal Code;

F.  Compliance with all other state and federal statutory requirements for the sale of firearms and ammunition and reporting of firearms transactions, including, but not limited to Section 12070 et seq. of the California Penal Code.

*(Ord. 98-53 § 1 (part))*

## 17.54.150 - Conditional uses—Changes and renewals.

Except as provided in Section 17.17.020 and Section 17.54.135, the board of zoning adjustments shall receive, hear and decide applications to renew or extend the term of a conditional use or to modify or waive any condition previously imposed upon a conditional use, or upon a use permit issued prior to the effective date of the ordinance codified in this section. Every such application shall be subject to the same procedure and regulations as set forth herein for a conditional use.

*(Ord. 2002-60 (part): Prior gen. code § 8-94.2)*
*(Ord. No. 2010-17, § 98, 12-21-10)*

## 17.54.160 - Conditional uses—Combined applications.

If the proposed conditional use is one listed in the district regulations as subject to site development review, procedure upon the application shall be subject to the additional requirements of Section 17.54.210 of this chapter. No separate application for site development review is required in such cases, but disapproval of either shall constitute disapproval of the application. Where the proposed conditional use permit is accompanied by a concurrent application for a variance pursuant to Section 17.54.090 the board of zoning adjustments shall act separately on each.

*(Ord. 2002-60 (part): Prior gen. code § 8-94.3)*

## 17.54.170 - Conditions.

The approval of a conditional use permit may be valid only for a specified term, and may be made contingent upon the acceptance and observance of specified conditions, including but not limited to the following matters:

A.  Substantial conformity to approved plans and drawings;

B.  Limitations on time of day for the conduct of specified activities;

C.  Time period within which the approval shall be exercised and the proposed use brought into existence, failing which the approval shall lapse and be void;

D.  Guarantees as to compliance with the terms of the approval, including the posting of bond;

E.  Compliance with requirements of other departments of the county government.

*(Prior gen. code § 8-94.4)*

## 17.54.180 - Prior uses.

### 17.54.630 - Applications—Exceptions to requirement of fee.

The fee required to accompany any application as specified in Section 17.54.620 shall be waived in the following cases:

A.  Where the application is made and filed by any public agency of a city, county, state or federal government;

B.  Where the application is for variance to permit a building to be relocated on the same lot, if such relocation is necessary solely because of the condemnation of a portion thereof for a public purpose or the sale of such portion of a public agency of the county, state or federal government.

C.  Where the application is for a site development review for signs as provided in Sections 17.04.010, 17.34.100, 17.38.110, 17.38.120 and 17.38.130

*(Prior gen. code § 8-100.5)*

### 17.54.640 - Applications—Effect of denial.

No application for a variance, a conditional use or a site development review which has been denied wholly or in part shall be resubmitted, within one year from the date of the final order of denial, except on grounds of new evidence or proof of changed conditions found to be valid by the officer or public body which issued such final order.

*(Prior gen. code § 8-100.6)*

### 17.54.650 - Hearings—Notice.

Upon receipt in proper form of any application for a variance, for a conditional use, for a cluster permit, or a cluster permit preliminary plan, or for a determination relative to whether a use is nonconforming or for a determination as to whether a use is illegal or should be abated by the building official, the date for the public hearing thereon shall be set. At least one public hearing shall be held on each such application by the agency designated to receive it. Notice of the time and place of each such hearing shall be given pursuant to Section 17.54.830.

*(Prior gen. code § 8-101.0)*
*(Ord. No. 2009-17, § 9, 4-14-09)*

### 17.54.660 - Hearings—Continuance.

At any public hearing, the presiding officer may order the hearing to be continued by publicly announcing the time and place of a continuance and no further notice thereof shall be required.

