Donald E.J. Kilmer, Jr., (SBN: 179986)
Law Offices of Donald Kilmer
A Professional Corporation
1645 Willow Street, Suite 150
San Jose, California 95125
Voice:       (408) 264-8489
Facsimile:   (408) 264-8487
EMail:       Don@DKLawOffice.com

Jason A. Davis (SBN: 224250)
Davis & Associates
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Voice:       (949) 310-0817
Facsimile:   (949) 288-6894
EMail:       Jason@CalGunLawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TEIXEIRA, STEVE NOBRIGA, GARY GAMAZA, CALGUNS FOUNDATION (CGF), INC., SECOND AMENDMENT FOUNDATION (SAF), INC., and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES, INC. (Cal-FFL),<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ALAMEDA, ALAMEDA BOARD OF SUPERVISORS (as a policy making body), WILMA CHAN in her official capacity, NATE MILEY in his official capacity, and KEITH CARSON in his official capacity.<br><br>Defendants. | CASE NO.: 3:12-CV-03288 SI<br><br>MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS' MOTION TO DISMISS<br><br>Date:    December 21, 2012<br>Time:    9:00 a.m.<br>Place:   United States District<br>         Court - San Francisco<br>         450 Golden Gate Ave.<br>Court:   Courtroom 10, 19th Floor<br>Judge:   Hon. Susan Illston |

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Teixeira v. County of Alameda*          Page 1 of 20          Memo of Points and Auth Opp MTD

# **TABLE OF CONTENTS**

Introduction..................................................................................................................5

Facts............................................................................................................................5

Summary of Argument.................................................................................................8

Statement of the Law...................................................................................................9

Argument................................................................................................................... 10

    A.    Exhaustion of Administrative Remedies is Not................................... 10
           Required under 42 U.S.C. § 1983

    B.    Plaintiffs' Due Process Claim is Valid...................................................... 11

    C.    Plaintiffs' Equal Protection Claim is Valid............................................ 12

    D.    Plaintiffs' Second Amendment Claims are Valid................................ 13

    E.    The Ordinance is Unconstitutional on Its Face...................................... 19

Conclusion.................................................................................................................20

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

# **TABLE OF AUTHORITIES**

*Andrews v. State*, 50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871)..................................14

*Annex Books v. City of Indianapolis*, 581 F.3d 460 (7th Cir. 2009).........................20

*Barker v. Riverside County Office of Ed.* (9th Cir. 2009) 584 F.3d 821.....................*10*

*Balistreri v. Pacifica Police Dept.* (9th Cir. 1990) 901 F.2d 696................................10

*Beliveau v. Caras* (CD CA 1995) 873 F.Supp. 1393..................................................9

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009)............................................13

*Braden v. Wal-Mart Stores, Inc.* (8th Cir. 2009) 588 F.3d 585..................................10

*Cantwell v. Connecticut*, 310 U.S. 296 (1940)..........................................................17

*City of L.A. v. Alameda Books*, 535 U.S. 425 (2002)................................................16

*Coffin v. Safeway, Inc.* (D AZ 2004) 323 F.Supp.2d 997..........................................10

*Conley v. Gibson* (1957) 355 U.S. 41........................................................................9

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)..............................................12

*Craig v. Boren*, 429 U.S. 190 (1976).........................................................................34

*Crown Point Dev., Inc., v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007) ..............11

*De La Cruz v. Tormey* (9th Cir. 1978) 582 F.2d 45 ....................................................9

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008)..............................................14

*Enquist v. Dep't of Agric.*, 553 U.S. 591 (2008).......................................................12

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)...............................................5

*Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992)................................16

*Gerhart v. Lake County Mont.*, 637 F.3d 1013 (9th Cir. 2011).................................12

*Graehling v. Village of Lombard, Ill.* (7th Cir. 1995) 58 F.3d 295............................10

*Hearn v. R.J. Reynolds Tobacco Co.* (D AZ 2003) 279 F.Supp.2d 1096...................10

*Heffron v. International Society for Krishna Consciousness, Inc.*,..............................16
452 U.S. 640 (1981).

