1  DONNA R. ZIEGLER [142415]
   County Counsel
2  By:  MARY ELLYN GORMLEY  [154327]
   Assistant County Counsel
3  SAMANTHA N. STONEWORK-HAND [245788]
   Associate County Counsel
4  Office of County Counsel
   County of Alameda
5  1221 Oak Street, Suite 450
   Oakland, California 94612
6  Telephone:   (510) 272-6700

7  Attorneys for County of Alameda, Alameda
   Board of Supervisors, Wilma Chan,
8  Nate Miley, and Keith Carson

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DIVISION OF CALIFORNIA

12

13  JOHN TEIXEIRA, STEVE NOBRIGA,          Case No.: CV12-3288 (SI)
    GARY GAMAZA, CALGUNS
14  FOUNDATION (CGF), INC., SECOND         **DEFENDANTS' OPPOSITION TO**
    AMENDMENT FOUNDATION (SAF), INC.,      **PLAINTIFFS' MOTION FOR**
15                                         **PRELIMINARY INJUNCTION**
    and CALIFORNIA ASSOCIATION OF
16  FEDERAL FIREARMS LICENSEES (Cal-       DATE:          December 21, 2012
    FFL),                                  TIME:          9:00 a.m.
17                                         DEPARTMENT: Ctrm 10, 19th Floor

18                     Plaintiffs,

19         v.

20  COUNTY OF ALAMEDA, ALAMEDA
    BOARD OF SUPERVISORS (as a policy
21  making body), WILMA CHAN in her official
    capacity, NATE MILEY in his official
22  capacity, and KEITH CARSON in his official
    capacity,
23
24                     Defendants.

25

26

27

28

---

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     FACTUAL and PROCEDURAL BACKGROUND ................................................ 2

III.    LEGAL STANDARD ........................................................................................... 4

IV.     ANALYSIS .......................................................................................................... 4

        A.      Plaintiffs Cannot Show Likelihood of Success On The Merits ................... 5

                1.      Plaintiffs are estopped from challenging both the timeliness of the
                        appeal and the methodology used in applying the Ordinance ......... 5

                2.      Plaintiffs' due process claim is not likely to succeed ...................... 7

                        a.      Plaintiffs do not have a protected property interest in the
                                conditional use permit and variance. ................................... 7

                        b.      Plaintiffs received all the process they were due. ................ 8

                        c.      The SLVHA appeal was timely. ........................................... 8

                3.      Plaintiffs' equal protection claim is unlikely to succeed ................. 9

                        a.      Plaintiffs fail to allege a class of one claim .......................... 9

                        b.      The methodology for applying the Ordinance is objective,
                                consistent, and based on the clear language of the
                                Ordinance. ....................................................................... 10

                4.      Plaintiffs' Second Amendment claims are unlikely to succeed ........ 12

                        a.      The Ordinance falls outside the scope of the Second
                                Amendment. ...................................................................... 13

                        b.      Even If the Ordinance substantially burdens a core right, it
                                survives constitutional scrutiny. ....................................... 14

                                i.      Substantial government interest ................................. 14

                                ii.     Reasonable alternative avenues................................. 16

                        c.      Plaintiffs Are Estopped From Challenging The Ordinance As
                                Applied .............................................................................. 16

    d.  Even If Plaintiffs Were Not Collaterally Estopped From Challenging The Ordinance, The Ordinance Is Constitutional As Applied ........................................................................ 17

 B. Plaintiffs Cannot Show That They Are Likely To Suffer Irreparable Harm 18

 C. The Balance of Equities Tips In The County's Favor ................................ 20

 D. An Injunction Is Not In The Public Interest ............................................. 20

V. CONCLUSION  ............................................................................................. 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ....................................................................... 4

*Bateson v. Geisse*,
    857 F.2d 1300 (9th Cir. 1988) ...................................................................... 7

*Board of Regents v. Roth*,
    408 U.S. 564 (1972) ...................................................................................... 7

*Briggs v. City of Rolling Hills Estates*
    40 Cal.App.4th 637 (1995) ......................................................................... 17

*Bullock v. Town of Woodside*,
    64 F. App'x 18 (9th Cir. 2003) ..................................................................... 5

*Cal. Pharm. Assn'n v. Maxwell-Jolly*,
    563 F.3d 847 (9th Cir. 2009) ...................................................................... 19

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ...................................................................................... 18

*City of Renton v. Playtime Theatres, Inc.*
    475 U.S. 41 (1986) ............................................................................... 14, 15

*City of Santee v. Superior Court*
    228 Cal.App.3d 713 (1991) ........................................................................ 17

*Colorado River Indian Tribes v. Town of Parker*,
    776 F.2d 846 (9th Cir. 1985) ...................................................................... 19

*Crippen v. City of Fresno*,
    274 F. App'x 526 (9th Cir. 2008) ....................................................... 5, 6, 17

*Diamond v. City of Taft*,
    215 F.3d 1052 (9th Cir. 2000) .................................................................... 15

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .................................................................................... 12

*Embury v. King*,
    191 F. Supp. 2d 1071 (N.D. Cal. 2001) ....................................................... 6

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ......................................................................... 12, 14, 19

*Fund for Animals, Inc. v. Lujan*,
  962 F.2d 1391 (9th Cir.1992) ................................................................................... 20

*Gerhart v. Lake County, Mont.*,
  637 F.3d 1013 (9th Cir. 2011) ................................................................................... 9

*Golden Gate Rest. Ass'n v. City of San Francisco*,
  512 F.3d 1112  (9th Cir. 2008) ................................................................................. 20

*Hall v. Garcia*,
  No. C 10-03799, 2011 WL 995933 at *2 (N.D. Cal. Mar. 17, 2011) .......................... 13

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) .............................................................. 1, 12, 13, 19

*Johnson v. City of Loma Linda*
  24 Cal.4th 61 (2000) .................................................................................................. 5

*Kaiser v. County of Sacramento*,
  780 F. Supp. 1309 (E.D. Cal 1991) .......................................................................... 18

*Makdessian v. City of Mountain View*,
  152 F. App'x  642 (9th Cir. 2005) .............................................................................. 8

*McDonald v. City of Chicago*,
  130 S. Ct. 3020 (2010) ......................................................................................... 12, 13

*Memphis Light, Gas & Water Div. v. Craft*,
  436 U.S. 1 (1978) ...................................................................................................... 8

*Miller v. County of Santa Cruz*,
  39 F.3d 1030 (9th Cir. 1994) .................................................................................. 6, 7

