DONNA R. ZIEGLER [142415]
County Counsel
By: MARY ELLYN GORMLEY [154327]
Assistant County Counsel
SAMANTHA N. STONEWORK-HAND [245788]
Associate County Counsel
Office of County Counsel
County of Alameda
1221 Oak Street, Suite 450
Oakland, California 94612
Telephone: (510) 272-6700

Attorney for County of Alameda, Alameda,
Board of Supervisors, Wilma Chan,
Nate Miley and Keith Carson

UNITED STATES DISTRICT COURT

NORTHERN DIVISION OF CALIFORNIA

| | |
|---|---|
| JOHN TEIXEIRA, STEVE NOBRIGA, GARY GAMAZA, CALGUNS FOUNDATION (CGF), INC., SECOND AMENDMENT FOUNDATION (SAF), INC., and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES (Cal-FFL),<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, ALAMEDA BOARD OF SUPERVISORS (as a policy making body), WILMA CHAN in her official capacity, NATE MILEY in his official capacity, and KEITH CARSON in his official capacity,<br><br>Defendants. | Case No.: CV12-3288 (SI)<br><br>**DECLARATION OF ALBERT LOPEZ IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, ALBERT LOPEZ, do hereby declare:

1. I am the Planning Director for the Alameda County Community Development Agency Planning Department.

2. I have been Planning Director for 5 years. Prior to that, I served as Assistant Planning Director for the City of Martinez. The matters stated herein are true of my personal knowledge, and if called upon I could and would testify competently thereto.

3. I am familiar with the Planning Department practices and procedures as they relate to applications for conditional use permits, variances, and related appeals of decisions.

4. Pursuant to Alameda County Ordinance § 17.54.670, an appeal to a West County Zoning Board of Zoning Adjustments ("WZBA") decision must be filed within ten days of the date of the order.

5. The appeal may be taken by any property owner or other party affected by the order.

6. A notice of appeal which specifies the grounds for such an appeal may be filed with the clerk of the Alameda County Board of Supervisors or the Planning Department.

7. The Planning Department requires that appeals be received by the Clerk of the Board or the Planning Department in order to be considered timely. If a timely written communication is received, the Planning Department considers the appeal to be timely filed.

8. On December 14, 2011, the WBZA approved conditional use permit and variance PLN2011-00096.

9. On Thursday, December 22, 2011, at approximately 3:50 p.m. I received an email containing two attachments from Kathy Martins, Administrator of the San

1  Lorenzo Village Homes Association. A true and correct copy of the email and two
2  attachments are attached to this declaration as Exhibit 1.

3      10.    The email from Kathy Martins attaches the appeal letter. The email also
4  explains that Ms. Martins attempted to hand deliver the San Lorenzo Village Homes
5  Association's appeal to the WBZA decision on the conditional use permit and variance
6  PLN2011-00096 but the offices were closed. She also stated that she was going to
7  send the package via federal express as of December 22, 2011, in order to comply with
8  the 10 day rule.

9      11.    This email and the corresponding attachments are part of the official
10 Alameda County Community Development Agency Planning Department file kept in the
11 course of regularly conducted business activity on conditional use permit and variance,
12 PLN-2011-00096, filed by Steve Nobriga and Valley Guns & Ammo.

13     12.    Because notices of appeal are sensitive County matters and part of the
14 due process of land use entitlements, and I received Ms. Martins' email, with the appeal
15 letter attached, on December 22, 2011, the intent to appeal was made clear.

16     13.    Since the email with attached appeal letter was received less than 10 days
17 after the WZBA's order on PLN-2011-00096, the Planning Department considered the
18 appeal timely.

19     I declare under penalty of perjury under the laws of the United States and
20 California that the foregoing is true and correct and within my personal knowledge and
21 that it was executed on November 26, 2012. If called upon, I could competently testify
22 thereto.

/s/ *Albert Lopez*
ALBERT LOPEZ

Declaration of Albert Lopez In Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, Case No. CV12-3288 SI    3

**EXHIBIT 1**

**From:** Slvha Administrator [mailto:administrator@slvha.com]
**Sent:** Thursday, December 22, 2011 3:50 PM
**To:** Lopez, Albert, CDA
**Cc:** Chan, Wilma, BOS Dist 3; Bazar, Chris, CDA; Tarbell, Richard, CDA
**Subject:** Appeal to BZA Decision

Dear Albert,

I attempted to hand deliver our appeal to the BZA decision PLN2011-00096 regarding the Gun Store on Lewelling Blvd. Per the BZA and the county Website we have ten days from the date of the decision to appeal. That decision was made on December 14th so ten days would put the deadline on Christmas Eve.

