DONNA R. ZIEGLER [142415]
County Counsel
By: MARY ELLYN GORMLEY  [154327]
Assistant County Counsel
SAMANTHA N. STONEWORK-HAND [245788]
Associate County Counsel
Office of County Counsel
County of Alameda
1221 Oak Street, Suite 450
Oakland, California 94612
Telephone:   (510) 272-6700

Attorneys for County of Alameda, Alameda
Board of Supervisors, Wilma Chan,
Nate Miley, and Keith Carson

UNITED STATES DISTRICT COURT

NORTHERN DIVISION OF CALIFORNIA

| | |
|---|---|
| JOHN TEIXEIRA, STEVE NOBRIGA, GARY GAMAZA, CALGUNS FOUNDATION (CGF), INC., SECOND AMENDMENT FOUNDATION (SAF), INC., and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES (Cal-FFL),<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, ALAMEDA BOARD OF SUPERVISORS (as a policy making body), WILMA CHAN in her official capacity, NATE MILEY in his official capacity, and KEITH CARSON in his official capacity,<br><br>Defendants. | Case No.: CV12-3288 (SI)<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>DATE: February 22, 2013<br>TIME: 9:00 a.m.<br>DEPARTMENT: Ctrm 10, 19th Floor |

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION    ............................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

III.  LEGAL ARGUMENT ............................................................ 5

    A.    Federal Courts Must Give Preclusive Effect To Administrative Decisions in Subsequent § 1983 Actions ......................................... 5

    B.    California Courts Would Have Given the WBZA and the Board's Findings Preclusive Effect ...................................................... 7

        1.    The *Utah Construction* requirements are satisfied .......................... 7

        2.    Collateral Estoppel Applies ............................................. 9

    C.    Because the WBZA and the Board's Findings Are Final, Plaintiffs' Due Process, Equal Protection and As-Applied Second Amendment Claims Should Be Dismissed ................................................ 11

        1.    Plaintiffs' Due Process Claim Is Precluded ................................ 11

            a.    The "Untimely" SLVA Appeal............................................. 12

            b.    The "Unreasonable" Measurement...................................... 12

        2.    Plaintiffs' Equal Protection Claim Must Be Dismissed.................... 13

        3.    Plaintiffs Are Estopped From Challenging The Ordinance As Applied ................................................................. 14

    D.    Although Plaintiffs' Second Amendment Facial Challenge May Not Be Precluded, It Still Must Be Dismissed As A Matter of Law ...................... 16

        1.    The Ordinance does not impose a substantial burden on the Second Amendment...................................................... 16

        2.    Even If the Ordinance substantially burdens a core right, it survives constitutional scrutiny................................................. 17

IV.   CONCLUSION    ............................................................... 19

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637 ........................... 7, 8, 15

*City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713 ......................................... 15

*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501 .................................................... 10

*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 614 ...................................................... 7

*Mola Development Corp. v. City of Seal Beach* (1997) 57 Cal.App.4th 405 ..................... 8

*Pacifica Corp. v. City of Camarillo* (1983) 149 Cal.App.3d 168 ....................................... 7

*People v. Sims* (1982) 32 Cal.3d 468 .......................................................................... 7, 10

*Suter v. City of Lafayette* (1997) 57 Cal.App.4th 1109 ................................................... 17

*Swartzendruber v. City of San Diego* (1992) Cal.App.4th 896 ...................................... 14

**Federal**

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) ................................. 17, 18

*Club Moulin Rouge LLC v. City of Huntington Beach*, No. CV04-10546, 2005 WL
    5517234 (C.D. Cal. June 22, 2005) ............................................................. 8, 9, 11, 13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................................... 16

*Eilrich v. Remas*, 839 F.2d 630 (9th Cir. 1988) ............................................... 7, 10, 11, 12

*Ezel v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) .................................................... 17

*Hall v. Garcia*, No. C 10-03799, 2011 WL 995933 (N.D. Cal. Mar. 17, 2011) .............. 17

*Hill v. Colorado*, 530 U.S. 703, 732 (2000) ................................................................... 15

*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461(1982) ................................................. 8

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) .............................................................. 8

*McDonald v. City of Chicago,* 130 S. Ct. 3020 (2010) .................................................... 16

*Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994) ........................... 6, 7, 8, 14

*Misischia v. Pirie*, 60 F.3d 626 (9th Cir. 1995) ......................................................... 9, 12

*Plaine v. McCabe*, 797 F.2d 713 (9th Cir. 1986) ............................................................ 6

*Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010)............. 14

*Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194 (9th Cir. 1998)...................................... 4

*Scocca v. Smith*, No. C11-1318, 2012 WL 2375203 (N.D. Cal. June 22, 2012)............ 14

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)............................................... 17

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ..................................................... 16

*University of Tennessee v. Elliot*, 478 U.S. 788 (1986) .................................................... 6

*Utah Constr. & Mining Co.*, 384 U.S. 394 (1966) ......................................................... 6, 7

*Valley Wood Preserving, Inc. v. Paul*, 785 F.2d 751 (9th Cir. 1986) ..................... 8, 9, 11

*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)......................................... 18

*Vogt v. City of Orinda*, No. C11-2595 CW, 2012 WL 1565111
    (N.D. Cal. May 2, 2012)............................................................................................ 14

*Wehrli v. County of Orange*, 175 F.3d 692 (9th Cir. 1999) ............................................. 9

**Government Code**

§ 65009(c)(1)(E) ............................................................................................................. 12

**Code of Civil Procedure**

§ 1094.5 ............................................................................................................ 11, 12, 15

§ 1094.5(b)....................................................................................................................... 12

§ 1094.6 ............................................................................................................................ 11

**Other Authorities**

42 U.S.C. § 1983............................................................................................................... 5

## I.    <u>INTRODUCTION</u>

This case does not represent the next advance in the emerging field of Second Amendment jurisprudence.  Rather, it is a routine dispute by owners who tried and failed to open a gun store at a location that does not comply with a presumptively valid Alameda County ordinance regulating where commercial sales of guns may occur.

