IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN TEIXEIRA, *et al.*,

    Plaintiffs,

v.

COUNTY OF ALAMEDA, *et al.*,

    Defendants.

No. C 12-03288 SI

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Now before the Court are defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiffs' motion for a preliminary injunction. Plaintiffs have filed an opposition to the motion to dismiss, defendants have filed an opposition to the motion for a preliminary injunction, and both parties have filed replies. In addition, both parties have submitted supplemental briefing pursuant to the Court's December 18, 2012 Order. Docket No. 30. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument. The defendants' motion to dismiss is GRANTED and the plaintiffs' motion for a preliminary injunction is DENIED for the reasons set forth below.

**BACKGROUND**

In 2010, John Teixeira, Steven Nobriga, and Gary Gamaza formed a partnership called Valley Guns and Ammo ("VGA") in order to open a gun store in Alameda County. Compl. ¶ 17. In April of 2011, Teixeira, Nobriga, and Gamaza located a property in San Leandro where they planned to open the store. *Id.* ¶ 25.

1   Under Alameda County Land Use Ordinance § 17.54.131 ("Ordinance"), a gun store cannot be located within 500 feet of residentially zoned areas and certain kinds of schools and businesses. *Id.* ¶ 21. As part of their preliminary preparations, Teixeira, Nobriga, and Gamaza obtained a survey which measured from the front door of their property to the front door of the nearest residential properties and found that the distance was over 500 feet. *Id.* ¶ 26-27.

The West County Board of Zoning Adjustments ("WBZA") held a hearing on VGA's application for a conditional use permit on December 14, 2011. *Id.* ¶ 30. The staff reports submitted to WBZA found that the distance from the proposed location to the nearest residence was less than 500 feet; this measurement was from the front door of the closest house in the neighboring residential zone to the closest part of plaintiffs' building. *Id.* ¶ 31. Thus, WBZA found that the location did not meet the requirements of the Ordinance. However, WBZA granted VGA a variance and issued the conditional use permit in Resolution No. Z-11-70. *Id.* ¶ 32.

WBZA informed VGA that Resolution No. Z-11-70 would become effective on December 25, 2011 unless an appeal was filed with the Alameda County Planning Department. *Id.* ¶ 33. The San Leandro Village Home Association filed an appeal. *Id.* ¶ 34. The Alameda County Board of Supervisors ("Board") heard the appeal from the decision of the WBZA on February 28, 2012, and voted to overturn the decision of the WBZA. *Id.* ¶ 37. VGA did not appeal this decision to any state court.

On June 25, 2012, Teixeira, Nobriga, Gamaza and three non-profits — the CalGuns Foundation, Inc., Second Amendment Foundation, Inc., and California Association of Federal Firearms Licensees, Inc. — filed this suit alleging violations of due process and equal protection guarantees under the Fourteenth Amendment and alleging that the Ordinance on its face and as applied to the facts of this case violates the Second Amendment.

On September 27, 2012, defendants filed a motion to dismiss all four claims for failure to state a claim. On November 5, 2012, plaintiffs filed a motion for a preliminary injunction to enjoin defendants from prohibiting VGA from opening the proposed gun store. Plaintiffs subsequently stipulated to the dismissal of their claim alleging violation of due process of law. Pls.' Supplemental Br., Docket No. 30, at 2.

# DISCUSSION

## 1. MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted.

### B. Collateral Estoppel

Defendants argue that both the legal and factual findings of WBZA and the Board must be given preclusive effect in this Court. In determining the preclusive effect of a state administrative decision,

1 federal courts follow the state's rules of preclusion. *White v. City of Pasadena*, 617 F.3d 918, 926 (9th
2 Cir. 2012). California has a two-part test to determine the preclusive effect of an administrative
3 determination. *Eilrich v. Remas*, 839 F.2d 630, 633 (9th Cir. 1988). First, the proceeding must meet
4 the fairness requirements set forth in *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966).
5 *Id.* Under *Utah Construction,* collateral estoppel should be applied "[w]hen an administrative agency
6 is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties
7 have had an adequate opportunity to litigate." *Id.* at 422. Second, the determination must satisfy
8 traditional criteria for issue preclusion. *Eilrich*, 839 F.2d at 633. Under traditional collateral estoppel
9 criteria, an issue cannot be relitigated if the identical issue was actually litigated and necessarily decided
10 at the previous proceeding; the previous proceeding must have also resulted in a final judgment on the
11 merits and involved the same parties. *Lucido v. Superior Court*, 51 Cal. 3d 335, 341–43 (1990).