*(Prior gen. code § 8-101.1)*

### 17.54.670 - Appeals.

An appeal may be taken to the board of supervisors within ten days after the date of any order made by the planning commission, the planning director, or the board of zoning adjustments pursuant to Sections 17.18.130, 17.54.030, 17.54.060, 17.54.070, 17.54.100, 17.54.140, or 17.54.400. The appeal may be taken by any property owner or other person aggrieved or by an officer, department, board, or commission affected by the order within said ten-day period, by filing with the clerk of the board of supervisors or the planning department a notice of appeal specifying

the grounds for such appeal. Filing such notice shall stay all proceedings in furtherance of the order appealed from. The planning department is designated as an agent of the clerk of the board for purposes of receiving a notice of appeal.

*(Ord. 2002-60 (part): Prior gen. code § 8-102.0)*
*(Ord. No. 2009-17, § 10, 4-14-09)*

### 17.54.680 - Appeals—Transmittal of record.

Upon receiving an appeal the clerk of the board of supervisors or planning department shall indicate upon every notice of appeal received pursuant to Section 17.54.670 the date upon which it was filed. If filed with the clerk of the board, the clerk shall transmit a copy thereof to the planning department. If filed with the planning department, the planning department shall transmit a copy thereof to the clerk of the board. The planning department shall immediately make available to the board all of the documents constituting the record upon which the action appealed was taken.

*(Prior gen. code § 8-102.1)*
*(Ord. No. 2009-17, § 11, 4-14-09)*

### 17.54.690 - Appeals—Representation.

The planning department shall be represented at the hearing on the appeal, in order to make known the reasons for the action taken.

*(Prior gen. code § 8-102.2)*

### 17.54.700 - Appeals—Notice of hearing.

The board of supervisors shall give written notice of the time and place for hearing any appeal filed pursuant to Section 17.54.670. Such notice shall be published and shall be given to the applicant, to the appellant, to the agency which made the order appealed, and to any other person requesting such notice and depositing with the clerk of the board a self-addressed, stamped envelope to be used for that purpose. In addition, notice shall be given pursuant to Section 17.54.830.

*(Prior gen. code § 8-102.3)*
*(Ord. No. 2009-17, § 12, 4-14-09)*

### 17.54.710 - Board of supervisors—Action on appeals.

The board of supervisors may hear additional evidence and may sustain, modify or overrule any order brought before it on appeal pursuant to Section 17.54.670, and may make such findings and decisions as are not inconsistent with state law and county ordinances; provided that, if no motion relative to the order appealed attains a majority vote of the board of supervisors within thirty (30) days from the date of the hearing by said board thereon, said order shall stand sustained and be final. If in considering an appeal, the board of supervisors determines that in the time since the decision being appealed was made, new information has arisen that may have affected the original decision maker's evaluation of the "matter before it," the board of supervisors may remand the appeal to the original decision-maker for an advisory ruling on the new information prior to the board of supervisors sustaining, modifying, or overruling an order brought before it pursuant to Section 17.54.670.

Case3:12-cv-03288-SI   Document13-3   Filed09/27/12   Page32 of 44
http://library.municode.com/HTML/10425/level2/TIT17ZO_CH17....

*(Prior gen. code § 8-102.4)*
*(Ord. No. 2010-17, § 105, 12-21-10; Ord. No. 2010-22, § 2, 6-29-10)*

## 17.54.720 - Amendments.

When the board of supervisors deems it to be for the public interest, this title may be amended by reclassifying property or by changing any of its provision. The procedure shall be as set forth in the following sections.

*(Prior gen. code § 8-103.0)*

## 17.54.730 - Amendments—Initiation of.

An amendment may be initiated by resolution of the board of supervisors or of the planning commission. In the case of a proposed reclassification of property, amendment also may be initiated by a petition. When such amendment is initiated by petition, the petition shall be signed and verified by the owner of the property affected by the proposed change.

*(Prior gen. code § 8-103.1)*

## 17.54.740 - Amendments—Content of petition.

Every petition to reclassify property shall be upon a form prescribed for that purpose by the planning commission and shall be accompanied by such information, maps and other data as the commission may by its rules require.