*L-7 Designs, Inc. v. Old Navy, LLC* (2nd Cir. 2011) 647 F.3d 419............................10

*Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005)..................................................11

*Lira v. Herrera*, 427 F.3d 1164 (9th Cir. 2005)..........................................................11

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*McDonald v. Chicago*, 177 L. Ed. 2d 894 (2010)..........................................................................14

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)......................................................................11

*Monroe v. Pape*, 365 U.S. 167, 183 (1961)....................................................................................11

*Niemotko v. Maryland*, 340 U.S. 268, 271 (1963).........................................................................17

*Nordyke v. King*, (*Nordyke IV*) 563 F.3d 439 (9th Cir. 2009)........................................................5

*Nordyke v. King*, (*Nordyke V*) 644 F.3d 776 (9th Cir. 2011).........................................................5

*Patsy v. Bd. of Regents*, 457 U.S. 496 (1982) ...............................................................................10

*Rescuecom Corp. v. Google Inc.* (2nd Cir. 2009) 562 F.3d 123.....................................................10

*Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55 (2nd Cir. 2010)..................................................13

*Schad v. Mt. Ephraim*, 452 U.S. 61 (1981)....................................................................................16

*Scocca v. Smith*, 2012 WL 2375203 (N.D. Cal. June 22, 2012).....................................................13

*SEC v. Cross Fin'l Services, Inc.* (CD CA 1995) 908 F.Supp. 718..................................................9

*Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-151 (1969).......................................................17

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)...........................................17

*United States v. Curtiss-Wright Export Corp. et al*......................................................................15
299 U.S. 304, 328; 57 S. Ct. 216, 225 (1936)

*United States v. White* (CD CA 1995) 893 F.Supp. 1423................................................................9

*Villiage of Willowbrook v. Olech*, 528 U.S. 562 (2000).................................................................12

*Vogt v. City of Norinda*, 2012 WL 1565111 (N.D. Cal. May 2, 2012)..........................................13

*Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976).........................................................16

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

## INTRODUCTION

The facts of this case are relatively undisputed. The law is drawn from well established precedent regarding pre-textual land use regulations that impinge on fundamental rights. The Seventh Circuit has dealt with similar issues in a recent case. *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

## FACTS

1. A Civil Complaint was filed in this matter on June 25, 2012. As part of the packet of material served on the Defendants, a letter dated June 29, 2012 was tendered to the County that indicated a willingness to engage in informal early discovery to resolve this matter. In addition counsel for the parties exchanged several emails discussing possible resolution short of formal litigation. On or about September 18, 2012 Plaintiffs received correspondence from the Defendants indicating that they had rejected Plaintiffs' offer to settle the matter.[1]

2. Previously the Alameda Board of Supervisors, either individually, speaking through one of its members or by ratifying the speeches of individual members have expressed overt hostility to the bundle of rights embodied in the Second Amendment to the United States Constitution. See generally:
   a. *Nordyke v. King*, (*Nordyke IV*) 563 F.3d 439, 443-444 (9th Cir. 2009),
   b. *Nordyke v. King*, (*Nordyke V*) 644 F.3d 776, 780-781 (9th Cir. 2011).

3. An expanded telling of the facts of this case, including reasonable inferences that the Court is required to consider[2], are set forth in the following declarations filed in support of Plaintiffs' Motion for a preliminary injunction:

---

[1] This fact is set forth herein because the County of Alameda has history of engaging civil rights plaintiffs in formal litigation for decades and then claiming that they wanted to settle the matter all along. See *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012)(en banc).

[2] *Barker v. Riverside County Office of Ed.* (9th Cir. 2009) 584 F.3d 821, 824.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

     a.    Declaration of Gene Hoffman in Support of Request for Preliminary Injunction. Doc #17.

     b.    Declaration of Alan Gottlieb in Support of Request for Preliminary Injunction. Doc #18.

     c.    Declaration of Brandon Combs in Support of Request for Preliminary Injunction. Doc #19.

     d.    Declaration of Steve Nobriga, John Teixeira, Gary Gamaza in Support of Request for Preliminary Injunction. (w/Exhibit A - T). Doc # 20.

4. STEVE NOBRIGA, JOHN TEIXEIRA and GARY GAMAZA want to open a gun store in San Lorenzo, California, which is situated in Alameda County.

5. JOHN TEIXEIRA used to own/operate a gun store for almost three decades. GARY GAMAZA worked for him for 10 of those years. STEVE NOBRIGA is a semi-retired general contractor with the skills and wherewithal to see that their buildings can be made to conform to building codes and land use regulations.