*Nordyke v. King*,
  644 F.3d at 776 (9th Cir. 2011) ............................................................................... 13

*North Pacifica LLC v. City of Pacifica*,
  526 F.3d 478 (9th Cir. 2008) .................................................................................... 10

*Orantes–Hernandez v. Thornburgh*,
  919 F.2d 549 (9th Cir. 1990) .................................................................................... 19

*Perkins v. City of St. Paul*,
  982 F. Supp. 652 (D. Mn. 1997) .............................................................................. 21

*Ruston v. Town Bd. for Town of Skaneateles,*
  610 F.3d 55 (2d Cir.  2010) ............................................................ 10

*S.D. Myers, Inc. v. City & County of San Francisco,*
  336 F.3d 1174 (9th Cir. 2003) ....................................................... 20

*Scocca v. Smith,*
  C-11-1318 EMC, 2012 WL 2375203 at *5 (N.D. Cal. June 22, 2012) ................. 10, 12

*Smith v. County of Los Angeles,*
  211 Cal.App.3d 188 (1999) ............................................................. 7

*Stormans, Inc. v. Selecky,*
  586 F.3d 1109 (9th Cir. 2009) ....................................................... 20

*Suter v. City of Lafayette,*
  57 Cal.App.4th 1109 (1997) .......................................................... 15

*United States v. Chester,*
  628 F.3d 673 (4th Cir. 2010) ........................................................ 12

*United States v. Marzzarella,*
  614 F.3d 85 (3d Cir. 2010) ....................................................... 12, 13

*United States v. Masciandaro,*
  638 F.3d 458 (4th Cir. 2011) ........................................................ 18

*United States v. Reese,*
  627 F.3d 792 (10th Cir. 2010) ....................................................... 12

*United States v. Skoien,*
  614 F.3d 638 (7th Cir. 2010) ........................................................ 13

*United States v. Utah Construction & Mining Co.,*
  384 U.S. 394 (1966) .................................................................. 6

*Univ. of Tennessee v. Elliott,*
  478 U.S. 788 (1986) ............................................................ 5, 6, 17

*Village of Euclid v. Ambler Realty Co.,*
  272 U.S. 365 (1926) ................................................................. 15

*Village of Willowbrook v. Olech,*
  528 U.S. 562 (2000) .................................................................. 9

*Vogt v. City of Orinda,* No. C 11-2595 CW,
  2012 WL 1565111 at *3 (N.D. Cal. May 2, 2012) ...................................... 10

*Weinberger v. Romero–Barcelo*,
  456 U.S. 305, 312 (1982) ...................................................................... 20

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...................................................................... 4, 18, 21

**Government Code**

Cal Gov't Code § 65009(c)(1) ...................................................................... 6

Cal. Gov. Code, § 65009(c)(1)(E) ...................................................................... 8

**Code of Civil Procedure**

§ 1094.5 ...................................................................... 5, 8, 16

1    Defendants County of Alameda, Alameda Board of Supervisors, and Wilma

2    Chan, Nate Miley and Keith Carson, in their official capacities, respectfully submit this

3    Opposition to Plaintiffs' Motion for Preliminary Injunction.

4                    I.        **INTRODUCTION**

5        This case involves John Teixeira, Steve Nobriga, and Gary Gamaza's ("Individual

6    Plaintiffs") attempt to open and operate a gun store in unincorporated Alameda County.

7    Alameda County Land Use Ordinance § 17.54.131 (the "Ordinance") governs the

8    location of gun stores within the unincorporated area and, among other things, requires

9    a gun store to be located at least 500 feet from a residentially zoned district.  The

10   location that Plaintiffs chose to open and operate the gun store is less than 500 feet

11   from a residentially zoned district.  Plaintiffs were aware, at least as early as July 2011,

12   that the property they selected was not in compliance with the Ordinance.  Rather than

13   seek out another location that complies with the Ordinance, Plaintiffs assert in a

14   Complaint filed on June 25, 2012 that Defendants have violated their due process,

15   equal protection, and Second Amendment rights by enforcing the terms of the

16   Ordinance.  While Defendants' motion to dismiss the Complaint is pending, Plaintiffs

17   contend that they are entitled to a preliminary injunction.

18       A court should rarely grant a preliminary injunction's extraordinary relief,

19   especially in a case such as this one where the law remains unsettled.  This case

20   centers on the amorphous contours of the Second Amendment as it may relate to the

21   right to sell and acquire firearms.  Post-*Heller* standards for evaluating such Second

22   Amendment claims are still evolving.  A Second Amendment claim of this type would

23   have been unheard of just five years ago.  Yet, prior to any discovery, Plaintiffs demand

24   that this Court decide whether they are likely to succeed on the merits in the face of

25   nascent and continually-developing law.

26       Plaintiffs seek injunctive relief that would mandate Alameda County (the

27   "County") to permit them to operate a business that does not comply with its long-

28

---

1    standing, presumptively valid zoning regulations.  The Court is asked to override the

2    County's broad power to regulate commercial activity based solely on conclusory

3    allegations and self-serving declarations unsupported by any evidence whatsoever.

4    Plaintiffs have not sufficiently alleged any of their claims, let alone met their extremely

5    high burden to obtain a preliminary injunction.  Accordingly, this Court must deny

6    Plaintiffs' Motion for Preliminary Injunction.

7                    II.    **FACTUAL and PROCEDURAL BACKGROUND**

8            As detailed in Defendants' Memorandum of Points and Authorities In Support Of

9    Motion to Dismiss ("Motion to Dismiss") (Doc. #13-1), Individual Plaintiffs sought to open

10   and operate a gun store in the unincorporated area of Alameda County.  Alameda

11   County Ordinance § 17.54.131 (the "Ordinance") provides that no conditional use permit

12   for firearms sales shall issue unless certain findings are made by the West County

13   Board of Zoning Adjustments ("WBZA"), including that the subject premises is not

14   located within five hundred (500) feet of a residentially-zoned district.  (Doc. #13-3 at p.

15   27.)