I went to the county office today December 22nd, with the attached appeal and supporting letter and $250 Check but the offices were closed for the Holiday.

Since the website nor the BZA said if the appeal was 10 calendar days or 10 business days we are going to send the package federal express as of today in order to comply with the 10 day rule.

Thanks,

--

Kathy

Kathy Martins, Administrator
San Lorenzo Village Homes Association
377 Paseo Grande, San Lorenzo, CA 94580
510-276-4554 X 6
www.slvha.com



# SAN LORENZO VILLAGE
# HOMES ASSOCIATION

377 Paseo Grande ▪ San Lorenzo CA 94580
(510) 276-4554 ▪ www.slvha.com

December 14, 2011

Alameda County Planning Department
224 West Winton Ave. Room 111
Hayward, CA 94544

Alameda County Board of Supervisors
1221 Oak Street #536
Oakland, CA 94612-4224

Dear Board of Supervisors,

We are writing to **Appeal the recent decision of the Board of Zoning Adjustments, in the matter number PLN2011-00096, Conditional Use Permit and Variance**, regarding the operation of a gun shop at 488 Lewelling Boulevard, San Leandro, CA. The matter required a variance in that the business would be located closer than 500 feet to residentially zoned districts.

The matter was considered first as to whether a variance was required and secondly, the granting of the conditional use permit and whether the business fit the requirements of a CUP. As stated by County Council during the review process, if the variance was not granted, the CUP could not be granted as it was dependant on the variance being approved.

We base our appeal on the fact that Commissioner Moore erroneously interpreted and misapplied the determining factors that need be considered when granting a variance.

**Question 1** asks - "Are there special circumstances applicable to the property, which *deprive* the property of privileges enjoyed by other properties in the vicinity under identical zoning classification?"

The staff report correctly answers this question by stating "No. There are no special circumstances applicable to the property, which *deprive* the property of privileges enjoyed by other properties in the vicinity under identical zoning classification when considered for firearms sale. The property that proposed for the firearms sales is within 500 feet of a residentially zoned District. This is not allowed by the Zoning Ordinance. It should be noted that the 500foot distance to the southwest is across the lanes of Highway 880, which cannot be traversed."

Unfortunately, Commissioner Moore failed to read the complete statement. The question asked is "Are there special circumstances applicable to the property, which *deprive* the property of privileges enjoyed ..." Mr. Moore argued that there are 'special circumstances' but failed to include '**which deprive the property of privileges enjoyed by other properties in the vicinity...**'

---

Board Members: Art Wydler-President, Diane Wydler-Vice President
Margaret Wright-Secretary/Treasurer, Wulf Bieschke
Administrator: Kathy Martins

The purpose of a variance is to make whole, a property, which has less privileges' than enjoyed by others due to a special circumstances, not to impart more privileges than enjoyed by others because of a special circumstances.

In this case, Mr. Moore claimed that because the proposed business is separated by a major street and a fence from the residential property which is closer than 500 feet, this constitutes a special circumstance. And while this physical landscape may be a special circumstance, it clearly does not *deprive* the proposed business of any privilege enjoyed by others in the area, in fact, it does the opposite.

Mr. Moore, is opening the door to a dangerous precedent when he begins loosely interpreting the reasons for a variance. As was previously stated, the special circumstance must *deprive* the property of privileges and the variance is intended to return a right which the property is deprived because of some special circumstance.

Mr. Moore cannot be allowed to argue a point while using only half of the guidelines, nor is he allowed to use the variance process to define a requirement in a manner not intended.

**Question 2** asks – "Will granting of the application (for variance) constitute a grant of special privileges inconsistent with other properties in the vicinity and zone?"

Again the staff report correctly answers this question by stating "Yes." "The granting of firearms sales at the proposed location would constitute a grant of special privileges inconsistent with the location requirements given the establishment of this use within 500 feet of residentially zoned properties. Other firearms sales shops without special circumstances would not be granted a variance in the area due to existing residential property development with 500 feet."

Mr. Moore also went on to argue that the 500 foot rule was subject to interpretation and in this case since there was a busy street and a chain link fence within the 500 foot measurement, that the 500 foot measurement was unreasonable. Mr. Moore somehow believes that criminal, running from a crime he has just committed at the gun shop, will somehow be deterred in his flight because he has to run across Hesperian Blvd and scale a fence to make his escape.

Page 12 of the staff report clearly addresses this issue when it states – **"The proposed site is less than 500 feet from two residentially zoned districts…The other residentially zoned district can be easily accessed from the subject site."**

This reasoning will require every distance measurement to be subject to circumstance.

There are many times in County ordinances that distances are used, especially the 500 foot separation distance. The distance is unequivocal; it doesn't state – on the same side of the street, across a busy street, on the other side of a fence.