After the Alameda County Board of Supervisors (the "Board") denied their conditional use permit and variance, Individual Plaintiffs failed to file a writ of mandamus in state court challenging the Board's legal and factual findings.  Plaintiffs' due process, equal protection, and as-applied Second Amendment challenges are based entirely on allegations that the West County Board of Zoning Adjustments ("WBZA") applied the Ordinance improperly and arbitrarily and that the Board improperly considered an untimely appeal.  A writ was their <u>only</u> remedy to challenge such findings.  As the statute of limitations for filing a writ has long since passed, Plaintiffs are precluded from challenging the WBZA finding, which was affirmed by the Board, on the distance between the proposed gun store and the nearest residentially zoned district, and the Board's findings as to whether the San Lorenzo Village Homes Association ("SLVA") filed a timely appeal.  Because Plaintiffs failed to challenge the WBZA's and the Board's determinations, those determinations have preclusive effect.   Plaintiffs' due process, equal protection, and as-applied Second Amendment claims must be dismissed as a matter of law because they are premised on the validity of findings that have been conclusively established in the County's favor.

The Complaint should also be dismissed simply because Plaintiffs have failed to sufficiently plead any of their claims.  The due process claim must fail because Plaintiffs do not have an enforceable property right in a conditional use permit and variance, and even if they did, Plaintiffs received all the process that they were due.  The equal protection claim must fail because Plaintiffs have failed to identify specific similarly situated businesses that were treated differently.  Plaintiffs have also failed to

1  sufficiently state either an as-applied or facial Second Amendment challenge to the

2  Ordinance. There is not a single case that holds that a zoning ordinance which

3  regulates where commercial sales of firearms may occur imposes a substantial burden

4  on Second Amendment rights. In fact, the United States Supreme Court precedent

5  makes clear that certain regulations are "presumptively lawful" including "those laws

6  imposing conditions and qualifications on the commercial sale of arms." Because the

7  Ordinance is simply a presumptively lawful regulation that imposes conditions on the

8  commercial sale of arms, it does not impose a substantial burden on Second

9  Amendment rights and the Court's inquiry should end. For all these reasons, Plaintiffs'

10  Complaint must be dismissed as a matter of law in its entirety.

11  ## II.  FACTUAL AND PROCEDURAL BACKGROUND

12  In Fall 2010, Plaintiffs John Teixeira, Steve Nobriga, and Gary Gamaza,

13  ("Individual Plaintiffs") formed a business partnership named Valley Guns and Ammo

14  ("VGA") for the purpose of opening a gun store in the unincorporated area of Alameda

15  County. (Complaint at ¶ 17.) To do so they were first required to obtain a conditional

16  use permit ("CUP") in compliance with Alameda County Ordinance § 17.54.131 (the

17  "Ordinance"). The Ordinance provides that no CUP for firearms sales shall issue unless

18  certain findings are made by the West County Board of Zoning Adjustments ("WBZA"),

19  including:

20  "[t]hat the subject premises is not within five hundred (500) feet of any of
   the following: Residentially zoned district; elementary, middle, or high
21  school; pre-school or day care center; other firearms sales business; or
   liquor stores or establishments in which liquor is served."
22
23  Alameda County Ordinance § 17.54.131. On December 14, 2011, the WBZA held a

24  hearing on VGA's CUP application. (Complaint at ¶ 30.) Individual Plaintiffs argued at

25  the hearing that the 500-foot distance should be measured from the front door of the

26  proposed location to the front door of the nearest residence, which would have resulted

27  in a measurement over 500 feet. (Doc. #13-3 at 7-9.) The WBZA held that the

28  Ordinance required that the 500 foot distance be measured from the building wall of the

proposed location to the property line of the nearest residence in the residentially zoned

district,   and found that the proposed gun store was within 500 feet of the nearest

residentially zoned district.  (Doc. #13-3 at 7-9.)  The WBZA adopted Resolution No. Z-

11-70, which states:

> WHEREAS VALLEY GUNS & AMMO and STEVE NOBRIGA have filed for VARIANCE and CONDITIONAL USE PERMIT PLN-2011-00096, to allow the operation of a gun shop, and <u>at a distance of less than 500 feet from a residentially zoned district, where 500 feet is required</u>, in a FA (Freeway Access) District according to the *Ashland and Cherryland Business District Specific Plan*, …

(Doc. #13-3 at 13) (emphasis added).  Resolution No. Z-11-70 specified certain findings

made pursuant to Alameda County Ordinance §§ 17.54.130 and 17.54.131, including

that "the site proposed with [VGA's] application is approximately 446 feet from a

residentially zoned district."  (*Id.* at 15.)  Because the proposed location did not comply

with the requirements of the Ordinance, the WBZA held that VGA must obtain a

variance in addition to the CUP.  (*Id.* at 9.)