12 Here, WBZA and the Board decided that VGA's proposed gun store violates the Ordinance
13 because its location is less than 500 feet from the closest residential zone. *See* Exs. A, B, & C, Request
14 for Judicial Notice in Supp. of Def.'s Mot. to Dis.[1] Also, plaintiffs concede that the distance from the
15 neighboring residential zone to the closest point of the proposed store is less than 500 feet and that the
16 Court can give preclusive effect to this finding of fact. Pls.' Supplemental Br. at 2:26–28.

17 However, the parties dispute whether plaintiffs are precluded from arguing that WBZA violated
18 the Fourteenth Amendment's equal protection guarantee in other ways. Defendants argue that VGA
19 could have raised, but failed to raise, the core equal protection claim – that similarly situated businesses
20 have been granted conditional use permits and variances, or were subject to measurement for zoning
21 purposes unlike the measurement methodology applied in VGA's case. Defendants argue that because
22 plaintiffs failed to raise the equal protection claim in earlier proceedings, plaintiffs are estopped from
23 raising it now. Defendants cite *Miller v. County of Santa Cruz*, 39 F.3 1030, 1034 (9th Cir. 1994), for
24 this proposition.

---

27 [1] In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).
28 Exhibits A, B, C & D attached to Defendants' Request for Judicial Notice are matters of public record. Docket No. 24. Therefore, the Court takes judicial notice of them.

4

However, *Miller* does not so hold. In *Miller*, the plaintiff was a former employee of the county sheriffs' department who had been terminated for misconduct. He challenged his termination before the county civil service commission and, after an evidentiary hearing, lost. The commission issued findings of fact and concluded that his termination was appropriate. He did not pursue an available appellate procedure, so the findings became final. Thereafter he filed a federal § 1983 claim, restating the core allegations in his previously unsuccessful wrongful termination claim. *Id.* at 1034-35. The Ninth Circuit agreed with the district court that the factual findings of the civil service commission must be given preclusive effect and were dispositive of plaintiff's claim. The opinion did not discuss, or decide, whether other constitutional claims, premised on factual assertions not presented to the administrative agency, were precluded.

In this case, the unchallenged factual findings of the WBZA – that the proposed location violates the Ordinance – are not dispositive as to plaintiffs' equal protection claim, because the question raised is how similarly situated businesses have been treated. A review of the minutes of the meeting of the WBZA, the WBZA's subsequent resolution, and the brief summary of the decision of the Board shows no evidence that the parties litigated any of the facts at issue in the proposed equal protection claim. *See* Exs. A, B, & C, Request for Judicial Notice in Supp. of Def.'s Mot. to Dis. Nowhere does the record reflect any litigation regarding similarly situated businesses and whether they have been granted conditional use permits and variances, or were subject to measurement for zoning purposes unlike the measurement methodology applied in VGA's case. Accordingly, the Court finds that the factual issues underlying plaintiffs' equal protection claim are not precluded.

In addition, there is no indication that WBZA or the Board considered the constitutionality of Alameda's Ordinance under the Second Amendment or that the parties litigated that issue. Accordingly, the Court finds that plaintiffs' claims under the Second Amendment are not precluded.

### C. Equal Protection Claim

A plaintiff can bring an equal protection claim as a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A "class of one" claim requires a showing that the government "(1) intentionally (2) treated [plaintiffs] differently than other similarly situated [businesses], (3) without a

5

rational basis." *Gerhart v. Lake County, Montana*, 637 F. 3d 1013, 1022 (9th Cir. 2011) (citing *Olech*, 528 U.S. at 564). In *Olech*, the Court held that the plaintiff's allegations that the Village of Willowbrook intentionally demanded a thirty-three foot easement as a condition of connecting her property to the municipal water supply when the Village required only a fifteen-foot easement from other similarly situated property owners, that this demand was irrational and wholly arbitrary, and that the Village ultimately connected her property after receiving a fifteen-foot easement, were sufficient to state an equal protection claim. 528 U.S. at 565.