*(Prior gen. code § 8-103.2)*

## 17.54.750 - Amendments—Notice of hearing.

Upon passage of a resolution as specified in Section 17.54.730 or upon receipt in proper form of a petition to reclassify property, the proposal shall be set for public hearing before the planning commission as required by state law. Notice of the hearing shall be given pursuant to Section 17.54.830.

*(Prior gen. code § 8-103.3)*
*(Ord. No. 2009-17, § 13, 4-14-09)*

## 17.54.760 - Reserved.

**Editor's note—**

Ord. No. 2009-17, § 14, adopted April 14, 2009, repealed § 17.54.760, which pertained to amendments; additional notice and derived from prior gen. code § 8-103.4 and Ord. No. 98-52 § 1, 1998.

## 17.54.770 - Failure to post notices.

Any failure to post public notices shall not invalidate any proceedings for an amendment of this title.

*(Prior gen. code § 8-103.5)*

### 17.54.780 - Amendments—Planning commission action.

After the conclusion of hearings on any proposed amendment, the planning commission shall make a report of its findings and recommendations and reasons with respect to the same, and shall file with the board of supervisors an attested copy thereof within thirty (30) days after the date of the conclusion of the hearing.

*(Prior gen. code § 8-103.6)*

### 17.54.790 - Amendments—Consensual conditions.

The planning commission may recommend, and the board of supervisors may impose, conditions to the zoning reclassification of property where it is deemed proper to do so, and where the applicant for rezoning consents, so as not to create problems inimical to the public health, safety and general welfare of the county. Such conditions shall run with the land for however long the property remains in the zoning district involved.

*(Prior gen. code § 8-103.6.5)*

### 17.54.800 - Amendments—Board of supervisors action.

Upon receipt of a report from the planning commission, or upon the expiration of thirty (30) days after the conclusion of the hearing by the planning commission on any amendment initiated by petition or by resolution of the board of supervisors, the board of supervisors shall set the matter for public hearing, after notice thereof, given pursuant to Section 17.54.830. After the conclusion of such hearing, the board of supervisors may adopt the amendment of any part thereof set forth in the petition or in the resolution of intention in such form as the board may deem to be advisable.

*(Prior gen. code § 8-103.7)*
*(Ord. No. 2009-17, § 15, 4-14-09)*

### 17.54.810 - Amendments—Board of supervisors action—Failure to act.

When the report of the planning commission pursuant to Section 17.54.800 contains a recommendation that a proposed amendment be disapproved and no motion relative thereto attains a majority vote of the board of supervisors within thirty (30) days from the date of the hearing thereon, such failure to act shall constitute disapproval of the proposed amendment.

*(Prior gen. code § 8-103.8)*

### 17.54.820 - Limitations of actions.

Any court action or proceeding to attach, review, set aside, void or annul any decision of matters listed in this title otherwise subject to court review or concerning any of the proceedings, acts, or determinations, taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced within forty-five (45) days after the effective date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decisions or of such proceedings, acts or determinations.

*(Prior gen. code § 8-103.9)*

EXHIBIT E

1 | DONNA R. ZIEGLER [142415]
  | County Counsel
2 | By:  MARY ELLYN GORMLEY  [154327]
  | Assistant County Counsel
3 | SAMANTHA N. STONEWORK-HAND [245788]
  | Associate County Counsel
4 | Office of County Counsel
  | County of Alameda
5 | 1221 Oak Street, Suite 450
  | Oakland, California 94612
6 | Telephone:   (510) 272-6700

7 | Attorney for County of Alameda, Alameda,
  | Board of Supervisors, Wilma Chan,
8 | Nate Miley and Keith Carson

9

10

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DIVISION OF CALIFORNIA

13

14 | JOHN TEIXEIRA, STEVE NOBRIGA, GARY GAMAZA, CALGUNS | Case No.: CV12-3288 KAW

15 | FOUNDATION (CGF), INC., SECOND AMENDMENT FOUNDATION (SAF), INC., | **DECLARATION OF ALBERT LOPEZ IN SUPPORT OF DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

16 | and CALIFORNIA ASSOCIATION OF

17 | FEDERAL FIREARMS LICENSEES (Cal-FFL),

18

19 | Plaintiffs,

20 | v.