6. As part of their marketing plan for opening a gun store and selecting the site, NOBRIGA, TEIXEIRA and GAMAZA gathered feedback from approximately 1,400 people indicating that a full-service gun store in San Lorenzo could be successful.

7. Plaintiffs began the process of applying for federal and state licenses to operate a retail firearm store. They also started looking for suitable properties and made contact with community leaders about their project.

8. A specific and detailed list of the steps they took, along with the documentary evidence supporting their positions, is set forth in the DECLARATION OF PLAINTIFFS: STEVE NOBRIGA, JOHN TEIXEIRA and GARY GAMAZA, filed in support of their motion for preliminary injunction. Doc #20.

9. Further relevant facts include:

     a.    The County of Alameda requires a Conditional Use Permit to open a

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

|   |   |   |
|---|---|---|
| 1 |    | gun store in that county. Alameda Municipal Code § 17.54.131. |
| 2 | b. | The single point of law challenged in this case is § 17.54.131(B) which |
| 3 |    | requires: *"That the subject premises is not within five hundred (500)* |
| 4 |    | *feet of any [...] residentially zoned district [...]."* |
| 5 | c. | Plaintiffs NOBRIGA, TEIXEIRA and GAMAZA found a suitable |
| 6 |    | commercial property that met their needs and appeared to conform to |
| 7 |    | the County's land use regulations. [i.e., they measured the distance |
| 8 |    | from the only logical point of their building (the front door, there being |
| 9 |    | no back door) to the neighboring "disqualifying properties" and found |
| 10 |   | that distance was in excess of 500 feet.] |
| 11 | d. | Plaintiffs NOBRIGA, TEIXEIRA and GAMAZA had set about trying to |
| 12 |   | secure their firearm licenses and obtain their Condition Use Permit, |
| 13 |   | when they discovered that the County, quite arbitrarily, used a |
| 14 |   | different way of measuring distances between the properties and found |
| 15 |   | that the proposed gun store was allegedly 446 feet from a |
| 16 |   | "disqualifying property." The County then insisted that the Plaintiffs |
| 17 |   | also apply for a Variance. |
| 18 | e. | A hearing on the Conditional Use Permit and Variance was scheduled |
| 19 |   | for November 16, 2011 and was continued to December 14, 2011. |
| 20 | f. | It is undisputed that the Alameda Planning Department agrees that if |
| 21 |   | distances are measured from the only accessible doors of the proposed |
| 22 |   | gun store that face Lewelling Blvd to the "disqualifying properties" |
| 23 |   | that the variance is not needed (i.e., the properties are more than 500 |
| 24 |   | feet apart). [See page 6 of Exhibit O (Staff Report for the Dec. 14, 2011 |
| 25 |   | Hearing) attached to the DECLARATION OF PLAINTIFFS: STEVE |
| 26 |   | NOBRIGA, JOHN TEIXEIRA and GARY GAMAZA. Doc # 20.] |
| 27 | g. | While "Staff" recommended denying the project, the West County |
| 28 |   | Board of Zoning Adjustment approved the project in a December 14, |
Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

|   |   |   |
|---|---|---|
| 1 |   | 2011 Resolution No.: Z-11-70. The Conditional Use Permit and |
| 2 |   | Variance were conditionally granted upon the agreement that |
| 3 |   | Plaintiffs would comply with the terms of Resolution No.: Z-11-70. [See |
| 4 |   | P of the DECLARATION OF PLAINTIFFS: STEVE NOBRIGA, JOHN |
| 5 |   | TEIXEIRA and GARY GAMAZA. Doc # 20.] |
| 6 | h. | Plaintiffs NOBRIGA, TEIXEIRA and GAMAZA accepted and intended |
| 7 |   | to comply with the terms of Resolution No.: Z-11-70. |
| 8 | i. | After their Conditional Use Permit and Variance were granted, an |
| 9 |   | untimely appeal was filed by the San Lorenzo Village Homes |
| 10 |   | Association. The last date for filing under Alameda's municipal code |
| 11 |   | would have been December 26, 2011. Alameda Municipal Code § |
| 12 |   | 17.54.670. The only two date stamps on the "appeal" are December 29, |
| 13 |   | 2011 and January 3, 2012. [See R of the DECLARATION OF |
| 14 |   | PLAINTIFFS: STEVE NOBRIGA, JOHN TEIXEIRA and GARY |
| 15 |   | GAMAZA. Doc #20.] |
| 16 | j. | The Board of Supervisors revoked the Conditional Use Permit and |
| 17 |   | Variance for the gun store in a meeting on February 28, 2012. [See |
| 18 |   | Exhibit S and T[3] of the DECLARATION OF PLAINTIFFS: STEVE |
| 19 |   | NOBRIGA, JOHN TEIXEIRA and GARY GAMAZA. Doc # 20.] |