16           On or about May 6, 2011, during the pre-conditional use permit application

17   meeting, Rodrigo Orduña, Senior Planner for the Alameda County Community

18   Development Agency Planning Department, met with Plaintiff Nobriga regarding

19   Individual Plaintiffs' proposed gun store.  (Declaration of Rodrigo Orduña at ¶21.)  At the

20   pre-application meeting, Plaintiff Nobriga asserted that the distance between the

21   proposed location of the gun store to the nearest residence was over 500 feet.  (*Id.* at

22   ¶22.)  Mr. Orduña did not believe that Plaintiffs had measured the distance in

23   accordance with the Ordinance; he told Plaintiff Nobriga that he would confirm the

24   correct way to measure the distance and get back to him.  (*Id.* at ¶23; Doc. #20-7.)

25           On July 1, 2011, at the conditional use permit application meeting, Mr. Orduña

26   informed Plaintiff Nobriga that pursuant to the provisions of the Ordinance, the correct

27   way to measure the distance was from the building wall of the proposed gun shop to the

28

1    boundary line of the residentially zoned district, not the closest residential structure

2    within the district.  (Declaration of Rodrigo Orduña at ¶24.)  Applying the correct

3    measurements, the proposed location for the gun shop was located within 500 feet of

4    two residentially-zoned districts and was not in compliance with the Ordinance.  (*Id.* at

5    ¶26, Exs. 1, 2.)

6         On December 14, 2011, the WBZA considered Plaintiffs' application for a

7    conditional use permit and found that Plaintiffs' proposed gun store was located at "a

8    distance of less than 500 feet from a residentially zoned district where 500 feet is

9    required, . . ."  (Doc. #13-3 at 13.)  Because the proposed gun store did not comply with

10   the Ordinance, the WBZA found that Plaintiffs would require a variance.  (Doc. #20-17

11   at 6.)  The WBZA made the necessary findings to approve a variance, including the

12   special circumstances that a multi-lane highway and walls and fences created a

13   physical obstruction between the proposed gun shop and the nearest residentially-

14   zoned districts.  (*Id.*)

15        In Resolution No. Z-11-70, the WBZA granted Individual Plaintiffs' variance and

16   approved their conditional use permit.  (Complaint at ¶32.)  The San Lorenzo Village

17   Homes Association ("SLVHA") timely appealed the WBZA's decision to the planning

18   department.  (Declaration of Albert Lopez at ¶13.)  Thereafter, on February 28, 2012,

19   the Alameda County Board of Supervisors (the "Board") heard and sustained the

20   SLVHA appeal, finding that special circumstances did not apply to the proposed gun

21   store.  (Doc. #20, Ex. T.)  Although Plaintiffs now claim that the SLVHA appeal was

22   untimely, they never filed a writ of mandamus to challenge the Board's decision.

23        On June 25, 2012, Individual Plaintiffs, the Calguns Foundation, the Second

24   Amendment Foundation, Inc., and the California Association of Federal Firearms

25   Licensees filed a Complaint asserting four Claims for Relief:  (1) due process claim

26   regarding the allegedly untimely appeal which led to the denial of a conditional use

27   permit and variance for a gun store; (2) equal protection claim regarding the application

28

1  of the Ordinance to Plaintiffs' proposed gun store; (3) Second Amendment facial

2  challenge to the Ordinance; and (4) Second Amendment challenge to the Ordinance as

3  applied to the Individual Plaintiffs.

4       On September 27, 2012, Defendants filed a Motion to Dismiss (Doc. #13) and

5  supporting documents.

6       On November 5, 2012, Plaintiffs filed a Motion for Preliminary Injunction seeking

7  an injunction ordering that the County comply with Resolution No. Z-11-70 and allow

8  their gun store to open.  (Doc. #21.)

9  **III.**   **LEGAL STANDARD**

10       A plaintiff seeking a preliminary injunction must make a clear showing that: (1) he

11  is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the

12  absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an

13  injunction is in the public interest.  *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d

14  1046, 1052 (9th Cir.  2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

15  20 (2008)).  A preliminary injunction is an "extraordinary remedy that may only be

16  awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555

17  U.S. at 22.

18  **IV.**   **ANALYSIS**

19       Although not entirely clear from their moving papers, Plaintiffs apparently seek a

20  preliminary injunction compelling the County to implement WBZA Resolution No. Z-11-

21  70.  (*See* Doc. #21at ¶¶ 8, 21.)  In effect, Plaintiffs request that this Court force the

22  County to allow Plaintiffs to open and operate a gun store in violation of the Ordinance,

23  prior to deciding the case on the merits.  Because Plaintiffs cannot establish that they

24  are likely to succeed on the merits, that they are likely to suffer irreparable harm, that

25  the equities tip in their favor, or that an injunction would serve the public interest, the

26  Court must deny their motion for a preliminary injunction.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Plaintiffs Cannot Show Likelihood of Success On The Merits

As detailed in Defendants' Motion to Dismiss, not only are Plaintiffs not likely to succeed on the merits, but this Court should dismiss their Complaint as a matter of law.

### 1.    Plaintiffs are estopped from challenging both the timeliness of the appeal and the methodology used in applying the Ordinance

Plaintiffs allege that Defendants violated their due process and equal protection rights by considering and sustaining a purportedly untimely appeal and measuring distances in an unreasonable manner.  (Complaint at ¶¶ 48, 50.)  Plaintiffs seek judicial review of the Board's decision both to accept and sustain the appeal.  (Doc. #21 at ¶¶ 9-10.)  Because Plaintiffs did not timely seek a writ of administrative mandate challenging the Ordinance or any aspect of the WBZA's or the Board's decisions, Plaintiffs are estopped from pursuing any claims whatsoever against Defendants, let alone extraordinary injunctive relief.

The exclusive procedure for judicial review of administrative determinations is a petition for a writ of mandate in accordance with California Code of Civil Procedure section 1094.5.  *Bullock v. Town of Woodside*, 64 F. App'x 18, 21 (9th Cir. 2003).  Before initiating a lawsuit in federal court for injunctive relief and damages, Plaintiffs must first exhaust their judicial remedies regarding the Defendants' zoning determinations.  *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70-71.  Because Plaintiffs did not exhaust their judicial remedies, the WBZA and the Board's findings are given "binding effect" and have "achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action."  *Id.* at 70 (internal citation omitted).  Thus, the Board's decisions are final and are given preclusive effect in both state and federal court.  *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 796-99 (1986); *Crippen v. City of Fresno*, 274 F. App'x 526, 528-29 (9th Cir. 2008); *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994).  These decisions

1  are equivalent to a final state court judgment entitled to res judicata and collateral

2  estoppel effect.  *Miller*, 39 F.3d at 1038.