If you allow this decision to stand based on the flawed and incomplete reasoning of Mr. Moore you will have every ordinance which has a distance in it up for interpretation, with Mr. Moore deciding what is reasonable.

If State law forbids child molesters from living closer than 1000 feet from schools, playgrounds and places where children congregate, would Mr. Moore argue that the provision doesn't apply when a busy street and 6 foot high fence is within the measured distance.

When Commissioner Spaulding questioned (if) "granting the application (will) be detrimental to persons or property in the neighborhood…" Question #3 of the variance, Mr. Moore stated that he believed would benefit

---

Board Members: Art Wydler-President, Diane Wydler-Vice President
Margaret Wright-Secretary/Treasurer, Wulf Bieschke
Administrator: Kathy Martins

the neighborhood and stated he based this belief on the letter of Sheriff Plummer and the 200 police officers who know the applicant and believe the applicant will act professionally in running the gun shop.

Ms. Spaulding challenged Mr. Moore on this point and rightly so; a variance is issued to the property and not to the applicant. Issuing a variance based on a belief that a particular applicant will act in good faith is a misuse of the variance process. The variance can and will exist long after the applicant is no longer running the business.

The Board of Supervisor's simply cannot allow the BZA to grant a variance when they completely misunderstand the concept of a variance and how it is to be legally applied.

After Mr. Moore presented to the Board these erroneous reasons for granting the variance, he then proceeded to make other procedural errors as they apply to the issuance of the CUP.

Item #4 of the Conditional Use Permit requirements asks – "Will the use be contrary to the specific intent clauses or performance standards established for the District in which it is to be considered?"

Once again the staff report responded "yes" meaning the gun shop would be **contrary to the specific use clauses for the District.**

Ms. Spaulding pointed this out and brought to the attention of the BZA paragraph A, on page 11, which states "The *Eden Area General Plan* calls for "mixed uses" in the General Commercial designation, which is where this site is located. However, the General Plan goal to promote a "variety of uses" did not consider "gun store/firearms sales as part of that desirable mix of uses."

Mr. Moore resolved this discrepancy by advocating that paragraph A simply be struck from the CUP.

Mr. Moore demonstrated the reasons why the community has no faith in legislative process. He clearly does not understand the variance process and intent; he ignores time and again the recommendations of staff; he readily admits that if Sheriff Plummer says it "that's good enough for me" he somehow believes it within his power to simply ignore the communities General Plan and finally despite the input from the community organizations that represent the affected area (Ashland, Cherryland and San Lorenzo) Mr. Moore is going to vote for an obviously unpopular variance and CUP.

Another point of contention is with the application itself, on the application it states that Steve Nobreiga of Valley Guns and Ammo was the applicant. Nowhere on the application for a CUP was the name John Teixiera. This raises concern as all the character witnesses who spoke on behalf of the application as well as the letter from Sheriff Emeritus Plummer were all references for John Teixiera. At one point Board Member Clark asked John Teixiera who "Valley Guns and Ammo" was, if they were a corporation and Mr. Teixiera said "they were going to be".

Mr. Teixiera was the previous owner of a Gun Store in Castro Valley called Valley Guns and Ammo, however he sold that store and if a variance is granted on this persons reputation alone as Mr. Moore would suggest then what happens when he sells this one? If in fact he is not an owner of record does the county have any provision in place to insure that this incorporation does in fact take place? When asked why Mr. Teixiera wasn't opening again in Castro Valley we were told his application was denied, yet this was not information that was given to the BZA.

Lastly, the so called loan that Mr. Teixeira told the BZA he was applying for is actually being requested through Redevelopment. So not only will this decision be in direct conflict to what the Area General Plan states and what the community wants but now he will also be asking those same tax payers to pay the cost of his

---

Board Members: Art Wydler-President, Diane Wydler-Vice President
Margaret Wright-Secretary/Treasurer, Wulf Bieschke
Administrator: Kathy Martins

improvements. At no time did Ms. Clark or any member of the BZA questioned Mr. Teixeira on how he was going to complete the façade if the loan was not granted due to the state of redevelopment.

If the Board of Supervisors' allows this decision to stand, based on numerous misunderstandings and mis-applications of the law, the County will open the door for every variance and CUP issued by this BZA to be questioned, because clearly, their decisions are not based on fact and supported by staff but are based on emotional responses most accurately expressed by Mr. Moore, when he stated "if Sheriff Plummer says so, that's good enough for me."