Alameda County Land Use Ordinance § 17.54.080 provides that before granting

a variance, the WBZA must make additional findings, including:

> That there are special circumstances including size, shape, topography, location or surroundings, applicable to the property which deprive the property of privileges enjoyed by other property in the vicinity under the identical zoning classification.

Alameda County Land Use Ordinance § 17.54.080.  After additional discussion, the

WBZA found that special circumstances did apply to the proposed gun store, including:

"Highway 880, multi-lane thoroughfare Hesperian Boulevard, and walls and fences

create a physical obstruction that does not allow direct traversable access at a distance

less than 500 feet from the site to a residentially zoned district."  (*Id.* at 14.)  Because it

found special circumstances apply, WBZA granted the variance.  (*Id.*)

On December 16, 2011, WBZA informed VGA that Resolution No Z-11-70 would

become effective on the eleventh day following December 14, 2011 (i.e. December 25,

2011) unless an appeal was filed with the Alameda County Planning Department.

1   (Complaint at ¶ 33.)  Appeals from WBZA decisions are heard by the Alameda County

2   Board of Supervisors (the "Board").  Alameda County Ordinance § 17.54.670.

3   Individual Plaintiffs did not appeal the WBZA's finding that the gun store did not comply

4   with the Ordinance.

5          On December 22, 2011, the San Leandro Village Homes Association ("SLVA")

6   filed an appeal with the Alameda County Planning Department.   (Doc. #13-3 at 38-42.)

7   On February 23, 2012, the Alameda County Planning Department informed VGA that

8   SLVA filed an appeal.  (Complaint at ¶ 34.)

9          On February 28, 2012, the Board held a planning meeting to consider SLVA's

10  appeal.  (Complaint at ¶ 37.)  Relying on WBZA's findings, the Board held that despite

11  the obstructions between the proposed location and the nearest residentially zoned

12  district, the proposed gun store was located within 500 feet of the district and therefore

13  did not comply with the Ordinance.  The Board sustained SLVA's appeal and denied

14  VGA's application for a CUP and variance.  (Complaint at ¶ 39.)  Individual Plaintiffs did

15  not file a writ of mandamus appealing the Board's findings and decision.

16         On June 25, 2012, the Individual Plaintiffs along with Calguns Foundation, Inc.

17  (CGF), Second Amendment Foundation, Inc. (SAF), and California Association of

18  Federal Firearms Licensees (Cal-FFL) ("Organizational Plaintiffs") filed a Complaint for

19  Damages, Injunctive Relief, and/or Declaratory Judgment (the "Complaint").  The

20  Complaint alleges four Claims for Relief: (1) denial of due process based on an

21  enforceable right to a CUP and variance and the Board's consideration of an untimely

22  appeal (Complaint at ¶ 48);[1]  (2) denial of equal protection based on Defendants

23  allegedly having applied different measurement criteria for similarly situated businesses

24

25  _____

26  [1] In Plaintiffs' Opposition to Defendants' Motion to Dismiss, Plaintiffs state that they are asserting a
    substantive due process claim that the Board failed to follow its own laws regarding the appeal and that
    the Ordinance is vague.  (Doc. #22 at ¶ 18.)  Defendants contend that this is not the same theory of due
27  process that was plead in the Complaint and that these new allegations asserted for the first time in
    Plaintiffs' Opposition should be disregarded and Plaintiffs' due process claims should be dismissed on
28  this basis alone.  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

and/or having granted CUPs and variances to similarly situated businesses (Complaint at ¶ 50); (3) the Ordinance is irrational on its face and in violation of Plaintiffs' Second Amendment rights (Complaint at ¶ 52); (4) the Ordinance is irrational as applied to the facts of this case and in violation of Plaintiffs' Second Amendment rights.  (Complaint at ¶ 54.)

On September 27, 2012, Defendants brought a Motion to Dismiss (Doc. #13), which has been fully briefed.  (Docs. ## 22; 24.)  On November 5, 2012, Plaintiffs filed a Motion for Preliminary Injunction (Doc. #21), which has also been fully briefed.  (Docs. ## 23; 27.)  In Defendants' Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction, Defendants argued that Plaintiffs are precluded from bringing their claims because they failed to challenge the WBZA's or the Board's determinations by filing a writ of mandamus in state court.  (Doc. #13-1 at 5-8; Doc. #23 at 5-7.)  Plaintiffs have not meaningfully addressed these arguments.  On December 18, 2012, the Court ordered the parties to file supplemental briefs regarding the preclusive effect, if any, Plaintiffs' failure to seek review of the WBZA's decisions has on this Court's authority to decide the factual questions and/or legal claims in the Complaint.  (Doc. #30.)

## III.   LEGAL ARGUMENT

### A. Federal Courts Must Give Preclusive Effect To Administrative Decisions in Subsequent § 1983 Actions

Although a plaintiff need not exhaust judicial or state remedies as a prerequisite to bringing an action under 42 U.S.C. § 1983, both the Supreme Court and the Ninth Circuit have held that an administrative agency's factfinding is entitled to preclusive effect in a subsequent Section 1983 action.  The preclusive effect applies to both the legal and factual findings of the administrative agency.  Thus, unless the administrative decision is challenged, it binds the parties on the issues litigated, and if those issues are fatal to a civil suit, a plaintiff cannot state a viable cause of action.