Here, the Court finds that plaintiffs have not alleged sufficient facts indicating that defendants intentionally treated plaintiffs differently from other similarly situated businesses without a rational basis. Plaintiffs' conclusory assertions that "the [d]efendants have not engaged in unreasonable measurements against similarly situated businesses and/or the [d]efendants have granted conditional use permits and variances to similarly situated businesses" are not enough. Compl. ¶ 50. Plaintiffs fail to allege facts sufficient to show that defendants intentionally granted conditional use permits and variances to other similarly situated businesses that fell within 500 feet of a disqualifying property under the Ordinance or that defendants intentionally measured the distance to the buildings of similarly situated businesses differently.

Plaintiffs respond that facts regarding the different treatment of similarly situated businesses are uniquely in control of the defendants. Pls.' Opp., Docket No. 22, ¶ 25. Rule 8 of the Federal Rules of Civil Procedure, however, requires the plaintiffs to allege facts sufficient to show they are entitled to relief. "Rule 8 . . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL 2972374, at *1 (N.D. Cal. Sept. 14, 2009).

Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' equal protection claim with leave to amend.

### D. Second Amendment Claims

The Second Amendment confers an individual right to possess handguns in the home for self-protection. *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008). This is a fundamental right and is

incorporated against states and municipalities under the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). However, the "right secured by the Second Amendment is not unlimited," and the Supreme Court has reaffirmed the longstanding presumptive lawfulness of regulatory measures forbidding the carrying of firearms in sensitive places such as schools or imposing conditions on the sale of arms. *Heller*, 554 U.S. at 626-27.

Neither the Supreme Court nor the Ninth Circuit has articulated the precise methodology to be to be applied to Second Amendment claims. *See Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 840 (2013) (noting "we leave for another day" the scope of the Second Amendment). However, *Heller* and courts applying it have provided some guidance. In *Heller*, the Court specifically reaffirmed that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," calling them "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626-27, 627 n.26. Presumptively lawful restrictions, according to the Third Circuit, are those that "regulate conduct outside the scope of the Second Amendment" and "these longstanding limitations" should be understood as "exceptions to the right to bear arms." *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010). Thus, the question of "what level of constitutional review the law must survive" only applies "[i]f a given regulation does not qualify as 'presumptively lawful.'" *Hall v. Garcia*, No. C 10-03799, 2011 WL 995933, *3 (N.D.Cal. Mar. 17, 2011). In other words, *Heller* envisioned a process where courts first examine whether the regulation is presumptively valid and therefore excepted from Second Amendment coverage – a presumption that may be overcome by a showing that the regulation nonetheless places a substantial burden the "core protection of the Second Amendment," which is the ability to defend "hearth and home." *Marzzarella*, 614 F.3d at 94.

The Ninth Circuit endorsed this approach in its first opinion in *Nordyke v. King*, 563 F.3d 439, 460 (9th Cir. 2009) (vacated and remanded, 611 F.3d 1015 (9th Cir. 2010)).[2] In *Nordyke*, plaintiffs

---

[2] The first *Nordyke* opinion was issued after the Supreme Court's *Heller* decision, but before *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Prior to addressing the constitutionality of the county ordinance, the panel held that the Second Amendment was incorporated by the Due Process Clause of the Fourteenth Amendment. 563 F.3d at 457. The Ninth Circuit ordered that the case be

7

challenged an Alameda County ordinance that generally banned guns on County property, with an exception for certain events that did not include plaintiffs' proposed gun show. The Ninth Circuit first analyzed whether the regulation at issue fit within the presumptively valid *Heller* exceptions, noting that open public spaces such as county fairground property are very similar to the "schools and government buildings" excepted in *Heller*. *Id.* at 460. In particular, the Court explained that all these places – schools, government buildings, and now open public spaces – are considered "sensitive places" by the Supreme Court because "possessing firearms in such places risks harm to great numbers of defenseless people (e.g., children)." *Id*. at 459. After rehearing in *Nordyke*, the Ninth Circuit eventually found that "[n]o matter how broad the scope of the Second Amendment . . . it is clear that, as applied to Plaintiffs' gun shows and as interpreted by the County, this regulation is permissible." *See Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 840 (2013) (citing *Heller*, 554 U.S. at 626-27); *see also United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (relying on the same passage in *Heller* to find that the prohibition of felons from possessing handguns was presumptively lawful).