21 | COUNTY OF ALAMEDA, ALAMEDA BOARD OF SUPERVISORS (as a policy

22 | making body), WILMA CHAN in her official capacity, NATE MILEY in his official

23 | capacity, and KEITH CARSON in his official capacity,

24

25 | Defendants.

26

27

28

1    I, ALBERT LOPEZ, do hereby declare:

2        1.    I am the Planning Director for the Alameda County Community

3    Development Agency, Planning Department.

4        2.    On Thursday, December 22, 2011, at approximately 3:50 p.m. I received

5    an email containing two attachments from Kathy Martins, Administrator of the San

6    Lorenzo Village Homes Association.  A true and correct copy of the email and two

7    attachments are attached to this declaration as Exhibit 1.

8        3.    This email and the corresponding attachments are part of the official

9    Alameda County Community Development Agency, Planning Department file kept in the

10   course of regularly conducted business activity on conditional use permit and variance,

11   PLN-2011-00096, filed by Steve Nobriga and Valley Guns & Ammo.

12       I declare under penalty of perjury under the laws of the United States and

13   California that the foregoing is true and correct and within my personal knowledge and

14   that it was executed on September 25, 2012.  If called upon, I could competently testify

15   thereto.

16

17                                    /s/ *Albert Lopez*
                                      ALBERT LOPEZ

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT E-1

**From:** Slvha Administrator [mailto:administrator@slvha.com]
**Sent:** Thursday, December 22, 2011 3:50 PM
**To:** Lopez, Albert, CDA

**Cc:** Chan, Wilma, BOS Dist 3; Bazar, Chris, CDA; Tarbell, Richard, CDA
**Subject:** Appeal to BZA Decision

Dear Albert,

I attempted to hand deliver our appeal to the BZA decision PLN2011-00096 regarding the Gun Store on Lewelling Blvd. Per the BZA and the county Website we have ten days from the date of the decision to appeal. That decision was made on December 14th so ten days would put the deadline on Christmas Eve.

I went to the county office today December 22nd, with the attached appeal and supporting letter and $250 Check but the offices were closed for the Holiday.

Since the website nor the BZA said if the appeal was 10 calendar days or 10 business days we are going to send the package federal express as of today in order to comply with the 10 day rule.

Thanks,

--

Kathy

Kathy Martins, Administrator
San Lorenzo Village Homes Association
377 Paseo Grande, San Lorenzo, CA 94580
510-276-4554 X 6
www.slvha.com



# SAN LORENZO VILLAGE
# HOMES ASSOCIATION

377 Paseo Grande ▪ San Lorenzo CA 94580
(510) 276-4554 ▪ www.slvha.com

December 14, 2011

Alameda County Planning Department
224 West Winton Ave. Room 111
Hayward, CA 94544

Alameda County Board of Supervisors
1221 Oak Street #536
Oakland, CA 94612-4224

Dear Board of Supervisors,

We are writing to **Appeal the recent decision of the Board of Zoning Adjustments, in the matter number PLN2011-00096, Conditional Use Permit and Variance**, regarding the operation of a gun shop at 488 Lewelling Boulevard, San Leandro, CA. The matter required a variance in that the business would be located closer than 500 feet to residentially zoned districts.

The matter was considered first as to whether a variance was required and secondly, the granting of the conditional use permit and whether the business fit the requirements of a CUP. As stated by County Council during the review process, if the variance was not granted, the CUP could not be granted as it was dependant on the variance being approved.

We base our appeal on the fact that Commissioner Moorè erroneously interpreted and misapplied the determining factors that need be considered when granting a variance.

**Question 1** asks – "Are there special circumstances applicable to the property, which *deprive* the property of privileges enjoyed by other properties in the vicinity under identical zoning classification?"