## SUMMARY OF ARGUMENT

10. The factual inquiry most likely to yield a definitive resolution to this matter is whether the Alameda Board of Supervisors acted beyond their jurisdiction when they entertained the late-filed appeal of the San Lorenzo Homes Association. The law is clear, there is no legal authority for the Board of Supervisors to entertain an appeal once the 10-day period set forth in

---

[3] Exhibit T is a video. It was sent to the Court for filing separately.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1  Municipal Code § 17.54.670 has lapsed. Based on the evidence presented by
2  the Plaintiffs in their declarations, the Defendants action revoking the
3  Conditional Use Permit and Variance at the February 28, 2012 meeting was
4  *ultra vires*. Resolution No.: Z-11-70 should be reinstated and Plaintiffs
5  should be free to get on with running a business. This Court has
6  supplemental jurisdiction to adjudicate a state law claim that is
7  transnationally related to a federal claim. 28 USCA § 1367(a).

8  11. A second inquiry – a mixed question of fact and law – is whether the County
9  acted in an arbitrary and capricious way, in derogation of a fundamental
10 right, when it began using wholly subjective endpoints to measure the
11 distance between the proposed gun store and the "disqualifying properties."
12 This will require a two-part legal analysis:
13 a. Is a fundamental right at stake? (e.g., are gun stores like book stores?)
14 b. Does the vague and ambiguous ordinance in question leave too much
15 discretion to the civil servant in charge of granting the permit?
16 12. The final inquiry is a direct challenge to the "500 foot rule" on constitutional
17 grounds and is pure question of law.

18
19 **STATEMENT OF THE LAW**
20 13. Since the Defendants have elected, under Fed.R.Civ.P. 12(b)(6), to challenge
21 the legal sufficiency of the complaint, the court must decide whether the facts
22 alleged, if true, would entitle plaintiff to some form of legal remedy. Unless
23 the answer is unequivocally "no," the motion must be denied. *Conley v.*
24 *Gibson* (1957) 355 U.S. 41, 45-46, 78 S.Ct. 99, 102; *De La Cruz v. Tormey*
25 (9th Cir. 1978) 582 F.2d 45, 48; *SEC v. Cross Fin'l Services, Inc.* (CD CA
26 1995) 908 F.Supp. 718, 726-727 (quoting text); *Beliveau v. Caras* (CD CA
27 1995) 873 F.Supp. 1393, 1395 (citing text); *United States v. White* (CD CA
28 1995) 893 F.Supp. 1423, 1428 (citing text).

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1  14.  Furthermore, on a motion to dismiss under Rule 12(b)(6), the court must 'accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.' *Rescuecom Corp. v. Google Inc.* (2nd Cir. 2009) 562 F.3d 123, 127; *L-7 Designs, Inc. v. Old Navy, LLC* (2nd Cir. 2011) 647 F.3d 419, 429. Thus all reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim. *Braden v. Wal-Mart Stores, Inc.* (8th Cir. 2009) 588 F.3d 585, 595; see also *Barker v. Riverside County Office of Ed.* (9th Cir. 2009) 584 F.3d 821, 824.

15.  Thus, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.* (9th Cir. 1990) 901 F.2d 696, 699; *Graehling v. Village of Lombard, Ill.* (7th Cir. 1995) 58 F.3d 295, 297 – "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim"; *Hearn v. R.J. Reynolds Tobacco Co.* (D AZ 2003) 279 F.Supp.2d 1096, 1101 (citing text); *Coffin v. Safeway, Inc.* (D AZ 2004) 323 F.Supp.2d 997, 1000 (citing text).

## ARGUMENT

Defendants' arguments for dismissal are lettered A - H. Plaintiffs' responses are similarly designated.