3         That Plaintiffs allege constitutional claims pursuant to section 1983 does not alter

4  the analysis.  *See Elliott*, 478 U.S. at 796-99.  Because plaintiffs did not seek timely

5  review of WBZA's or the Board's decision, Plaintiffs are collaterally estopped from

6  relitigating this issue in the guise of a section 1983 action alleging violations of their

7  constitutional rights.  *Miller*, 39 F.3d at 1034.

8         Plaintiffs' failure to timely writ the Board's decision is an incurable defect, as the

9  statute of limitations for filing such a writ has long since passed.  Alameda County

10 Ordinance § 17.54.820 (45 day statute of limitations);[1] Cal Gov't Code § 65009(c)(1) *et*

11 *seq.* (90 day statute of limitations).

12        Even if the Court were to consider Plaintiffs' claims, the doctrine of claim and

13 issue preclusion would still bar those claims.  *Embury v. King*, 191 F. Supp. 2d 1071,

14 1083 (N.D. Cal. 2001).  Pursuant to 28 U.S.C. § 1738, federal courts are required to

15 give preclusive effect to state court reviewed administrative determinations.  28 U.S.C.

16 § 1738.  In *Miller*, the Ninth Circuit held that the preclusive effect must also be given to

17 even unreviewed state administrative adjudications of legal as well as factual issues, so

18 long as the proceeding satisfies the fairness requirements of *United States v. Utah*

19 *Construction & Mining Co.*, 384 U.S. 394 (1966).  *Miller*, 39 F. 3d at 1032-33; *Embury*,

20 191 F. Supp at 1083.  As detailed in the Motion to Dismiss, because the WBZA and the

21 Board's administrative determinations comport with the fairness requirements of *Utah*

22 *Construction*, the Court must give collateral estoppel effect to the WBZA's and the

23 Board's findings.  *Elliott,* 478 U.S. at 796-99; *Crippen*, 274 F. App'x at 528-29.  (Doc.

24 #13-1 at pp. 6-8.)

25

26

27 [1] In its motion to dismiss Defendants afforded Plaintiffs the benefit of the doubt and afforded them the full
   90 days under § 65009(c)(1).  Defendants do not waive their argument that the 45 day statute of
28 limitations pursuant to Alameda County Ordinance § 17.54.820 governs this action.

1    The WBZA ruled that the methodology used to measure the distance between

2 the Plaintiffs' proposed gun store and the nearest residentially-zoned district was

3 correct, and that Plaintiffs' proposed gun store was within 500 feet of the nearest

4 residentially-zoned district in violation of the Ordinance.  (Doc. #20-16 at 2; Doc. #20-17

5 at 5-6.)  The Board relied on these determinations when it sustained the appeal and

6 denied Plaintiffs' conditional use permit and variance.  (Doc. #20, Ex. T.)  Because

7 Plaintiffs did not file a writ, which was their "exclusive remedy" for challenging these

8 determinations, the WBZA and Board determinations "bind[] the parties on the issues

9 litigated" because the Plaintiffs "cannot obstruct the preclusive use of the [WBZA's and

10 the Board's decisions] simply by foregoing [the] right to appeal."  *Miller*, 39 F.3d at 1032.

11    **2.    Plaintiffs' due process claim is not likely to succeed**

12         a.    <u>Plaintiffs do not have a protected property interest in the</u>
<u>conditional use permit and variance</u>.

13

14    To state a procedural due process claim, Plaintiffs must show they have a

15 protected property interest in the conditional use permit and variance, and that the

16 County denied this protected interest without the process which was due under the

17 circumstances.  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Bateson v.*

18 *Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988).

19    When a conditional use permit is conditioned on the approval of an agency or

20 governing body, and the applicable regulations impose no substantive limits on that

21 body's exercise of discretion, the governing body enjoys broad discretion, and an

22 applicant cannot establish a protectable property interest sufficient to assert a due

23 process violation.  *Bateson*, *supra,* 857 F.2d at 1305; s*ee also Smith v. County of Los*

24 *Angeles* (1999) 211 Cal.App.3d 188, 198-99.  As detailed in Defendants' Motion to

25 Dismiss, although specific requirements must be met to obtain a conditional use permit,

26 both the WBZA and the Board retain broad discretion to grant or deny a conditional use

27 permit; because Defendants enjoy broad discretion, Plaintiffs cannot claim a property

28 right in order to state a claim for a due process violation.  (Doc. #13-1 at pp. 8-9.)

b.    Plaintiffs received all the process they were due.

Even assuming that the Board's denial of the conditional use permit and sustaining of the appeal amounted to a deprivation of a protected property interest, Plaintiffs still received all the process that they were due under the Constitution.  The Due Process Clause requires notice and an opportunity to be heard before the deprivation of a significant property interest.  *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13, 16 (1978).  Even assuming that Plaintiffs had a property interest in their conditional use permit, due process only requires notice to the permittee, a hearing, proper reasons for the revocation, and some form of judicial review.  *Makdessian v. City of Mountain View*, 152 F. App'x  642, 644 (9th Cir. 2005).  Here, Plaintiffs had notice of and attended a public hearing before the Board; they argued their case before the Board, and the Board gave their reasons for sustaining the appeal.  (Complaint at ¶¶ 34, 37; Doc. #20, Ex. T.)  Plaintiffs' remedy was a writ of mandate challenging the Board's consideration of a purportedly untimely appeal.  Cal. Code Proc. § 1094.5.  This was the one and only way to challenge such a finding.  *Id.*; Cal. Gov. Code, § 65009, subd. (c)(1)(E).  Plaintiffs chose not to exercise that option.  Having made that decision, they cannot now seek redress in this court.

c.    The SLVHA appeal was timely.

Plaintiffs claim their due process rights were violated because the Board considered a purportedly untimely appeal.  Plaintiffs claim that the SLVHA appeal had to be filed by December 26, 2011, but that two date stamps on the appeal letter reflect the dates of December 29, 2011 and January 3, 2012.  (Doc. #21 at ¶ 8i.)

Pursuant to Alameda County Ordinance § 17.54.670, an appeal of a WBZA decision must be filed within ten days after the date of the order.  (Doc. #20-5 at 19 (Alameda County Ordinance § 17.54.670.))  The appeal may be taken by any property owner or other party affected by the order.  (*Id.*; Declaration of Albert Lopez at ¶5.)  A notice of appeal, specifying the grounds for such an appeal, may be filed with the clerk

1    of the Board or the planning department.  (Doc. #20-5 at 19 (Ordinance § 17.54.670.))