Respectfully submitted,

Arthur A Wydler, President
San Lorenzo Village Homes Association

*P.S. Perhaps this is not the proper place for this comment, however, the format of the BZA hearings is not conducive to responsive dialog. The BZA announces the agendized topic; staff then gives a summary of the issue; there is then public comment and then the Board discusses the topic and votes. There should be public comment "after" commissioners have their discussion. If commissioners raise issues not previously raised by staff or the public, which generate concern from the public, there is no opportunity for the public to address these concerns.*

*In the aforementioned appeal, had the public been given an opportunity to address the Board after they began their misguided discussion of the appropriateness of the variance, this entire matter could have been correctly resolved without the need for an appeal.*

**CC: Alameda County Board of Zoning Adjustments; Commissioners Clark, Gil, Peixoto, Spaulding and Moore**
**CC: Supervisor Wilma Chan**

December 15, 2011

Alameda County Board of Supervisors
1221 Oak Street #536
Oakland, CA

Dear Alameda County Board of Supervisors:

This letter is offered in support of the appeal of the Variance and CUP granted to Valley Guns and Ammo on December 14, 2011, by the Board of Zoning Adjustments for the operation of a firearms business at 488 Lewelling Blvd., PLN2011-00096. I was at the hearing and the following are my observations and thoughts regarding the process, which I believe are also the basis of the appeal by the San Lorenzo HOA.

The property for the proposed gun shop falls within the 500 foot distance required by county ordinance from zoned residential districts, as well as, from other firearm sales businesses and liquor sale businesses. The BZA accepted the fact that a variance would be needed for a gun shop to be operated on this property based on the West County Board of Zoning Adjustments Staff Report, PLN2011-00096. The BZA then, however, voted (4-1) to grant a variance, contrary to the staff recommendation that the variance be denied.

The main basis for the granting of the variance was based on a phrase that "special circumstances" were applicable. The gun store owner used this term continually to point out the there was a freeway, multiple lanes of traffic, and fences between the property and the zoned districts within 500 feet. One of the BZA board members indicated that these "special circumstances" were his reason for voting for the variance.

On page 12 of the Staff Report, the reasons for granting a variance are listed, as well as, the conclusions and recommendations of the staff. The first reason states:

> *Are there **special circumstances** applicable to the property, **which deprive** the property of privileges enjoyed by other properties in the vicinity under the identical zoning classification?*

Members of the BZA never read or discussed this statement beyond the comma. The phrase 'special circumstances' was continually used as somehow mitigating the distance requirement in the ordinance. There was absolutely no discussion nor reasons presented regarding how this property was "deprived of privileges enjoyed by other properties…" and the staff conclusion was this property was NOT deprived of any privileges.

The other two criteria for granting a variance are cited below:

> *Will the granting of the application constitute a grant of special privileges*

*inconsistent with the limitations upon other properties in the vicinity and zone?*

*Will granting the application be detrimental to persons or property in the neighborhood or to the public welfare.*

Neither of these criteria were discussed by the BZA regarding the variance, but both are answered in the affirmative by the staff report (p.13).

It appeared to me that the variance was granted contrary to the County's own stated criteria for granting variances to ordinances, and I think that the BZA cannot just arbitrarily grant variances based on any circumstances presented. Furthermore, there was a reference made by one BZA member to a letter from Charles Plummer vouching for the owner of the gun shop. This also appeared to influence the decision to grant the variance. However, a variance is granted for a PROPERTY, not for a person, so the integrity of the gun shop owner should not even have been considered during the variance process.

In addition, once the variance was granted, then the BZA proceeded to grant a CUP. Because the staff had recommended against the variance, there was little detailed staff analysis presented just for the CUP. There were sections presented from Title 17 of the Zoning Ordinance on p. 9 of the Staff Report. The BZA admitted that they did not have all the information needed, so they made several amendments or conditions to the motion to approve the CUP.

One of these conditions regarded the "Eden Area General Plan." The Staff Report stated that the area in question "…calls for 'Mixed uses,' but did not specifically consider gun shops as part of the desirable mix." The BZA cavalierly stated that now a gun shop was considered a desirable part of the mix, despite statements to the contrary contained in the Staff Report and letters from representatives and residents from San Lorenzo, Ashland and Cherryland. Is it within the BZA's power to define or redefine the Eden Area General Plan?

In conclusion, I appeal to the Board of Supervisors to accept and uphold the appeal and overturn the decisions of the BZA. The ordinance requiring the 500 feet between a gun shop and other specifically zoned districts was written for a reason and the county should honor and enforce its own ordinance. There were no reasons presented for a variance that met the criteria listed by the county. If the variance is repealed, the CUP cannot be granted because of the same 500 foot requirement.

Thank you for considering this request.

Sincerely,

Diane Wydler
255 Via Elevado
San Lorenzo, CA 94580