In *University of Tennessee v. Elliot*, 478 U.S. 788 (1986), an employment discrimination action, the Supreme Court considered whether state administrative factfinding is entitled to preclusive effect in section 1983 actions.  The Court found that affording preclusive effect to administrative factfinding constitutes sound policy.  *Id.* at 797.  Affording preclusive effect serves the general principle of collateral estoppel by avoiding the costs of repetitive litigation and conserving judicial resources.  *Id.* at 798.  Precluding subsequent litigation also serves the underlying purpose of the Full Faith and Credit clause because it prevents different forums from reaching conflicting results.  *Id.* at 799.  Thus:

> when a state agency "acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [ ] federal court must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Id.* (citing *Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)).

In *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994), the Ninth Circuit held that the preclusive effect extends to "administrative adjudications of legal as well as factual issues, even if <u>unreviewed</u>, so long as the state proceeding satisfies the requirements of fairness outlined in [*Utah Construction*]."  *Id.* at 1032-33 (emphasis added).  The threshold inquiry when determining whether preclusive effect applies is whether the proceeding in question "was conducted with sufficient safeguards to be 'equated with a state court judgment.'"  *Miller,* 39 F.3d at 1033 (quoting *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986)).  Because California has adopted the *Utah Construction* standard when determining preclusive effect, the Court need not look beyond California's preclusion law.  *Id.*

The threshold inquiry for this Court is whether the December 14, 2011 WBZA hearing and the February 28, 2012 Board hearing satisfied the requirements of California law such that a California court would have afforded their determinations preclusive effect.

**B. California Courts Would Have Given the WBZA and the Board's Findings Preclusive Effect**

In California, a two-part test determines the preclusive effect of administrative agency determinations.  *Eilrich v. Remas*, 839 F.2d 630, 633 (9th Cir. 1988) (citing *People v. Sims* (1982) 32 Cal.3d 468, 479).  First, the court must determine whether the proceeding satisfies the *Utah Construction* requirements.  *Id.*  Second, the court analyzes the claims under traditional collateral estoppel analysis.  *Id.*

**1.    The *Utah Construction* requirements are satisfied**

Plaintiffs do not and cannot dispute that the hearings on VGA's CUP and variance application satisfy the *Utah Construction* fairness requirements; i.e:  (1) the administrative agency acted in a judicial capacity; (2) the agency resolved disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to litigate.  *Miller*, 39 F.3d at 1033 (citing *Utah Constr.*, 384 U.S. at 422).

The WBZA and the Board clearly acted in a judicial capacity.  An administrative agency acts in a judicial capacity when it "applie[s] an established rule to specific existing facts rather than establishing a rule of law applicable to future cases . . ." *Eilrich*, 839 F.2d at 634.  Here, the Board acted in a judicial capacity by determining whether VGA complied with the established requirements set forth in the Ordinance.  The application of the general standard of the Ordinance to VGA's specific proposed gun store is a "classically adjudicatory function . . ."  *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 648 (citing *Horn v. County of Ventura* (1979) 24 Cal.3d 605, 614; *Pacifica Corp. v. City of Camarillo* (1983) 149 Cal.App.3d 168, 176).

The WBZA and the Board resolved disputed issues of fact.  At both hearings, the Alameda County Planning Department and Individual Plaintiffs presented evidence regarding how the distance between the proposed gun store and the nearest residentially zoned district should be measured.  (Doc. #13-3 at 8-9; Doc. #20-15 at 4-6; Doc. #20, Ex. T.)  The WBZA resolved the disputed issues of fact and held that the measurement must be taken from the building wall of the gun store to the boundary line

1   of the nearest residentially zoned district, resulting in a measurement of less than 500

2   feet.  (Doc. #13-3 at 8-9, 13.)  The Board affirmed the WBZA's determination.  (Doc.

3   #20, Ex. T.)  By considering the SLVA appeal, the Board implicitly held that it was

4   timely.  Therefore, both the WBZA and the Board resolved factual disputes before them.

5           Plaintiffs had an adequate opportunity to litigate.  For an administrative

6   proceeding to provide a plaintiff with an adequate opportunity to litigate, the

7   administrative proceeding "need do no more than satisfy the minimum procedural

8   requirements of the Fourteenth Amendment's Due Process Clause . . ."  *Kremer v.*

9   *Chemical Constr. Corp.*, 456 U.S. 461, 481 (1982).  "The fundamental requirement of

10  due process is the opportunity to be heard "at a meaningful time and in a meaningful

11  manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted).

12          The proceeding need not require formal trial procedures to constitute an

13  adequate opportunity to litigate.  *Miller*, 39 F.3d 1030, 1036 n.6 ("[T]he absence of

14  formal trial procedures has not historically prevented California courts from according

15  preclusive effect to administrative decisions.")  For example, there is no requirement

16  that witnesses must testify under oath nor that plaintiffs must be given an opportunity to

17  cross-examine witnesses.  *Club Moulin Rouge LLC v. City of Huntington Beach*, No.

18  CV04-10546, 2005 WL 5517234 at *7-9 (C.D. Cal. June 22, 2005).  The hearing need

19  not include safeguards such as provided for by the California Administrative Protective

20  Act.  *Mola Development Corp. v. City of Seal Beach* (1997) 57 Cal.App.4th 405, 412

21  (citing *Briggs, supra*, 40 Cal.App.4th 637) ("The protective provisions of the California

22  APA do not define the minimum procedural safeguards which must be afforded before

23  the California courts will accord an administrative decision preclusive effect. . . .