Here, plaintiffs allege that Alameda's zoning Ordinance violates the Second Amendment, both facially and as applied to them. The zoning Ordinance places limited "qualifications on the commercial sale of arms" by restricting their sale within 500 feet of "sensitive places such as schools" and residences. The Ordinance is precisely the kind of presumptively valid restriction envisioned by *Heller* – it is a restriction on gun sales and purchases in or near sensitive places. The Ordinance is not a total ban on gun sales or purchases in Alameda County and therefore does not implicate the core right to possess a gun in the home for self-defense articulated in *Heller*. Moreover, there are no factual allegations in the complaint that this presumptively lawful Ordinance burdens, even slightly, plaintiffs' right to sell or purchase guns in Alameda County – a right which the U.S. Supreme Court has yet to recognize. At most, there are conclusory allegations that this particular gun store is "essential" to defendants' ability to exercise their Second Amendment rights and that it is "essential to [defendants]

---

reheard *en banc*, 575 F.3d 890 (9th Cir. 2009). After *McDonald*, the Ninth Circuit remanded the case back to the same panel. 611 F.3d 1015 (9th Cir. 2010). Although its original decision is vacated, the panel's analysis of laws regulating guns in sensitive places has been recognized by other courts. *See, e.g.*, *Brown v. United States*, 979 A.2d 630, 641 (D.C. 2009); *United States v. Masciandaro*, 648 F.Supp. 2d 779, 790-91 (E.D.Va.2009).

assisting their patrons and customers in exercising their Second Amendment rights." Compl. ¶¶ 43-44. Such conclusory allegations fail to demonstrate how the zoning prohibition as to *one* gun store substantially burdens the rights of defendants or their Alameda County patrons. Accordingly, the Court concludes that dismissal of defendants' Second Amendment claims is warranted.

The Court need not decide what level of constitutional scrutiny to apply to the (as yet unarticulated) right to sell or purchase guns because as a threshold matter, there are simply no allegations sufficient to rebut the presumption of validity established in *Heller*. Moreover, even applying the strictest scrutiny – which this Court explicitly does not decide – courts in this district have upheld similar regulations. *See Hall v. Garcia*, 2011 WL 995933, at *5 (N.D.Cal. Mar. 17, 2011) (upholding a regulation prohibiting gun possession within 1000 feet of a school under intermediate scrutiny, but noting that the regulation would survive "[u]nder any of the potentially applicable levels of scrutiny" because of the substantial government interest of protecting citizens from gun violence in sensitive spaces).

If the Court dismisses a cause of action, leave to amend may be appropriate unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). In the ordinary course, where a motion to dismiss is decided on allegations in pleadings, without any relevant factual record, leave to amend may be appropriate. Here, however, while defendants' motion to dismiss was pending, plaintiffs filed a motion for preliminary injunction. In support of their motion, plaintiffs submitted evidence which itself suggests that leave to amend may be futile. In particular, plaintiffs provided evidence that there are ten other gun stores in Alameda County, including the "Big 5 Sporting Goods" store located only 607 feet from plaintiffs' proposed site. *See* Nobriga Decl., Ex. O, Docket No. 20-15 at 5, 6. According to defendants, these existing stores are in compliance with the Ordinance. Def's. Rep. at 12 (Docket No. 24 at 18). Moreover, plaintiffs Teixeira and Gamaza previously operated another gun store in Alameda County before attempting to open this new one. *See* Nobriga Decl. ¶ 5. This suggests that Alameda County residents seeking to purchase guns have no shortage of options; merchants looking to sell guns have managed to do so lawfully, in compliance with this Ordinance; and any barrier to gun sales, purchases, or ownership presented by this Ordinance is *de minimis*.

The Court is therefore skeptical that plaintiffs can amend their complaint to allege that the Ordinance is invalid, either facially or as applied, in light of *Heller*. However, leave to amend will be granted, should plaintiff choose to do so. Accordingly, defendants' motion to dismiss plaintiffs' Second Amendment claims is GRANTED with leave to amend.

## 2. PRELIMINARY INJUNCTION

Having granted defendants' motion to dismiss, plaintiffs' motion for a preliminary injunction is moot. Accordingly, plaintiffs' motion is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the defendants' motion to dismiss with leave to amend. If plaintiffs wish to amend the complaint, they must do so **no later than March 15, 2013**. The plaintiffs' motion for preliminary injunction is DENIED as moot. This Order resolves Docket Nos. 13 and 21.

**IT IS SO ORDERED.**

Dated: February 26, 2013

SUSAN ILLSTON
United States District Judge