The staff report correctly answers this question by stating "No. There are no special circumstances applicable to the property, which *deprive* the property of privileges enjoyed by other properties in the vicinity under identical zoning classification when considered for firearms sale. The property that proposed for the firearms sales is within 500 feet of a residentially zoned District. This is not allowed by the Zoning Ordinance. It should be noted that the 500foot distance to the southwest is across the lanes of Highway 880, which cannot be traversed."

Unfortunately, Commissioner Moore failed to read the complete statement. The question asked is "Are there special circumstances applicable to the property, which *deprive* the property of privileges enjoyed …" Mr. Moore argued that there are 'special circumstances' but failed to include '**which deprive the property of privileges enjoyed by other properties in the vicinity...**'

---

Board Members: Art Wydler-President, Diane Wydler-Vice President
Margaret Wright-Secretary/Treasurer, Wulf Bieschke
Administrator: Kathy Martins

The purpose of a variance is to make whole, a property, which has less privileges' than enjoyed by others due to a special circumstances, not to impart more privileges than enjoyed by others because of a special circumstances.

In this case, Mr. Moore claimed that because the proposed business is separated by a major street and a fence from the residential property which is closer than 500 feet, this constitutes a special circumstance. And while this physical landscape may be a special circumstance, it clearly does not *deprive* the proposed business of any privilege enjoyed by others in the area, in fact, it does the opposite.

Mr. Moore, is opening the door to a dangerous precedent when he begins loosely interpreting the reasons for a variance. As was previously stated, the special circumstance must *deprive* the property of privileges and the variance is intended to return a right which the property is deprived because of some special circumstance.

Mr. Moore cannot be allowed to argue a point while using only half of the guidelines, nor is he allowed to use the variance process to define a requirement in a manner not intended.

**Question 2** asks – "Will granting of the application (for variance) constitute a grant of special privileges inconsistent with other properties in the vicinity and zone?"

Again the staff report correctly answers this question by stating "Yes." "The granting of firearms sales at the proposed location would constitute a grant of special privileges inconsistent with the location requirements given the establishment of this use within 500 feet of residentially zoned properties. Other firearms sales shops without special circumstances would not be granted a variance in the area due to existing residential property development with 500 feet."

Mr. Moore also went on to argue that the 500 foot rule was subject to interpretation and in this case since there was a busy street and a chain link fence within the 500 foot measurement, that the 500 foot measurement was unreasonable. Mr. Moore somehow believes that criminal, running from a crime he has just committed at the gun shop, will somehow be deterred in his flight because he has to run across Hesperian Blvd and scale a fence to make his escape.

Page 12 of the staff report clearly addresses this issue when it states – **"The proposed site is less than 500 feet from two residentially zoned districts…The other residentially zoned district can be easily accessed from the subject site."**

This reasoning will require every distance measurement to be subject to circumstance.

There are many times in County ordinances that distances are used, especially the 500 foot separation distance. The distance is unequivocal; it doesn't state – on the same side of the street, across a busy street, on the other side of a fence.

If you allow this decision to stand based on the flawed and incomplete reasoning of Mr. Moore you will have every ordinance which has a distance in it up for interpretation, with Mr. Moore deciding what is reasonable.

If State law forbids child molesters from living closer than 1000 feet from schools, playgrounds and places where children congregate, would Mr. Moore argue that the provision doesn't apply when a busy street and 6 foot high fence is within the measured distance.

When Commissioner Spaulding questioned (if) "granting the application (will) be detrimental to persons or property in the neighborhood…" Question #3 of the variance, Mr. Moore stated that he believed would benefit

the neighborhood and stated he based this belief on the letter of Sheriff Plummer and the 200 police officers who know the applicant and believe the applicant will act professionally in running the gun shop.

Ms. Spaulding challenged Mr. Moore on this point and rightly so; a variance is issued to the property and not to the applicant. Issuing a variance based on a belief that a particular applicant will act in good faith is a misuse of the variance process. The variance can and will exist long after the applicant is no longer running the business.