### A. Exhaustion of Administrative Remedies is not Required under 42 USC § 1983.

16.  Exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1 the argument that a § 1983 action should be dismissed where the plaintiff
2 has not exhausted state administrative remedies."); *Monroe v. Pape*, 365 U.S.
3 167, 183 (1961) ("The federal remedy is supplementary to the state remedy,
4 and the latter need not be first sought and refused before the federal one is
5 invoked."), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436
6 U.S. 658 (1978); *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005).

17. Nor does the policy behind exhaustion of remedies (judicial or administrative) make any sense on the facts of this case. No one disputes that the Board of Supervisors revoked the variance and conditional use permit. The sole issue is whether that action was legal (constitutional?) under state and/or federal law.

### B. Plaintiffs' "Due Process" Claim is Valid.

18. Defendants' misconstrue Plaintiffs' "due process" claim. They are not asserting a *per se* property interest in a conditional use permit or variance. They are asserting a due process claim on the cumulative and alternate claims that:

   a. The government of Alameda County be required to follow its own laws. (re: late appeal)

   b. And furthermore, if those laws are so unclear that no objective standards exist for measuring distances, then the law is unconstitutionally vague. (re: no standards for calculating the 500-foot rule.)

19. Though the case originally addressed the Fifth Amendment's "takings clause" the Ninth Circuit in *Crown Point Dev., Inc., v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007) found that it was bound to accept the Supreme Court's reasoning in *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005) – that "[A] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Teixeira v. County of Alameda*     Page 11 of 20     Memo of Points and Auth Opp MTD

1 | Clause." citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), *Id*, 544 U.S. at 549 (Kennedy, J. concurring) (noting that the *Lingle* decision "does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process.")

20. Alameda County can not have any legitimate interest in violating its own laws with respect to the deadlines for filing appeals in land use matters, and Plaintiffs definitely have a "substantive due process" right in making sure Alameda County complies with its own laws when that compliance will affect their business interests.

21. The *Lingle* analysis is similarly applicable to the County's wholly arbitrary way of measuring the 500-foot rule **AND** whether or not the 500-foot rule is even rational.

### C. Plaintiffs' Equal Protection Claim is Valid.

22. The Supreme Court has recognized that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she was been irrationally singled out as a so-called 'class of one.' *Enquist v. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Villiage of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)(per curiam)." *Gerhart v. Lake County Mont.*, 637 F.3d 1013 (9th Cir. 2011).

23. Alameda County has a recent history of being antagonistic to the law-abiding "gun culture." The County may claim that its zeal is actually directed to the often tragic effects of the illegal gun culture. But singling out legitimate, and already heavily regulated gun dealers for different treatment, either with arbitrary conduct or facially suspect ordinances, is not countenanced under our constitution. Under the context of the First Amendment. *"[...] [T]he Supreme Court has consistently struck down prior restraints on speech where a state could achieve its purported goal of protecting its citizens from wrongful*

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

|   |   |
|---|---|
| 1 | *conduct by punishing only actual wrongdoers, rather than screening potential* |
| 2 | *speakers.[...]"* Berger v. City of Seattle, 569 F.3d 1029, 1044 (9th Cir. 2009). |
| 3  24. | The Defendants' arguments against the "class-of-one" claim appears to |
| 4 | concede that Plaintiffs have plead sufficient facts to allege two of the three |
| 5 | elements: "intentional conduct" "without a rational basis." The County has |
| 6 | zeroed in on the third element, whether Plaintiffs alleged sufficient facts |
| 7 | about being "treated differently than other similarly situated property |
| 8 | owners." They urge this Court to impose a higher pleading burden on the |
| 9 | Plaintiffs than the usual "notice" requirements of the Federal Rules of Civil |
| 10 | Procedure. For this proposition they cite only two cases with persuasive |
| 11 | authority from this district: *Vogt v. City of Norinda*, 2012 WL 1565111 (N.D. |
| 12 | Cal. May 2, 2012), and *Scocca v. Smith*, 2012 WL 2375203 (N.D. Cal. June |
| 13 | 22, 2012) and another case from the Second Circuit: *Ruston v. Town Bd. of* |
| 14 | *Skaneateles*, 610 F.3d 55 (2nd Cir. 2010). Furthermore the *Vogt* case also |
| 15 | stands for the proposition that a plaintiff may not develop "facts" on |
| 16 | disparate treatment through discovery. |
| 17  25. | The Defendants hope this Court swallows this "chicken-or-egg" conundrum as |
| 18 | a valid argument. But this just invites another question, how are Plaintiffs |
| 19 | to allege specific, rather than generalized, facts when those facts are uniquely |
| 20 | in the control of the Defendants? |
| 21  26. | If the Court is inclined to dismiss Plaintiffs' "class-of-one" claim under the |
| 22 | *Vogt* reasoning, then they would pray for leave to amend, with a sufficiently |
| 23 | extended deadline to file an amended complaint that would permit them to |
| 24 | conduct a public records act requests from Alameda County on their practices |
| 25 | of granting variances and conditional use permits. |
| 26 | **D. Plaintiffs' Second Amendment Claims are Valid.** |
| 27  27. | The "central holding in *Heller*: [is] that the Second Amendment protects a |
| 28 | personal right to keep and bear arms for lawful purposes, **most notably** for |