2    The Planning Department must receive a written communication of the appeal in order

3    for it to be considered timely.  (Declaration of Albert Lopez at ¶7.)

4             On December 14, 2011 the WBZA approved Plaintiffs' conditional use permit and

5    variance in Resolution No. Z-11-70.  On December 22, 2012, Albert Lopez, the Planning

6    Director for the Alameda County Community Development Agency Planning

7    Department, received an email from Kathy Martins, Administrator of SLVHA, attaching

8    the appeal letter.  (Declaration of Albert Lopez at ¶¶ 9-10.)  The SLVHA represents

9    property owners in San Lorenzo Village, which is a residentially-zoned district located

10   446 feet from the proposed gun shop.  (Doc. #20-15 at 10.)  Ms. Martins' December 22,

11   2011 email explained that she had earlier that day attempted unsuccessfully to hand

12   deliver the appeal to the Planning Department, and verified that the SLVHA's appeal

13   letter was being simultaneously transmitted via federal express.  (Declaration of Albert

14   Lopez at ¶10; Ex. 1.)  The Planning Department received the SLVHA appeal of the

15   WBZA decision in writing within ten days after the date of the WBZA order.  (*Id.* at

16   ¶¶ 13-14.)  The SLVHA appeal was timely, and the Board properly considered and ruled

17   on it.

18            Because SLVHA's appeal was timely, it is abundantly clear that Plaintiffs are

19   unlikely to succeed on a due process claim.  For this reason alone, Plaintiffs' Motion for

20   Preliminary Injunction should be denied.

21            **3.       Plaintiffs' equal protection claim is unlikely to succeed**

22                       a.       Plaintiffs fail to allege a class of one claim

23            Plaintiffs have not sufficiently alleged a class of one equal protection claim.  To

24   adequately plead a "class of one" claim, Plaintiffs must sufficiently allege that the Board:

25   "(1) intentionally (2) treated them differently than other similarly situated property

26   owners, (3) without a rational basis."  *Gerhart v. Lake County, Mont.*, 637 F.3d 1013,

27   1022 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000);

28

1    *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)).  A sufficient

2    allegation must identify <u>specific</u> similarly-situated businesses to which Defendants

3    granted variances or for which the distances were measured differently.  *Vogt v. City of*

4    *Orinda*, No. C 11-2595 CW, 2012 WL 1565111 at *3 (N.D. Cal. May 2, 2012).

5            Courts have consistently held that where a plaintiff makes a class of one claim

6    there is a higher premium for a plaintiff to identify how he or she is similarly situated to

7    others.  *See e.g., Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir.

8    2010).  Plaintiffs' bald, conclusory allegations that merely assert on information or belief

9    that similarly-situated businesses were treated differently are insufficient to state a

10   claim.  *See Vogt*, 2012 WL 1565111 at *3; *see also Scocca v. Smith*, C-11-1318 EMC,

11   2012 WL 2375203 at *5 (N.D. Cal. June 22, 2012).  Because Plaintiffs fail to specifically

12   identify similarly-situated businesses that were treated differently, their class of one

13   equal protection claim must fail.

                        b.    <u>The methodology for applying the Ordinance is objective,
                              consistent, and based on the clear language of the
                              Ordinance.</u>

16           Even if Plaintiffs could sufficiently allege an equal protection claim based on

17   allegedly "unreasonable measurements," the methodology used to measure the

18   distance between the Plaintiffs' proposed gun store to the nearest residentially-zoned

19   district was neither arbitrary nor subjective.  Rather, the measurement methodology is

20   directly derived from the clear language of the Ordinance.  (Declaration of Rodrigo

21   Orduña at ¶5.)

22           Ordinance § 17.54.131(B) requires, "That the <u>subject premises</u> is not within five

23   hundred (500) feet of any of the following:  <u>residentially zoned district</u> …"  (emphasis

24   added).  The Ordinance specifies on its face that the measurement must be taken from

25   the "subject premises."  (Declaration of Rodrigo Orduña at ¶7.)  If there is only one

26   structure or business on the property, the term "premises" refers to the building

27   perimeter.  (*Id.* at ¶8; Doc. #20-15 at 5.)  However, when there is more than one

28

---

1   structure or business on the property, then "premises" must be defined as the specific

2   tenant space, or area of the structure, including the building walls, on the property.  (*Id.*)

3   The proposed gun shop is one of two structures located on the same lot.  (Doc. #20-15

4   at 2; Declaration of Rodrigo Orduña at ¶9.)  Therefore, the measurement must be taken

5   from the building wall of the proposed gun store.  (*Id.* at ¶10.)

6         The term "residentially zoned district" also has a specific meaning.  (*Id.* at ¶12.)

7   A residentially zoned district consists of a polygon which outlines an area in

8   unincorporated Alameda County zoned for residential use.  (*Id.*)  Accordingly, the

9   Ordinance specifies that the measurement must be taken from the building wall of the

10  specific structure of the proposed gun shop to the property line of the nearest

11  residentially zoned district.  (*Id.* at ¶¶ 7-13; Doc. #20-15 at 10.)  That measurement is

12  always taken in a straight line.  (Declaration of Rodrigo Orduña at ¶¶ 14-15.)  In this

13  case, because of the unconventional wedge shape of the nearest residentially zoned

14  district, the County erred on the side of caution by taking the measurement from the

15  building wall of the proposed gun shop to a usable location inside the property line of

16  the nearest residentially zoned district.  (Doc. #20-15 at 10; Declaration of Rodrigo

17  Orduña at ¶18, Ex. 2.)  Even this generous measurement placed the proposed location

18  within 500 feet of a residentially-zoned district.  (*Id.*)

19        The County has consistently used the above methodology to measure distances

20  to determine compliance with zoning ordinances.[2]  (Declaration of Rodrigo Orduña at

21  ¶13.)  Plaintiffs assert that they were denied equal protection because the methodology

22  to measure distances allegedly changed throughout the process.  (Complaint at ¶¶ 23,

23  31, 50.)  Plaintiffs were the only ones initially confused about the methodology.

_____

25  [2] Plaintiffs' bald assertions to the contrary, a "door to door" measurement is illogical and impractical for
    several reasons.  (Declaration of Rodrigo Orduña at ¶¶ 19-20.)   The Planning Department does not keep
26  track of where doors on commercial or residential buildings are located.  (*Id.* at ¶21.)  Plaintiffs'
    methodology would actually vest greater discretion in the Board because it would allow the County to
27  designate one door as the "main entrance" or "front door" when there is more than one entrance and exit
    to a building.  (*Id.* at ¶22.)  Since doors on commercial buildings can be moved and replaced with relative
28  ease (*Id.* at ¶19), future applicants could be tempted to game the system.