24  [A]dministrative preclusion has been acknowledged in cases involving public agencies

25  not encompassed by the [ ] APA, such as cities.")  Courts have held that City Council or

26  Board of Supervisor meetings afforded plaintiffs an adequate opportunity to litigate.

27  *See e.g.*, *Valley Wood Preserving, Inc. v. Paul*, 785 F.2d 751, 754 (9th Cir. 1986)

28

1   (holding that a Board of Supervisors' hearing precluded a subsequent § 1983 claim

2   even though "the Board conducted the hearings in an informal fashion, allowing

3   witnesses to speak who were not competent or even sworn" and "receiving information

4   casually an on an ex parte basis."); *Club Moulin Rouge LLC*, 2005 WL 5517234 at *12.

5        Here, Plaintiffs Teixeira and Nobriga personally argued before both the WBZA

6   and the Board.  (Doc. #13-3 at 7; Doc. #20, Ex. T.)  Individual Plaintiffs were

7   represented by counsel, who also addressed the Board.  (Doc. #20, Ex. T.)  Several

8   witnesses who supported Plaintiffs' proposed gun store also addressed the Board.  (*Id.*;

9   Doc. #13-3 at 8.)  Plaintiffs clearly had an adequate opportunity to litigate.

10       Even if Individual Plaintiffs had procedural objections to the hearings, they still

11  had an adequate opportunity to litigate.  Plaintiffs had the opportunity, yet failed to raise,

12  any procedural objections before the Board.  *Club Moulin Rouge*, 2005 WL 5517234 at

13  *10 (quoting *Valley Wood*, 785 F.2d at 753) ("had appellant raised its objections before

14  the Board of Supervisors, this would have allowed the Board an opportunity to modify its

15  procedures, perhaps obviating [plaintiff's] concerns").  Moreover, Individual Plaintiffs

16  had the opportunity for judicial review, which they chose not to exercise, by filing a writ

17  in state court, where they could have presented evidence demonstrating any alleged

18  procedural irregularities by the Board.  *Wehrli v. County of Orange*, 175 F.3d 692, 694

19  (9th Cir. 1999) (citing *Misischia v. Pirie*, 60 F.3d 626, 630 (9th Cir. 1995)).

20       Because the WBZA and the Board acted in a judicial capacity, resolved disputed

21  issues of fact properly before it, and Plaintiffs had an adequate opportunity to litigate,

22  the *Utah Construction* fairness requirements are satisfied.

## 2.    Collateral Estoppel Applies

23       Collateral estoppel bars relitigation of an issue if:  "(1) the issue necessarily

24  decided at the previous [proceeding] is identical to the one which is sought to be

25  relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and

26  (3) the party against whom collateral estoppel is asserted was a party or in privity with a

27

28

1  party at the prior [proceeding]."  *Eilrich*, 839 F.2d at 633 (quoting *Sims*, *supra*, 32 Cal.3d

2  at 484).  "The 'identical issue' requirement addresses whether 'identical factual

3  allegations' are at stake in the two proceedings, not whether the ultimate issues or

4  dispositions are the same."  *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511-

5  12 (citation omitted).

6          Two issues lie at the heart of the Complaint: (1) whether the WBZA properly

7  applied the Ordinance to the measurements provided by the Planning Department and

8  (2) whether the SLVA filed a timely appeal.  (Doc. #22 at ¶¶ 10-11.)  During the

9  December 14, 2011 hearing, the WBZA held that the appropriate measurement

10  methodology under Ordinance from the building wall of the proposed gun store in a

11  straight line to the property line of the nearest residentially zoned district.  (Doc. #13-3 at

12  8-9.)  Measuring the distance from the building wall, Plaintiffs' proposed gun store was

13  within 500 feet of the nearest residentially zoned district, in violation of the Ordinance.

14  (*Id.*)  The WBZA's ruling is reflected in Resolution Z-11-70.  (*Id.* at 13-15.)  The Board

15  relied on WBZA's determination when it denied Plaintiffs' CUP and variance.  (Doc. #20,

16  Ex. T.)  Accordingly, the WBZA and the Board found that the measurement utilized was

17  appropriate and that Plaintiffs' proposed gun store was located within 500 feet of the

18  nearest residentially zoned district, in violation of the Ordinance.

19          Although the WBZA found that the proposed gun store did not comply with the

20  Ordinance, it nevertheless granted VGA a variance based on special circumstances.

21  (Doc. #13-3 at 13-18.)  On December 22, 2011, SLVA filed an appeal arguing that

22  special circumstances did not apply to VGA's proposed gun store location.  (*Id.* at 38-

23  42.)  The Board considered SLVA's appeal on February 28, 2012.  (Complaint at ¶ 37.)

24  By hearing and sustaining SLVA's appeal, the Board necessarily held that the appeal

25  was timely.  At no time prior to the filing of the instant complaint did Plaintiffs contend

26  that the SLVA appeal was untimely.

27

28

The Board's decision became final when Plaintiffs failed to appeal it to the California superior court pursuant to the California Code of Civil Procedure within the statutory period.  *See Eilrich*, 839 F.2d at 632 (citing Cal. Civ. Proc. Code §§ 1094.5, 1094.6).  Individual Plaintiffs were the parties involved in the WBZA and Board hearings.  (Complaint at ¶ 17.)