The Board of Supervisor's simply cannot allow the BZA to grant a variance when they completely misunderstand the concept of a variance and how it is to be legally applied.

After Mr. Moore presented to the Board these erroneous reasons for granting the variance, he then proceeded to make other procedural errors as they apply to the issuance of the CUP.

Item #4 of the Conditional Use Permit requirements asks – "Will the use be contrary to the specific intent clauses or performance standards established for the District in which it is to be considered?"

Once again the staff report responded "yes" meaning the gun shop would be **contrary to the specific use clauses for the District.**

Ms. Spaulding pointed this out and brought to the attention of the BZA paragraph A, on page 11, which states "The *Eden Area General Plan* calls for "mixed uses" in the General Commercial designation, which is where this site is located. However, the General Plan goal to promote a "variety of uses" did not consider "gun store/firearms sales as part of that desirable mix of uses."

Mr. Moore resolved this discrepancy by advocating that paragraph A simply be struck from the CUP.

Mr. Moore demonstrated the reasons why the community has no faith in legislative process. He clearly does not understand the variance process and intent; he ignores time and again the recommendations of staff; he readily admits that if Sheriff Plummer says it "that's good enough for me" he somehow believes it within his power to simply ignore the communities General Plan and finally despite the input from the community organizations that represent the affected area (Ashland, Cherryland and San Lorenzo) Mr. Moore is going to vote for an obviously unpopular variance and CUP.

Another point of contention is with the application itself, on the application it states that Steve Nobreiga of Valley Guns and Ammo was the applicant. Nowhere on the application for a CUP was the name John Teixiera. This raises concern as all the character witnesses who spoke on behalf of the application as well as the letter from Sheriff Emeritus Plummer were all references for John Teixiera. At one point Board Member Clark asked John Teixiera who "Valley Guns and Ammo" was, if they were a corporation and Mr. Teixiera said "they were going to be".

Mr. Teixiera was the previous owner of a Gun Store in Castro Valley called Valley Guns and Ammo, however he sold that store and if a variance is granted on this persons reputation alone as Mr. Moore would suggest then what happens when he sells this one? If in fact he is not an owner of record does the county have any provision in place to insure that this incorporation does in fact take place? When asked why Mr. Teixeira wasn't opening again in Castro Valley we were told his application was denied, yet this was not information that was given to the BZA.

Lastly, the so called loan that Mr. Teixeira told the BZA he was applying for is actually being requested through Redevelopment. So not only will this decision be in direct conflict to what the Area General Plan states and what the community wants but now he will also be asking those same tax payers to pay the cost of his

improvements. At no time did Ms. Clark or any member of the BZA questioned Mr. Teixeira on how he was going to complete the façade if the loan was not granted due to the state of redevelopment.

If the Board of Supervisors' allows this decision to stand, based on numerous misunderstandings and mis-applications of the law, the County will open the door for every variance and CUP issued by this BZA to be questioned, because clearly, their decisions are not based on fact and supported by staff but are based on emotional responses most accurately expressed by Mr. Moore, when he stated "if Sheriff Plummer says so, that's good enough for me."

Respectfully submitted,



Arthur A Wydler, President
San Lorenzo Village Homes Association


*P.S.* *Perhaps this is not the proper place for this comment, however, the format of the BZA hearings is not conducive to responsive dialog. The BZA announces the agendized topic; staff then gives a summary of the issue; there is then public comment and then the Board discusses the topic and votes. There should be public comment "after" commissioners have their discussion. If commissioners raise issues not previously raised by staff or the public, which generate concern from the public, there is no opportunity for the public to address these concerns.*

*In the aforementioned appeal, had the public been given an opportunity to address the Board after they began their misguided discussion of the appropriateness of the variance, this entire matter could have been correctly resolved without the need for an appeal.*

CC: Alameda County Board of Zoning Adjustments; Commissioners Clark, Gil, Peixoto, Spaulding and Moore
CC: Supervisor Wilma Chan

December 15, 2011

Alameda County Board of Supervisors
1221 Oak Street #536
Oakland, CA

Dear Alameda County Board of Supervisors:

This letter is offered in support of the appeal of the Variance and CUP granted to Valley Guns and Ammo on December 14, 2011, by the Board of Zoning Adjustments for the operation of a firearms business at 488 Lewelling Blvd., PLN2011-00096. I was at the hearing and the following are my observations and thoughts regarding the process, which I believe are also the basis of the appeal by the San Lorenzo HOA.