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Teixeira v. County of Alameda*       Page 13 of 20       Memo of Points and Auth Opp MTD

1      self defense within the home." *McDonald v. Chicago*, 177 L. Ed. 2d 894, 922 (2010) (emphasis added). Although self-defense in the home was the fact pattern in Heller, the rights under the Second Amendment should not be confined to the facts of one case.

28. The Second Amendment, like the First, must include the right to possess and acquire the constitutionally protected means of exercising the right – books, newspapers and arms.

29. At least one state supreme court has interpreted the "right to keep and bear arms" to include the right to acquire arms; and since California's Constitution fails to recognize a "right to keep and bear arms" (See: *Kasler v. Lockyer*, 23 Cal.4th 472, 480 (2000)), a federal court can look to other state constitutions where the right is recognized for guidance. In *Andrews v. State* – cited favorably in *District of Columbia v. Heller*, 128 S.Ct. 2783, 2806, 2809, 2818 (2008), the High Court of Tennessee found much in common between that State's guarantee of the "right to keep and bear arms" and the Second Amendment. It held:

> The right to keep and bear arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and purchase and provide ammunition suitable for such arms, and keep them in repair. [...]

*Andrews v. State*, 50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871)

30. Congress has also recognized that the "right to keep and bear arms" includes the right to engage in commercial transactions to acquire firearms. In 2005 Congress passed the Protection of Lawful Commerce in Arms Act. The PLCAA is founded on the Second Amendment and asserts Congressional authority to protect those rights under the 14th Amendment. Congressional purposes are set forth in Section (2)(b):

(2) To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

    (3) To guarantee a citizen's rights, privileges, and immunities, as applied to the States, under the Fourteenth Amendment to the United States Constitution, pursuant to section 5 of that Amendment.

    (5) To protect the right, under the First Amendment to the Constitution, of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.[4]

31. Congress also expressed an intent to broadly protect the "right to keep and bear arms" when it passed the Firearm Owners' Protection Act of 1986.[5] The Congressional findings in FOPA stated that the "right to keep and bear arms" includes the practice of allowing licensed gun dealers, under rules and regulations prescribed by the Secretary, to conduct commerce at temporary locations such as gun shows.

32. The scope and purpose of the Second Amendment was also given considerable attention by the United States Senate. See: <u>Right to Keep and Bear Arms Report of the Subcommittee on the Constitution of the United States Senate</u> (1982) – *"what is protected is an individual right of a private citizen to own and carry firearms in a peaceful manner."*

33. Congress's recognition that the Second Amendment includes the right to acquire (and carry) firearms is entitled to deference.

    In *Field v. Clark*, 143 U.S. 649, 691, this court declared that ". . . the practical construction of the Constitution, as given by so many acts of Congress, and embracing almost the entire period of our national existence, should not be overruled, unless upon a conviction that such legislation was clearly incompatible with the supreme law of the land." The rule is one which has been stated and applied many times by this court. As examples, see *Ames v. Kansas*, 111 U.S. 449, 469; *McCulloch v. Maryland*, 4 Wheat. 316, 401; *Downes v. Bidwell*, 182 U.S. 244, 286.

    *United States v. Curtiss-Wright Export Corp. et al.* 299 U.S. 304, 328; 57 S. Ct. 216, 225 (1936)

---

[4] Public Law 109-92, 15 U.S.C. § 7901-7903.