_____

1   (Declaration of Rodrigo Orduña at ¶25.)  As Plaintiffs admit, on July 1, 2011, during the

2   application submittal meeting with the planning department, Mr. Orduña, a Senior

3   Planner, resolved that confusion.  (Declaration of Rodrigo Orduña at ¶26; Complaint at

4   ¶22.)  At that time, Plaintiffs were also advised that the proposed gun store did not

5   comply with the Ordinance.  (Declaration of Rodrigo Orduña at ¶26.)  Plaintiffs' initial

6   confusion was resolved five months prior to the December 14, 2011 WBZA hearing on

7   the conditional use permit and variance.

8          Even had Plaintiffs sufficiently alleged an equal protection claim, that claim would

9   fail, as Plaintiffs' business was treated in exactly the same manner as any similarly

10  situated business in the County.

11                  **4.      Plaintiffs' Second Amendment claims are unlikely to succeed**

12         Plaintiffs allege both a facial and an as-applied Second Amendment challenge.

13  The Supreme Court has yet to specify the level of constitutional review to be applied to

14  Second Amendment challenges.  *District of Columbia v. Heller*, 554 U.S. 570, 635

15  (2008); *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010).

16         While the Ninth Circuit has no published binding authority specifying the level of

17  constitutional review in Second Amendment challenges, several other Circuits have

18  used a two-pronged approach.  *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d

19  Cir. 2010).  In the two-pronged approach, the court first considers whether the

20  challenged law imposes a substantial burden on conduct falling within the scope of the

21  Second Amendment's guarantee.  If it does not, the Court's inquiry is complete.  If the

22  law does impose a substantial burden, the Court applies a means-ends scrutiny, most

23  often intermediate scrutiny.  *Id*.; *Heller v. District of Columbia,* 670 F.3d 1244, 1251–53

24  (D.C. Cir. 2011) ("*Heller II*"); *Ezell v. City of Chicago*, 651 F.3d 684, 702–04 (7th Cir.

25  2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v.

26  Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *see also Scocca v. Smith*, C-11-1318

27  EMC, 2012 WL 2375203 at *6 (N.D. Cal. June 22, 2012) (although the *Nordyke* panel

28

1   decision is no longer binding authority the reasoning of the panel decision is still

2   persuasive; i.e., that "heightened scrutiny does not apply unless a regulation

3   substantially burdens the right to keep and to bear arms for self-defense.") (quoting

4   *Nordyke v. King*, 644 F.3d at 776, 783 (9th Cir. 2011)).

a.     The Ordinance falls outside the scope of the Second
Amendment.

5

6

7          The Second Amendment, as construed in *Heller*, protects "the right to possess a

8   handgun in the home for the purpose of self-defense."  *McDonald*, 130 S. Ct. at 3050;

9   *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (the

10  Second Amendment encompasses the right to "keep[] operable handguns at home for

11  self-defense").  *Heller* established no more than this.  Indeed, in *Heller*, the Supreme

12  Court cautions that "[n]othing in our opinion should be taken to cast doubt on . . . laws

13  imposing conditions and qualifications on the commercial sale of arms."  *Heller*, 554

14  U.S. at 626-27.  Such laws are "presumptively lawful regulatory measures."  *Id.* at 627

15  n.26.

16          The Ordinance is a presumptively lawful regulatory measure imposing conditions

17  and qualifications on the commercial sale of arms.  It permits Plaintiffs to locate a gun

18  store on a site that is more than 500 feet from a residentially zoned district, elementary,

19  middle, or high school, pre-school or daycare, other firearms sales business, liquor

20  store or establishments in which liquor is served.  Ordinance § 17.54.131.  Restricting

21  the commercial sale of firearms in residential and other sensitive areas does not

22  substantially burden the core "right of law-abiding, responsible citizens to use arms in

23  defense of hearth and home."  *Heller*, 554 U.S. at 635.  The Ordinance merely imposes

24  conditions on the commercial sale of firearms by placing geographical limits on where

25  such sales may occur.  Several gun stores operate in the County pursuant to the

26  Ordinance.  (Doc. #20-15 at 6.)  Because the Ordinance does not impose a substantial

27  burden on Second Amendment rights, the Court's inquiry should end.  *Marzzarella*, 614

28  F.3d at 91, 91n.6; *Hall v. Garcia*, No. C 10-03799, 2011 WL 995933 at *2 (N.D. Cal.

1   Mar. 17, 2011) ("Where a challenged statute apparently falls into one of the categories

2   signaled by the Supreme Court as constitutional, courts have relied on the

3   'presumptively lawful' language to uphold laws in relatively summary fashion.")

4              b.   Even If the Ordinance substantially burdens a core right, it
                    survives constitutional scrutiny.

5

6              Even if this Court were to find that the Ordinance substantially burdened Second

7   Amendment rights, it would nevertheless pass constitutional muster.  Several courts

8   have extrapolated general principles from First Amendment doctrine in weighing

9   Second Amendment challenges.  *See Ezell*, 651 F.3d at 707-09.  Borrowing from free

10  speech cases, Courts have held that the applicable standard of judicial review depends

11  on the nature and the degree of the governmental burden.  *Id.*  A severe burden on the

12  core right will require strict scrutiny, while laws that merely "regulate[ ] rather than

13  restrict[ ] . . . may be more easily justified."  *Id.* at 708.

14             Unlike the ordinance at issue in *Ezell*, which mandated firing-range training as a

15  prerequisite to lawful gun ownership yet prohibited all firing ranges in the city, the

16  Ordinance does not impose an outright ban on the commercial sale of firearms, but

17  rather limits where firearms dealers may be located.  The Ordinance is more akin to a

18  content-neutral time, place, and manner regulation on the commercial sale of firearms.

19  In First Amendment jurisprudence, where a zoning ordinance constitutes a limitation on

20  the areas in which a business, such as an adult bookstore, may be located, it must pass

21  a type of intermediate scrutiny:  the ordinance must be designed to serve a substantial

22  government interest and allow for reasonable alternative avenues of communication.

23  *City of Renton v. Playtime Theatres, Inc.* 475 U.S. 41, 50 (1986).