Because the *Utah Construction* requirements and the traditional collateral estoppel criteria are met, California courts would give preclusive effect to the Board's findings.  *Valley Wood*, 785 F.2d at 753-54 (holding that review of a land use application by a county board of supervisors was sufficient to apply claim preclusion); *Club Moulin Rouge*, 2005 WL 5517234 at *3,12.  Accordingly, this Court must give preclusive effect to the Board's findings.

### C. Because the WBZA and the Board's Findings Are Final, Plaintiffs' Due Process, Equal Protection and As-Applied Second Amendment Claims Should Be Dismissed

Claim preclusion applies to Plaintiffs' due process, equal protection, and as-applied Second Amendment claims.  Issues central to each of these claims were before and resolved by the WBZA and the Board.  Plaintiffs cannot continue to litigate these issues by simply recasting their claims in constitutional terms.

### 1.  Plaintiffs' Due Process Claim Is Precluded

Here, Individual Plaintiffs assert their due process rights were violated in two respects: (1) the Board acted beyond its jurisdiction when it considered an allegedly late appeal; and (2) the County used "unreasonable measurements" to determine whether the gun store was in compliance with the Ordinance.  (Doc. #1 at ¶ 48; Doc. #21, at ¶ 9; Doc. #22 at ¶ 18.)

///
///
///
///
///

a.  The "Untimely" SLVA Appeal

Plaintiffs assert that the Board committed a procedural error because the SLVA appeal was allegedly untimely.  Even if the SLVA appeal were untimely,[2] Plaintiffs' due process claim would still be precluded.  The Board implicitly found that the SLVA appeal was timely by considering and granting it.  Individual Plaintiffs could have objected to the Board's hearing the appeal and sought a writ of mandate in the California Superior Court challenging the Board's consideration of an allegedly untimely appeal.  Cal. Code Proc. § 1094.5.  This is precisely the type of issue a writ is meant to address.  Cal. Code Proc. § 1094.5(b).  In fact, the only way to challenge such a finding would have been by seeking a writ of mandamus.  Cal. Civ. Proc. Code § 1094.5; Cal. Gov. Code, § 65009, subd. (c)(1)(E).  Plaintiffs cannot now assert that the appeal was untimely and that they were denied due process, when they should have filed a writ to address that very issue.

In *Misischia v. Pirie*, 60 F.3d 626 (9th Cir. 1995), the Ninth Circuit affirmed the dismissal of a section 1983 lawsuit where the plaintiff "had an opportunity, which he chose not to take, for judicial review, and even for the presentation of evidence in the reviewing court to demonstrative procedural irregularities by the board." *Id.* at 630.  The court noted that "'[i]f an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal.'" *Id.* (quoting *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988)).  Here, Plaintiffs were provided adequate due process to address the timeliness of the appeal.  They chose not to pursue the procedurally proper option.  Thus, the fact that the appeal was timely is conclusively established.

b.  The "Unreasonable" Measurement

Any due process claim based on the 500-foot measurement is similarly precluded.  To prove a substantive due process claim, Plaintiffs must first establish that

---

[2] The SLVA appeal was timely.  It was filed on December 22, 2011, and thus, was well within the 10 day timeline for appeals.  (Doc. #13-3 at 38-44; Alameda County Land Use Ordinance § 17.54.670.)

1   the Ordinance was unreasonably applied.  Here, the question of how to measure

2   distances pursuant to the Ordinance was considered by the WBZA and affirmed by the

3   Board.  (Doc. #13-3 at 6-9; Doc. #20 Ex. T.)  The WBZA necessarily found that the

4   Planning Department properly interpreted the Ordinance when it held that the proposed

5   gun store was 446 feet from the nearest residentially zoned district.  (Doc. #13-3 at 8,

6   15.)  If the Individual Plaintiffs disagreed with the WBZA's application of the Ordinance

7   and its final measurement, they could have appealed those findings to the Board.

8   Alameda County Ordinance § 17.54.670.  Presumably because the WBZA granted a

9   variance, Individual Plaintiffs decided not to appeal the WBZA's finding concerning the

10  measurement methodology.  The Board then accepted the distance calculation in

11  Resolution Z-11-70, and on that basis denied VGA's CUP and variance.   (Doc. #20, Ex.

12  T.)

13       The issues which would necessarily have to be decided in evaluating Individual

14  Plaintiffs' due process claim have already been considered by the WBZA and the

15  Board.  The Board's determinations are final because Plaintiffs did not file a writ of

16  mandamus.  Accordingly, Plaintiffs' due process claim is precluded.

17          **2.   Plaintiffs' Equal Protection Claim Must Be Dismissed**

18       Individual Plaintiffs assert that they have been denied equal protection because

19  the Defendants have not employed the same measurement methodology with similarly

20  situated businesses.  (Complaint at ¶ 50.)

21       In order to prove their equal protection claim, Plaintiffs must first establish that

22  the measurement methodology used by the Planning Department and accepted by both

23  the WBZA and the Board was "unreasonable."  Essentially Plaintiffs must show that the

24  measurement was not made in compliance with the Ordinance, or that the Ordinance

25  was improperly applied in this instance.  This issue, however, has been conclusively

26  established.  The WBZA found that the methodology used by the Planning Department

27  to calculate the distance was proper (Doc. #13-3 at 8-9), and the Board relied on that

28

measurement and determination in denying VGA's CUP and variance.   (Doc. #20, Ex. T.)  Thus, an issue which would be necessary to finding an equal protection violation has already been conclusively decided in the County's favor.  Plaintiffs' are precluded from bringing an equal protection claim based on a theory that the measurement was "unreasonable."