The property for the proposed gun shop falls within the 500 foot distance required by county ordinance from zoned residential districts, as well as, from other firearm sales businesses and liquor sale businesses.  The BZA accepted the fact that a variance would be needed for a gun shop to be operated on this property based on the West County Board of Zoning Adjustments Staff Report, PLN2011-00096. The BZA then, however, voted (4-1) to grant a variance, contrary to the staff recommendation that the variance be denied.

The main basis for the granting of the variance was based on a phrase that "special circumstances" were applicable.  The gun store owner used this term continually to point out the there was a freeway, multiple lanes of traffic, and fences between the property and the zoned districts within 500 feet.  One of the BZA board members indicated that these "special circumstances" were his reason for voting for the variance.

On page 12 of the Staff Report, the reasons for granting a variance are listed, as well as, the conclusions and recommendations of the staff.  The first reason states:

> *Are there **special circumstances** applicable to the property, **which deprive** the property of privileges enjoyed by other properties in the vicinity under the identical zoning classification?*

Members of the BZA never read or discussed this statement beyond the comma.  The phrase 'special circumstances' was continually used as somehow mitigating the distance requirement in the ordinance.  There was absolutely no discussion nor reasons presented regarding how this property was "deprived of privileges enjoyed by other properties..." and the staff conclusion was this property was NOT deprived of any privileges.

The other two criteria for granting a variance are cited below:

> *Will the granting of the application constitute a grant of special privileges*

`

*inconsistent with the limitations upon other properties in the vicinity and zone?*

*Will granting the application be detrimental to persons or property in the neighborhood or to the public welfare.*

Neither of these criteria were discussed by the BZA regarding the variance, but both are answered in the affirmative by the staff report (p.13).

It appeared to me that the variance was granted contrary to the County's own stated criteria for granting variances to ordinances, and I think that the BZA cannot just arbitrarily grant variances based on any circumstances presented. Furthermore, there was a reference made by one BZA member to a letter from Charles Plummer vouching for the owner of the gun shop. This also appeared to influence the decision to grant the variance. However, a variance is granted for a PROPERTY, not for a person, so the integrity of the gun shop owner should not even have been considered during the variance process.

In addition, once the variance was granted, then the BZA proceeded to grant a CUP. Because the staff had recommended against the variance, there was little detailed staff analysis presented just for the CUP. There were sections presented from Title 17 of the Zoning Ordinance on p. 9 of the Staff Report. The BZA admitted that they did not have all the information needed, so they made several amendments or conditions to the motion to approve the CUP.

One of these conditions regarded the "Eden Area General Plan." The Staff Report stated that the area in question "…calls for 'Mixed uses,' but did not specifically consider gun shops as part of the desirable mix." The BZA cavalierly stated that now a gun shop was considered a desirable part of the mix, despite statements to the contrary contained in the Staff Report and letters from representatives and residents from San Lorenzo, Ashland and Cherryland. Is it within the BZA's power to define or redefine the Eden Area General Plan?

In conclusion, I appeal to the Board of Supervisors to accept and uphold the appeal and overturn the decisions of the BZA. The ordinance requiring the 500 feet between a gun shop and other specifically zoned districts was written for a reason and the county should honor and enforce its own ordinance. There were no reasons presented for a variance that met the criteria listed by the county. If the variance is repealed, the CUP cannot be granted because of the same 500 foot requirement.

Thank you for considering this request.

Sincerely,

Diane Wydler
255 Via Elevado
San Lorenzo, CA 94580