[5] Public Law 99-308, 18 U.S.C. § 921 *et seq.*

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

34. Furthermore, Plaintiffs as gun dealers, can assert the rights of their customers. See generally: *Craig v. Boren*, 429 U.S. 190 (1976).

35. The liberties enumerated in the First Amendment do not expressly include the ancillary freedoms to acquire or engage in commerce regarding books, printing presses, or bibles. Yet cities and counties have routinely been held to constitutional standards when using land use statutes to regulate (even) adult book stores. See generally: *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976); *Schad v. Mt. Ephraim*, 452 U.S. 61 (1981); and *City of L.A. v. Alameda Books*, 535 U.S. 425 (2002).

36. A law-abiding citizen's fundamental right to "keep and bear arms" means little if his/her ability to acquire the means of exercising that right in a well-regulated manner is chilled or zoned out of existence by local government regulations that bear no rational relationship to the states' legitimate interest in public safety.

37. The County's wholly arbitrary and subjective criteria for selecting the endpoints for the "500 foot rule" is an engraved invitation to a government official who does not like the "right to keep and bear arms" and would use their power to gerrymander the measurements to suit his/her policy preferences about the utility of gun stores within their jurisdiction. Clearly this kind of unfettered discretion would offend the First Amendment. *Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992). See also:

   a. A government regulation that allows arbitrary application is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981).

   b. To curtail that risk, "a law subjecting the exercise of First Amendment

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

|   |   |
|---|---|
| 1 | freedoms to the prior restraint of a license" must contain "narrow, |
| 2 | objective, and definite standards to guide the licensing authority." |
| 3 | *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-151 (1969).  See also |
| 4 | *Niemotko v. Maryland*, 340 U.S. 268, 271 (1963). |

c. The reasoning is simple: If the permit scheme "involves appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940), by the licensing authority, "the danger of censorship and of abridgment of our precious First Amendment freedoms is too great" to be permitted, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975).

38. An adjudication of this case will require the County to establish some kind of – at least – rational basis for their 500-foot rule. As noted in the Declarations of BRANDON COMBS of Cal-FFL (Doc # 19) and GENE HOFFMAN of CGF (Doc # 17):

a. The employees, patrons and vendors of gun stores are, by definition, law-abiding people.  The symphony of federal and state laws that regulate the firearms industry, and retail sales in particular, do not need to be recounted here.  It is enough that this Court be made aware that the traffic through a properly licensed gun store cannot be compared with the traffic that would attend: liquor stores, adult bookstores, tattoo parlors, strip-clubs and other establishments that have traditionally been subject to a *secondary effects* analysis.  See: *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986) and *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560 (1991).

b. Furthermore NOBRIGA, TEIXEIRA and GAMAZA agreed to operate their store Tuesday through Saturday from the 10:00 a.m. to 5:00 p.m. and remain closed on Sunday and Monday.

c. The County should be required to prove that "residential districts" are

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

|   |   |   |
|---|---|---|
| 1 |    | a sensitive place because, even though that proposition would flatly |
| 2 |    | contradict the holdings of *District of Columbia v. Heller*, 554 U.S. 570 |
| 3 |    | (2008) and *McDonald v. Chicago*, 561 U.S. ___, 130 S.Ct. 3020 (2010). |
| 4 | d. | That proposition would also run afoul of the pair of California cases |
| 5 |    | that stand for the proposition that local governments cannot regulate |
| 6 |    | the law-abiding possession of firearms in a residence. *Doe v. City and* |
| 7 |    | *County of San Francisco*, 136 Cal. App. 3d 509 and *Fiscal v. City and* |
| 8 |    | *County of San Francisco*, 158 Cal. App. 4th 895. |

39. These questions must be put to the County and they must provide answers that would survive "almost strict scrutiny." *Ezell v. City of Chicago*, 651 F.3d 684, 708-709 (7th Cir. 2011).

    a. How does a gun store, that would be in compliance with Resolution No.: Z-11-70, that is located across 12 lanes of Interstate 880 have ANY effect on the homes located in the San Lorenzo Homes Association? (The complainant in the appeal.)

    b. How does a gun store, that would be in compliance with Resolution No.: Z-11-70, that is located across 8 lanes of Hesperian Blvd., behind a 20 foot concrete wall of an adjacent building, have any effect on the property located at 452 Albion Way. Especially when the resident of that property has no objection to the gun store?

    c. What is dangerous about a gun store located 450 feet away, but not dangerous if located 500 feet away?