24             i.   Substantial government interest

25             The Ordinance serves several substantial County interests.  As in the adult

26  bookstore context, the County has a substantial interest in preventing the deleterious

27  secondary effects of commercial sales of firearms.  While Plaintiffs aver that only law-

28  abiding individuals purchase firearms, gun shops "can be targets of persons who are or

1   should be excluded from purchasing and possessing weapons." *Suter v. City of*

2   *Lafayette* (1997) 57 Cal.App.4th 1109, 1132.  Therefore, it is reasonable to regulate

3   them such that they are located away from residential areas.  *Id.*  By prohibiting gun

4   sales near certain well-defined areas, the County promotes public safety and prevents

5   harm in populated, well-traveled, and sensitive areas such as residential districts or

6   schools.

7          Plaintiffs repeatedly attempt to undercut the substantial government interest in

8   the Ordinance by arguing that because individuals may lawfully possess a firearm in

9   their homes, a residential district cannot be designated as a sensitive place.  (Doc. #17

10  at ¶10; Doc 21 at ¶21.)  Plaintiffs' argument avails them nothing.  Individuals of

11  appropriate age have the right to possess adult books and alcoholic beverages in their

12  residences.  It does not follow that the County cannot regulate adult bookstores and

13  liquor stores such that they may not be located in residential areas.  In fact, it is a long-

14  standing principle that municipalities may implement those very regulations.  *See e.g.,*

15  *Renton*, 475 U.S. at 50; *Diamond v. City of Taft*, 215 F.3d 1052, 1058 (9th Cir. 2000).

16         By limiting where gun sales take place the County also preserves the quality of

17  its residential neighborhoods, commercial districts, and the overall quality of urban life.

18  (Doc. #20-15 at 6-8.)  This interest is "vital."  *Renton*, 475 U.S. at 48, 50.  The sale of

19  firearms, like the sale of any product, is a commercial activity, and municipalities are

20  entitled to confine commercial activities to certain districts.  *Village of Euclid v. Ambler*

21  *Realty Co.*, 272 U.S. 365, 395 (1926).  In the First Amendment context, the Supreme

22  Court has already endorsed geographic restrictions on certain businesses in order to

23  disperse them throughout the County and not have them located within sensitive places

24  such as residential neighborhoods, schools, or churches.  *Renton*, 475 U.S. at 52

25  (upholding an ordinance that imposed a 1000 foot zoning restriction, double the

26  distance Plaintiffs complain of in this case).

27

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


ii.      Reasonable alternative avenues

Plaintiffs argue that the Ordinance effectively zones gun stores out of existence,

allowing for no alternative venues to open and operate a gun store.  Plaintiffs'

allegations find no basis in fact.  Ten[3] other gun stores operate in the County, including

the Big 5 Sporting Goods, selling both firearms and ammunition, located only 607 feet

from Plaintiffs' proposed gun shop.  (Doc. #20-15 at 5-6.)  Plaintiff John Teixeira,

himself, for many years owned and operated a gun store in Alameda County.   (Doc.

#20 at ¶5.)

Given the number of gun stores operating in the County in compliance with the

Ordinance, the Court cannot find that the County has effectively denied gun stores a

reasonable opportunity to open and operate within the County limits.

The Ordinance is a presumptively lawful measure and not subject to a facial

Second Amendment challenge.  Even if the Ordinance were not outside the scope of

the Second Amendment, it nevertheless survives constitutional scrutiny.  Even if there

were some inchoate doubt as to the constitutionality of the Ordinance, there remains

sufficient factual dispute that Plaintiffs cannot demonstrate that they are likely to

succeed on the merits so as to entitle them to a preliminary injunction.

c.      Plaintiffs Are Estopped From Challenging The Ordinance As
Applied

Plaintiffs also challenge the Ordinance as unconstitutional as applied to the facts

of this case.  (Complaint at ¶54.)  As noted above, Plaintiffs never sought to set aside

either the WBZA's findings or the Board's decision by petitioning for a writ of

administrative mandamus pursuant to Code of Civil Procedure section 1094.5.  "A

---

[3] Three gun shops operate in the unincorporated area of the County; ten gun shops operate in the County
if one counts the stores that operate in the incorporated cities.

1   proceeding under Code of Civil Procedure section 1094.5 is the <u>exclusive remedy for</u>

2   <u>judicial review</u> of the quasi-adjudicatory administrative action of the local-level agency. .

3   . .” *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 645 (quoting *City*

4   *of Santee v. Superior Court* (1991) 228 Cal.App.3d 713, 718-719 (emphasis added)).

5   Because the propriety of the WBZA’s measurements were at issue in the underlying

6   administrative proceeding, Plaintiff’s failure to contest the decision by filing a writ of

7   mandamus estops them from now relitigating the same issue. *Id.* Put another way,

8   Plaintiffs are collaterally estopped from challenging the agency decision because that

9   decision has “achieved finality due to the aggrieved party’s failure to pursue the

10   exclusive *judicial* remedy for reviewing administrative action.” *Id.* at 646 (emphasis in

11   original); *Elliott,* 478 U.S. at 796-99; *Crippen*, 274 F. App’x at 528-29.

d.   <u>Even If Plaintiffs Were Not Collaterally Estopped From</u>
<u>Challenging The Ordinance, The Ordinance Is Constitutional</u>
<u>As Applied</u>

14          As demonstrated above, the Ordinance does not impose a substantial burden on

15   Plaintiffs’ core Second Amendment rights.  Even if it does, as applied to the facts of this

16   case, the Ordinance passes constitutional scrutiny.

17          Plaintiffs appear to base their “as-applied” challenge on the manner in which the

18   distance between their proposed gun shop and the nearest residentially zoned district

19   was calculated.  (Complaint at ¶38; Doc #21 at ¶22.)  Yet, Defendants’ substantial

20   interest in protecting against secondary effects is not dependent on whether the

21   measurement is taken from the door of the building or from the building wall.  The

22   measurement from the proposed location to the residentially zoned district was made in

23   a manner consistent for all locations covered by the Ordinance.  (Doc. # 20-15 at pp. 4-

24   6.)  The measurements made are neither arbitrary nor subjective.  The clear language

25

26

27

28

of the Ordinance mandates how the measurement is to be made, and the measurement was made in that manner. [4]

The Court should not accept Plaintiffs' invitation to explore whether the 500-foot limit is appropriate given the barriers between the gun shop location and the residentially-zoned districts.  Any application of the 500-foot rule, or any other zoning ordinance, will have varying effects in each situation.  In many instances, even outside the context of gun shops, there will be a proposed property that is close, but not quite, in compliance with the zoning ordinance.  That does not make the ordinance unconstitutional as applied.  It is immaterial that the current owner of the nearest residential property does not object to the proposed location of the gun store.  The Ordinance was enacted to protect the entire community, not just one particular property owner.  The current owner's opinion means little when that particular property may change hands in the future.