Plaintiffs also base their equal protection claim on the theory that Defendants have granted conditional use permits and variances to similarly-situated businesses. (Complaint at ¶ 50.)  Although this issue was not directly before the WBZA or the Board, Plaintiffs are still precluded from asserting this claim since it was an issue that Plaintiffs could have, but failed to, bring before the Board or writ to the California superior court. *Miller*, 39 F.3d at 1034 (citing *Swartzendruber v. City of San Diego* (1992) Cal.App.4th 896, 909).

Plaintiffs' equal protection claim must also fail because it is insufficiently pled. They fail to identify specific similarly-situated businesses.  *Vogt v. City of Orinda*, No. C11-2595 CW, 2012 WL 1565111 at *3 (N.D. Cal. May 2, 2012).  Courts have consistently held that where a plaintiff makes a class of one claim, there is a higher premium for a plaintiff to identify how he or she is similarly situated to others.  *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010).  Plaintiffs' conclusory allegations will not suffice.  *See Vogt*, 2012 WL 1565111 at *3 (granting a motion to dismiss where plaintiff failed to allege specific similarly situated businesses); *see also Scocca v. Smith*, No. C11-1318, 2012 WL 2375203 at *5 (N.D. Cal. June 22, 2012) (holding conclusory allegations that the plaintiff was similarly situated were insufficient to defeat motion to dismiss).  For all these reasons, Plaintiffs' equal protection claim must be dismissed.

### 3.  Plaintiffs Are Estopped From Challenging The Ordinance As Applied

Plaintiffs also assert that the Ordinance's 500 foot distance requirement is irrational as applied to the facts of the case.  (Complaint at ¶ 54.)  To prove that the

1   Ordinance is unconstitutional as applied, Plaintiffs would necessarily have to establish

2   that the methodology used to measure the distance between the proposed gun store

3   and the nearest residentially zoned district was improper.  However, both the WBZA

4   and the Board have decided this issue, and found that the methodology used by the

5   Planning Department to calculate the distance was correct.  (Doc. #13-3 at 9-8; Doc.

6   #20, Ex. T.)

7           California courts give preclusive effect to zoning determinations in subsequent

8   as-applied constitutional challenges.  In *Briggs*, *supra*, 40 Cal.App.4th 637, the court

9   upheld summary judgment, holding that plaintiff's failure to file a writ challenging a

10   planning commission's denial of a variance precluded plaintiff from challenging the

11   ordinance as applied.  "Plaintiffs could and should have sought direct judicial review of

12   the [Board's] decision by administrative mandamus; if the condition to which plaintiffs

13   objected was improperly imposed, it could have been vacated pursuant to section

14   1094.5.  Plaintiffs completely bypassed the proper procedure and instead sought

15   damages and injunctive relief by this independent action."  *Id.* at 645.  "A proceeding

16   under Code of Civil Procedure section 1094.5 is the <u>exclusive remedy for judicial review</u>

17   of the quasi-adjudicatory administrative action of the local-level agency. . . . The proper

18   method to challenge the validity of conditions imposed on a building permit is

19   administrative mandamus under Code of Civil Procedure section 1094.5 . . ."  *Id.*

20   (quoting *City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713, 718-719

21   (emphasis added)).

22           Because the validity of the WBZA's measurements was at issue in the prior

23   administrative proceeding, Plaintiffs' failure to contest the decision by filing a writ of

24   mandamus estops them from now relitigating the same issue.  *Id.*  Put another way,

25   Plaintiffs are collaterally estopped from challenging the WBZA and the Board's

26   decisions because those decisions have "achieved finality due to the aggrieved party's

27

28

failure to pursue the exclusive <u>judicial</u> remedy for reviewing administrative action."  *Id.* at 646 (emphasis in original).

### D. Although Plaintiffs' Second Amendment Facial Challenge May Not Be Precluded, It Still Must Be Dismissed As A Matter of Law

While Plaintiffs' facial Second Amendment challenge may not be precluded, as argued in the Motion to Dismiss, the Ordinance is nevertheless constitutional on its face.

As detailed in the moving papers, in order to determine whether Plaintiffs have stated a Second Amendment claim, the Court should employ a two-pronged approach. (Doc. #13-1 at 12-14.)  Applying the two-pronged approach, the Court must find the Ordinance passes constitutional muster.

### 1. The Ordinance does not impose a substantial burden on the Second Amendment

The Ordinance, unlike the regulations at issue in the cases cited by Plaintiffs, merely restricts where the commercial sale of firearms may occur in unincorporated Alameda County.  The Second Amendment, as construed in *District of Columbia v. Heller*, 554 U.S. 570 (2008), protects "the right to possess a handgun in the home for the purpose of self-defense."  *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3050 (2010); *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (the Second Amendment encompasses the right to "keep[] operable handguns at home for self-defense").  The *Heller* court specifically warned that "[n]othing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms."  *Heller*, 554 U.S. at 626-27.  Thus, the very law at issue in this case is a "presumptively lawful regulatory measure[ ]."  *Id.* at 627 n.26.