40. Finally, even if the County tenders some kind of justification for the "500 foot rule" – that justification must be based on evidence. From *Ezell*, at 709:

> [T]he government must supply actual, reliable evidence to justify restricting protected expression based on secondary public-safety effects. See *Alameda Books, Inc.*, 535 U.S. at 438 (A municipality defending zoning restrictions on adult bookstores cannot "get away with

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Teixeira v. County of Alameda*     Page 18 of 20     Memo of Points and Auth Opp MTD

shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance."); see also *Annex Books, Inc. v. City of Indianapolis*, 624 F.3d 368, 369 (7th Cir. 2010) (affirming preliminary injunction where a city's "empirical support for [an] ordinance [limiting the hours of operation of an adult bookstore] was too weak"); *New Albany DVD, LLC v. City of New Albany*, 581 F.3d 556, 560-61 (7th Cir. 2009) (affirming preliminary injunction where municipality offered only "anecdotal justifications" for adult zoning regulation and emphasizing the necessity of assessing the seriousness of the municipality's concerns about litter and theft).

### E. The Ordinance is Unconstitutional on its Face.

41. *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. ___, 130 S.Ct. 3020 (2010) resolved the status of the Second Amendment 'right to keep and bear arms' and its relationship to state and local government action that impinges on that fundamental right. It should not be controversial that gun stores (even though subject to federal and state licensing) are the Second Amendment analog to the First Amendment's book stores. See generally: *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976); *Schad v. Mt. Ephraim*, 452 U.S. 61 (1981); and *City of L.A. v. Alameda Books*, 535 U.S. 425 (2002).

42. A Fed.R.Civ.Pro. 12(b)(6) motion is not the appropriate forum for the Defendants in this case to assert factual justifications for their ordinance. They must set forth that justification in an Answer and then convince this Court (or a jury) that the facts are un-controverted (or true). It is enough at this stage of the case that Plaintiffs have alleged a burden on a constitutional right caused by the policies of a state actor under 42 U.S.C. § 1983. Now the burden shifts to the government to allege and prove facts that would allow this Court to conduct an appropriate constitutional analysis of the ordinance.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1  43. Nor can the County of Alameda be permitted to "boot-strap" a factual finding that residential districts are "sensitive places." The Fed.R.Civ.Pro. do not permit a Defendant to make those kind of factual showings in a Rule 12 proceeding. Interpreting the rationale set forth in *City of Los Angeles v. Alameda Books, Inc.*, (2002) 535 U.S. 425, the Seventh Circuit held:

> [...] [B]ecause books (even of the "adult" variety) have a constitutional status different from granola and wine, and laws requiring the closure of bookstores at night and on Sunday are likely to curtail sales, the public benefits of the restrictions must be established by evidence, and not just asserted. The evidence need not be local; Indianapolis is entitled to rely on findings from Milwaukee or Memphis (provided that a suitable effort is made to control for other variables). See *Andy's Restaurant*, 466 F.3d at 554-55. **But there must be evidence; lawyers' talk is insufficient**. (Emphasis added.)

> *Annex Books v. City of Indianapolis*,
> 581 F.3d 460, 463 (7th Cir. 2009)

44. The arguments made under Headings: F and G are equally without merit and merely recycle Defendants' earlier arguments.

45. Finally, the argument made by Defendants at Heading H appears to be inconsequential to the adjudication of this case. As long as Plaintiffs can proceed against the County of Alameda and the Alameda Board of Supervisors, then Plaintiffs have no objection to dismissing the individual Defendants: Chan, Miley and Carson.

## **CONCLUSION**

46. Defendants' Motion to Dismiss should denied in its entirety. The Defendants should be ordered to answer this lawsuit and the parties must be permitted to begin conducting discovery. In the alternative, the Court should grant Plaintiffs leave to amend their Complaint to cure any perceived defects.

Respectfully Submitted on November 16, 2012,

 /s/ Donald Kilmer
Donald E.J. Kilmer, Jr., (SBN: 179986)
Attorney for Plaintiffs

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Teixeira v. County of Alameda*       Page 20 of 20       Memo of Points and Auth Opp MTD