Nothing about the facts in this case distinguishes Plaintiffs' proposed gun store from any other gun store, or any other property subject to a conditional use permit.  Under intermediate scrutiny, the strictest constitutional scrutiny that would apply, the Ordinance need not be the least intrusive means available to accomplish its goal.  *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011).  It must only be substantially related to Defendants' interest in protecting public safety and creating a safe zone around its residential neighborhoods and schools.  While Plaintiffs may be frustrated because their proposed site is just under the minimum distance required, the Ordinance is nevertheless constitutional as applied.

**B.    Plaintiffs Cannot Show That They Are Likely To Suffer Irreparable Harm**

Plaintiffs bear the burden of demonstrating a "likelihood of irreparable injury-not just a possibility-in order to obtain preliminary relief."  *Winter*, 555 U.S. at 21.  "[W]here a

---

[4] Even if the County were to measure from the front door of Plaintiffs' proposed gun shop, it would still be

1    federal injunction is sought against a governmental entity, the party requesting relief

2    must show a threat of 'great and immediate,' not conjectural or hypothetical, irreparable

3    harm." *Kaiser v. County of Sacramento*, 780 F. Supp. 1309, 1311 (E.D. Cal 1991)

4    (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 113 (1983); *Orantes–Hernandez v.*

5    *Thornburgh*, 919 F.2d 549, 557 (9th Cir. 1990)).  Plaintiffs must show a likelihood of

6    "real, immediate and non-conjectural violations" of constitutional rights before the court

7    will apply the presumption of irreparable harm.  *Id.*  As Defendants' Motion to Dismiss

8    conclusively demonstrates, Plaintiffs' have failed even to state a constitutional claim.

9    Their conclusory allegations and self-serving declarations fail to meet this very high

10   burden.

11          Plaintiffs rely on *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011).  *Ezell*

12   is neither controlling nor binding on this court.  *Ezell* is also clearly distinguishable from

13   the case at bar.  *Ezell* involves a complete prohibition on conduct that the Seventh

14   Circuit found was within the scope of the Second Amendment.  Here, the County is not

15   prohibiting the sale of guns outright, but merely regulating the location of commercial

16   sales of firearms, which the Supreme Court has already held is one of many

17   "presumptively lawful regulatory measures."  *Heller*, 554 U.S. at 627 n.26.  Thus, the

18   *Ezell* court's holding that irreparable harm is presumed is inapplicable in this case.

19          Although Plaintiffs assert that without a preliminary injunction they may be

20   foreclosed from receiving monetary remedies, it is well established that economic injury,

21   by itself, is not considered irreparable harm.  *See, e.g., Cal. Pharm. Ass'n v. Maxwell–*

22   *Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) ("[E]conomic damages are not traditionally

23   considered irreparable because the injury can later be remedied by a damage award.");

24   *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850–51 (9th Cir. 1985)

25   ("The possibility that adequate compensatory or other corrective relief will be available

26   at a later date, in the ordinary course of litigation, weighs heavily against a claim of

27

28   within 500 feet of the nearest residentially zoned district.  (Doc. #20-15 at 5.)

1  irreparable harm . . . [P]urely monetary injury is compensable, and thus not

2  irreparable.").  Plaintiffs have failed to show irreparable harm will result if a preliminary

3  injunction does not issue.

### C.   The Balance of Equities Tips In The County's Favor

4

5  The balance of equities tips in the County's favor.  This is a dispute over a zoning

6  ordinance.  The County has broad power to enact all local, police, sanitary and other

7  ordinances not in conflict with general laws.  *S.D. Myers, Inc. v. City & County of San*

8  *Francisco*, 336 F.3d 1174, 1177 (9th Cir. 2003) (citing Cal. Const. art. XI, § 7).  If the

9  requested injunctive relief were granted, the Court would divest the County's control

10  over whom they may permit to open a business.  Any decision by this Court to overrule

11  the County on uniquely local matters should await a decision on the merits.

### D.   An Injunction Is Not In The Public Interest

12

13  A preliminary injunction is also inappropriate because it is not in the public

14  interest.  The Ninth Circuit has mandated that, "[i]n cases where the public interest is

15  involved, the district court must also examine whether the public interest favors the

16  plaintiff."  *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *see also*

17  *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound

18  discretion, courts of equity should pay particular regard for the public consequences in

19  employing the extraordinary remedy of injunction.").  The public interest is involved

20  when "the impact of an injunction reaches beyond the parties, carrying with it a

21  potential for public consequences."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139

22  (9th Cir. 2009).  "In considering the public interest, [the Court] may [also] consider the

23  hardship to all individuals . . . [and is] not limited to parties. . . ."  *Golden Gate Rest.*

24  *Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008).  A plaintiff bears

25  the initial burden of showing that the injunction is in the public interest.  *See Winter*,

26  555 U.S. at 20.

27

28

1   The public interest weighs heavily in the County's favor.  The County has a
2   strong interest in its ability to enforce local ordinances without federal court
3   interference, at least until the merits of the case are decided.  The Court must be
4   mindful of the harm that might befall the community if a gun store is allowed to operate
5   in contravention of the Ordinance pending resolution of this matter.  *Perkins v. City of*
6   *St. Paul*, 982 F. Supp. 652, 659 (D. Mn. 1997).  No amount of money could cure the ill
7   effects to the community if Plaintiffs are allowed to open and operate an illegal firearm
8   sales business.

9                    V.          **<u>CONCLUSION</u>**

10                For the foregoing reasons, Defendants respectfully request that this Court deny
11   Plaintiffs' Motion for Preliminary Injunction.

12

13   DATED:          November 30, 2012          DONNA R. ZIEGLER,
14                                              County Counsel in and for the
                                                County of Alameda, State of California
15

16                                             By _____/s/__*Mary Ellyn Gormley*_____
17                                                MARY ELLYN GORMLEY
18                                                Assistant County Counsel

19                                             Attorneys for County of Alameda

20

21

22

23

24

25

26

27

28