The Ordinance permits Plaintiffs to locate a gun store on a site that is more than 500 feet from a residentially zoned district, elementary, middle, or high school, pre-school or daycare, other firearms sales business, liquor store or establishments in which liquor is served.  Alameda County Ordinance § 17.54.131.  Restricting the commercial

sale of firearms in residential and other sensitive areas does not substantially burden the core "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635.  Thus, it does not impose a substantial burden on Second Amendment rights.  Because the Ordinance does not impose a substantial burden on Second Amendment rights, the Court's inquiry should end, and it should dismiss Plaintiffs' claim as a matter of law.  *United States v. Marzzarella*, 614 F.3d 85, 91& 91n.6 (3d Cir. 2010); *Hall v. Garcia*, No. C 10-03799, 2011 WL 995933 at *2 (N.D. Cal. Mar. 17, 2011).

## 2.  Even If the Ordinance substantially burdens a core right, it survives constitutional scrutiny

Even if this Court were to find that the Ordinance substantially burdened Second Amendment rights, it should nevertheless be held constitutional.  Plaintiffs assert that a citizen's Second Amendment right includes the right to acquire firearms.  (Doc. #22 at ¶ 36.)  Even if such a right exists, it is irrelevant to the Court's inquiry.  Unlike the ordinance at issue in *Ezell v. City of Chicago*, 651 F.3d 684, 708-709 (7th Cir. 2011), which prohibited all firing ranges in the City of Chicago, the Ordinance does not impose an outright ban on the commercial sale of firearms in unincorporated Alameda County. Rather it imposes reasonable limits on where gun stores may be located.  The Ordinance is more akin to a content-neutral time, place, and manner regulation on the commercial sale of firearms; it, therefore, need only pass a type of intermediate scrutiny:  it must be designed to serve a substantial government interest and allow for reasonable alternatives.  *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986).

The Ordinance serves several substantial County interests, including its substantial interest in preventing the deleterious secondary effects of commercial sales of firearms.  While Plaintiffs aver that only law-abiding individuals purchase firearms, gun stores "can be targets of persons who are or should be excluded from purchasing and possessing weapons."  *Suter v. City of Lafayette* (1997) 57 Cal.App.4th 1109, 1132.

1    Therefore, it is reasonable to regulate them such that they are located away from

2    residential areas.  *Id.*  By prohibiting gun sales near certain well-defined areas, the

3    County promotes public safety and prevents harm in populated, well-traveled, and

4    sensitive areas such as residential districts or schools.

5            The Ordinance also allows the County to preserve the quality of its residential

6    neighborhoods, commercial districts, and the overall quality of urban life.  (Doc. #20-15

7    at 7-8.)  This interest is "vital."  *Renton*, 475 U.S. at 48, 50.  The sale of firearms, like the

8    sale of any product, is a commercial activity, and municipalities are entitled to confine

9    commercial activities to certain districts.  *Village of Euclid v. Ambler Realty Co.*, 272

10   U.S. 365, 395 (1926).  In the First Amendment context, the Supreme Court has

11   endorsed geographic restrictions on certain businesses in order to disperse them

12   throughout a city or county and not have them located within close proximity to sensitive

13   places such as residential neighborhoods, schools, or churches.  *Renton*, 475 U.S. at

14   52.

15           The Ordinance also allows for reasonable alternatives.  Although Plaintiffs argue

16   that the Ordinance effectively zones gun stores out of existence, allowing for no

17   alternative venues to open and operate a gun store, these allegations find no basis in

18   fact.  Ten[3] other businesses sell firearms in the County, including the Big 5 Sporting

19   Goods located only 607 feet from Plaintiffs' proposed gun store.  (Doc. #20-15 at 6.)

20   Even Plaintiff John Teixeira must recognize that there are alternatives, as he owned and

21   operated a gun store in Alameda County for several years.   (Doc. #20 at ¶ 5.)  Given

22   the number of gun stores operating in the County in compliance with the Ordinance, the

23   Court cannot find that the County has effectively denied gun stores a reasonable

24   opportunity to open and operate within the County limits.

25

26

27   ───────────────────

28   [3] Three gun stores operate in the unincorporated area of the County; ten gun stores operate in the County
     if one counts the stores that operate in the incorporated cities.

1    The Ordinance is a presumptively lawful measure and not subject to a facial

2  Second Amendment challenge.  Even if the Ordinance were not outside the scope of

3  the Second Amendment, it nevertheless survives constitutional scrutiny.

4                          IV.    **CONCLUSION**

5    Plaintiffs' due process, equal protection, and as-applied Second Amendment

6  challenges are precluded because Plaintiffs failed to seek writ review of the WBZA and

7  the Board's decisions.  Plaintiffs have failed to sufficiently state any of their claims.  For

8  the foregoing reasons, Defendants respectfully request that this Court grant their Motion

9  to Dismiss and dismiss Plaintiffs' Complaint For Damages, Injunctive Relief and/or

10  Declaratory Judgment with prejudice.

11

12  DATED:        January 25, 2013        DONNA R. ZIEGLER,
                                          County Counsel in and for the
13                                        County of Alameda, State of California

14

15                                        By    /s/   Mary Ellyn Gormley
16                                            MARY ELLYN GORMLEY
                                              Assistant County Counsel
17
                                              Attorneys for County of Alameda,
18                                            Alameda Board of Supervisors, Wilma
                                              Chan, Nate Miley, and Keith Carson
19

20

21

22

23

24

25

26

27

28