1 Donald E.J. Kilmer, Jr., (CA State Bar No. 179986)
Law Offices of Donald Kilmer
2 A Professional Corporation
1645 Willow Street, Suite 150
3 San Jose, California 95125
Telephone: (408) 264-8489
4 Facsimile: (408) 264-8487
EMail: Don@DKLawOffice.com
5
Jason A. Davis (CA State Bar No. 224250)
6 Davis & Associates
27201 Puerta Real, Suite 300
7 Mission Viejo, California 92691
Telephone: (949) 310-0817
8 Facsimile: (949) 288-6894
EMail: Jason@CalGunLawyers.com
9
Charles W. Hokanson (CA State Bar No. 163662)
10 4401 Atlantic Ave, Suite 200
Long Beach, California 90807
11 Telephone: (562) 316-1476
Facsimile: (562) 316-1477
12 Email: CWHokanson@TowerLawCenter.com

13 Attorneys for Plaintiffs

14

15 IN THE UNITED STATES DISTRICT COURT

16 FOR THE NORTHERN DISTRICT OF CALIFORNIA

17

18 JOHN TEIXEIRA, STEVE NOBRIGA, GARY GAMAZA, CALGUNS FOUNDATION (CGF), INC., SECOND AMENDMENT FOUNDATION
19 (SAF), INC., and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES (Cal-
20 FFL),

21      Plaintiffs,

22 vs.

23 COUNTY OF ALAMEDA, ALAMEDA BOARD OF SUPERVISORS (as a policy making body),
24 WILMA CHAN in her official capacity, NATE MILEY in his official capacity, and KEITH
25 CARSON in his official capacity,

26      Defendants.

27

28

Case No. 3:12-CV-03288 -WHO

**Opposition to Motion to Dismiss**


Date: September 4, 2013
Time: 2:00 p.m.
Place: Courtroom 2 (17th Floor)

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   DEFENDANTS INAPPROPRIATELY ASK THE COURT TO ACCEPT THEIR
      VERSION OF THE "TRUE FACTS".................................................................2

III.  DEFENDANTS' ARGUMENTS ASSERTING THAT PLAINTIFF CANNOT SHOW A
      SECOND AMENDMENT VIOLATION ARE MISPLACED ENTIRELY ..............................5

      A.   The "law of the case" doctrine has no application here.....................................5

      B.   The Second Amendment protects much more than the right to defend ones' self in
           the home.................................................................................................6

           1.   *McDonald v. Chicago* held that the right to bear arms is a fundamental
                right protected by the Second Amendment.............................................7

           2.   The Seventh Circuit has held squarely that Second Amendment rights do
                not begin and end at one's front door ....................................................8

           3.   The Seventh Circuit also has ruled that Second Amendment protects
                against infringement of ancillary conduct that is necessary to exercise one's
                core right to self-defense......................................................................9

      C.   There is no "presumption of lawfulness" to be applied here ...........................10

      D.   Employing A Proper Analytical Framework To Plaintiffs' Claims Must Result In
           Denial Of Defendants' Motion Because They Bear The Burden Of Justifying The
           County's Laws And Have Not Even Tried To Do So ...................................12

IV.   DEFENDANTS' OWN EVIDENCE BELIES THEIR ARGUMENTS AND SHOWS
      PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE VALID.................................15

V.    CONCLUSION.........................................................................................1818

# TABLE OF AUTHORITIES

**Cases**

*Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219 (7th Cir. 1995) ............................5

*Balistreri v. Pacifica Police Dept.* 901 F.2d 696 (9th Cir. 1990). ..............................................3

*Barker v. Riverside County Office of Ed.* 584 F.3d 821 (9th Cir. 2009)...................................3

*Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007). ...........................................3

*Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585 (8th Cir. 2009) ...............................................3

*City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882 (9th Cir. 2001). .................1, 6

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957) ................................................................3

*De La Cruz v. Tormey,* 582 F.2d 45 (9th Cir. 1948)................................................................3

*District of Columbia v. Heller,* 554 U.S. 570 (2008)......................................................Passim

*Eatwell v. Beck*, 41 Cal. 2d 128, 257 P.2d 643 (1953) .........................................................10

*Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011) ..............................................Passim

*Jackson v. State of Alabama State Tenure Com'n,* 405 F.3d 1276 (11th Cir. 2005) ..............11

*L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419 (2nd Cir. 2011).........................................3

*McDonald v. City of Chicago,* 561 U.S. __, 130 S.Ct. 3020 (2010)..............................Passim

*Moore v. Madigan,* 702 F. 3d 933 (2102)...........................................................................8, 9

*People v. Banks*, 53 Cal. 2d 370, 1 Cal. Rptr. 669, 348 P.2d 102 (1955)..............................10

*Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000)......................................................................5

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2nd Cir. 2009)...............................................3

*Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988).....................................................5

*Thomas v. Bible,* 983 F. 2d 152 (1993)................................................................................11

*United States v. Houser*, 804 F.2d 565 (9th Cir. 1986) ..........................................................5

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000)....................................1, 5

*United States v. Smith*, 389 F.3d 944 (9th Cir. 2004) ......................................................1, 5, 6

**Other Authorities**

Moore's Federal Practice § 134.21[1] (3d ed. 2003)................................................................5

R. Pergament, *TruTV Crime Library, The Menendez Brothers (*available at
   http://www.trutv.com/library/crime/notorious_murders/famous/menendez/trial_16.htm
   l ....................................................................................................................................4

**Rules**

Federal Rule of Civil Procedure 8 ...........................................................................................2

## I.      Introduction

Defendants' motion to dismiss attempts to turn this case on its head.  While, certainly, there are basic notice pleading standards that must be met when statutes are claimed to be unconstitutional, the actual burden here is on the government to justify its implementation of the challenged law.  But Defendants make no attempt to do so.  Indeed, that very failing is at the core of this action.  Simply put, Plaintiffs allege that the County of Alameda has instituted zoning rules that adversely affect core constitutional rights without a proper basis for doing so.  It is up to Defendants to prove that their actions survive the heightened scrutiny required in such situations.  They fail to do so.

Instead, Defendants argue that this court must rule in their favor, under the doctrine of "law of the case," because they claim it is bound by the decision on a prior motion to dismiss the original complaint.  But the doctrine of law of the case does not apply here.   Interlocutory rulings by a trial court do not amount to "law of the case." *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 888 (9th Cir. 2001).   Rather, the doctrine applies when an appellate court has finally ruled on an issue, then remanded the case to the trial court for further proceedings.   In that situation, the trial court is "bound"[1] to follow the higher court's decision.  But the doctrine is "wholly inapposite" to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction by an intervening appeal. *United States v. Smith,* 389 F.3d 944, 949 (9th Cir. 2004); *see also Santa Monica Baykeeper,* 254 F.3d at 888.

Furthermore, the ruling on the prior motion to dismiss was clearly erroneous.  The decision reasoned that that the challenged regulations were entitled to a "presumption" of validity and that no precedent existed suggesting that there was any Second Amendment right outside of one's home.  Neither of these propositions is correct.  The Supreme Court dictum in *District of Columbia v. Heller,* 554 U.S. 570 (2008), that the prior decision relied upon to find the asserted "presumption" is not the law; such blanket presumption of constitutionality was actually rejected by that Court. *See Ezell v. City of*

---

[1] As will be discussed later in this opposition, saying that any court is bound by the doctrine of "law of the case" is incorrect.  The doctrine is discretionary even when it applies. *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

*Chicago,* 651 F.3d 684, 706 (7th Cir. 2011).   And, subsequent decisions have clearly ruled that core Second Amendment rights include much more than the right to keep a handgun in one's home.  The personal Second Amendment rights announced in *Heller,* and *McDonald v. City of Chicago,* 561 U.S. __, 130 S.Ct. 3020 (2010), include the right to self defense outside of one's home and also include ancillary matters that enable a person to exercise that right.  *Heller*, 554 U.S. at 599; *McDonald*, 130 S.Ct. at 3048. For example, one court found that a law prohibiting firing ranges within a city's limits was unconstitutional as it impermissibly burdened a citizen's Second Amendment rights.  *Ezell v.City of Chicago,* 651 F.3d 684, 706 (7th Cir. 2011).   That court stated: "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id.* at 704.

Finally, the court's prior ruling is perhaps understandable given that Second Amendment litigation defining the scope of the rights protected is evolving.  However, since the filing of the initial motion to dismiss in this matter, precedent has developed which sets out the proper method for analyzing claims that government regulations impinged those rights.  Uniformly, the cases confirm that the proper framework is that set out in the cases dealing with alleged restrictions on First Amendment rights.  *See e.g.,* Ezell, 651 F.3d at 706-07 (Seventh "and other circuits have already begun to adapt First Amendment doctrine to the Second Amendment context").  Following that framework, the gun store and training facility at issue here is as vital to the exercise of Second Amendment rights as is a bookstore to the exercise of First Amendment rights.  And, the county's restrictions on the opening of the gun store here cannot satisfy the heightened level of scrutiny that is applied to restrictions on bookstores – nor has the County even tried to argue that they can.  As such, the instant motion should be denied.

## II.     Defendants Inappropriately Ask the Court to Accept Their Version of the "True Facts"

Federal Rule of Civil Procedure 8 sets out the rules for a properly pleaded complaint.  It requires that the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  It also mandates that the pleading to be "simple, concise and direct. No technical form is required." And, in the end, the rule directs that "Pleadings must be construed so as to do justice."

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). It must simply set forth "the 'grounds' of his 'entitle[ment] to relief'" in more than conclusions and labels. *Id.* Thus, when faced with a Rule 12(b)(6) motion, the court simply must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1948). Indeed, the court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.' *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2nd Cir. 2009); *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 429 (2nd Cir. 2011). **All** reasonable inferences from the facts alleged are to be drawn in plaintiff's favor in determining whether the complaint states a valid claim. *Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585, 595 (8th Cir. 2009); *see also Barker v. Riverside County Office of Ed.* 584 F.3d 821, 824 (9th Cir. 2009). Dismissal is only appropriate where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.* 901 F.2d 696, 699 (9th Cir. 1990). Certainly, the court's job on a motion to dismiss is not to weigh evidence or to decide the merits of the case based upon a defendant's view of the "true" facts.

Unfortunately, Defendants offer their own set of alleged "facts" to support their arguments, which they claim prove that Plaintiff's allegations are untrue, but which really only show that material facts are in dispute. For example, Defendants ask the court to take judicial notice of the fact that a Big 5 sporting goods store, which sells firearms, is only 607 yards from Plaintiff's proposed store site (apparently to counter Plaintiff's allegations that the County's zoning regulations severely impact citizens' second amendment rights). While Defendants suggest that Big 5 is a suitable substitute for Plaintiff's store, they are actually, but subtly, misleading the court. It is common knowledge that Big 5 does not sell handguns (or offer training an gunsmithing). Indeed, anyone who followed the sensational Menendez brothers murder trial in the 1990's remembers the devastating cross examination of Eric Menendez when he was confronted with the fact that Big 5 had not sold handguns since 1986 after testifying in detail that he went to a Big 5 store in 1989 to buy a handgun. *See* R. Pergament, *TruTV Crime Library, The Menendez Brothers (*available at

http://www.trutv.com/library/crime/notorious_murders/famous/menendez/trial_16.html; last visited on February 17, 2013).  In any event, the disparate evidentiary facts presented by both sides in this matter simply show that there is a dispute here.  But the court cannot resolve such dispute or weigh the evidence to reach a decision on this motion; it is required to accept as true the allegations of fact contained in the complaint.

The same is true of the supposed evidence that Defendants suggests proves that Plaintiff cannot establish its equal protection claim, in part, because all of the firearms dealers it alleges operate throughout Alameda County proves there is no intentional discrimination against firearms stores.[2] Certainly, Defendants are entitled to argue as much at trial.  However, on this motion, those arguments cannot supplant Plaintiff's clear allegation that Defendants have violated equal protection mandates by "redlining" or using zoning regulations as a façade to prohibit businesses that are undesired. Specifically, the first amended complaint alleges at paragraph 61 that "[s]ubsequent to filing this law suit, plaintiffs commissioned a study to determine if any prospective gun store could satisfy the CUP based solely on having to comply with the '500 Foot Rule,' [which concluded] that it is virtually impossible to open a gun store in unincorporated Alameda County while complying with this rule due to the density of disqualifying properties. … the study indicate[d] that there is only one parcel in the entire unincorporated county that is greater than 500 feet from a residentially zoned property, and that parcel is also unavailable as it lies within 500 feet of an establishment that sells alcohol."  The court is required to accept Plaintiff's allegations as true, even if it believes that weight of the evidence favors Defendants.

In sum, there are obviously disputed facts and inferences here.  But there is nothing about this case that gives rise to any "special" pleading requirements outside of Rule 8.  Nor have the Defendants' provided notice that this is a motion for summary judgment.  As such, the court is required to accept all properly pleaded facts in the first amended complaint as true and cannot dismiss this action based upon Defendants' allegation of disputed facts.

---

[2] In making this argument, Defendants again are subtly peddling an improper argument.  Most of the alleged firearms dealers identified by them are in other jurisdictions, not  unincorporated Alameda County.  As will be discussed in more detail below, it is inappropriate and "profoundly mistaken" to "assume that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction."  *Ezell v. City of Chicago,* 651 F.3d at 697.

III.   **Defendants' Arguments Asserting That Plaintiff Cannot Show a Second Amendment Violation Are Misplaced Entirely**

Defendants' primary argument in support of their motion to dismiss Plaintiff's Second Amendment claim is that the court is bound by the conclusions reached in a decision on a prior motion to dismiss under the doctrine of "law of the case."   That is, Defendants contend that the court's prior order finally establishes that the Second Amendment only protects "the ability to protect 'hearth and home'" and that the challenged ordinances are "presumptively lawful."   Defendants argue that the court cannot revisit the issues now.   Defendants are wrong.

A.   **The "law of the case" doctrine has no application here**

The "law of the case" doctrine is nothing more than a "judicial invention designed to aid in the efficient operation of court affairs." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). It is intended to "maintain consistency during the course of a single lawsuit [by suggesting that] reconsideration of legal questions previously decided should be avoided." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (citation omitted).  Thus, the doctrine holds that "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted).

However, "[t]he law of the case doctrine is 'not an inexorable command'  (citation omitted) nor is it 'a limit to [a court's] power.'" *United States v. Smith*, 389 F. 3d 944, 949 (9th Cir. 2004 ).  Rather, "[a]pplication of the doctrine is discretionary." *Lummi Indian Tribe*, 235 F.3d at 452; *see also Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (stating that the "doctrine is highly flexible"); *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir. 1995) ("A judge may reexamine his earlier ruling"); Moore's Federal Practice § 134.21[1] (3d ed. 2003) ("When a court applies the law of the case doctrine to its own prior decisions ... the traditional formulations of the doctrine must be conceived as rules of thumb and not as straightjackets on the informed discretion and sound practical judgment of the judge").

Indeed, it has been said that the "law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction" through an intervening appeal. *Smith,* 389 F.3d at 949 (*quoting Santa Monica Baykeeper*, 254 F.3d at 888). In both *Smith* and *Santa Monica Baykeeper*, the court of appeals was faced with a situation where district court reconsidered and changed one of its own interlocutory orders. In both cases, the Ninth Circuit was "asked to assess whether the [district] court's reconsideration of its order violated the law of the case doctrine" and in each case the appellate court's "analysis emphasized the importance in law of the case doctrine jurisprudence of distinguishing between a district court's consideration of its own prior decision and the directive of a higher court." *Smith,* 389 F.3d at 949. That is, the Ninth Circuit held: "[t]he legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. ***All rulings of a trial court are subject to revision at any time before the entry of judgment***. A trial court may not, however, reconsider a question decided by an appellate court. *Id.* (*quoting Santa Monica Baykeeper,* 254 F. 3d at 888-89, *emphasis added*).

As such, the doctrine of law of the case does not preordain the result here. It does not even apply in this case. The court is absolutely free to, and should, makes its own determinations based upon the state of the law and the pleadings as currently existing.[3]

## B.     The Second Amendment protects much more than the right to defend ones' self in the home

Defendants' next argument, which was accepted in the ruling on the prior motion to dismiss, is that Plaintiffs cannot establish a Second Amendment violation because "[t]he Second Amendment, as construed in *District of Columbia v. Heller,* 554 U.S. 570 (2008), protects 'the right to possess a handgun in the home for purposes of self-defense'… [it] established no more than [that]." *Mot to Dismiss, p. 12.* ,

---

[3] In point of fact, this motion does not involve a "reconsideration" at all. It is a new attack upon a superseding pleading. For this reason also, the law of the case doctrine is inapplicable.

*ll 8-13.* But their position is simply not correct. *Heller* established much more than that.[4] And, subsequent cases have found that (contrary to Defendants' claim) the Second Amendment protects not only the right to possess firearms outside of the home for self defense, but also the right to access all things necessary to exercise the core right of self-defense.

Plaintiffs believe, and have alleged, that some of the things necessary to proper exercise of core second amendments rights are the ability to purchase appropriate firearms, to obtain training and guidance in the use of the firearm, gunsmithing services and to maintain proficiency in firearms use and that the County's zoning ordinances impinge upon those rights. Emerging case law supports these allegations.

### 1. *McDonald v. Chicago* held that the right to bear arms is a fundamental right protected by the Second Amendment

The first case post-*Heller* to confirm that the Supreme Court viewed the rights protected by the Second Amendment to exist beyond defending oneself in the home was *McDonald v. Chicago,* 561 U.S. __, 130 S. Ct. 3020, 3049-50 (2010). There the Supreme Court expanded on its reasoning in *Heller* and held that the Second Amendment right to keep and to bear arms is fundamental, not merely that some subset of that right is fundamental. It found that there was no basis to subdivide the right "to keep" arms

---

[4] Defendants insist on this overly narrow reading of *Heller,* which recognizes only the result and ignores the reasoning of the case, despite the Court's clear guidance in the decision. The Court's ultimate ruling focused the right to keep arms in the home because the ordinances at issue there, and the specific question that the Supreme Court was answering, concerned restrictions on firearms in the home. The opinion expressly acknowledged that it did not address every aspect of the Second Amendment's protections outside the home because it was not called upon to do so in that case. However, the reasoning throughout the opinion reveals that the rights announced do not – indeed cannot -- end at one's doorstep. Among other things, the Court repeatedly referenced to the right to bear arms outside the home. *See Heller*, 128 S. Ct. at 2801 ("Americans valued the ancient right [to keep and bear arms] ... for self-defense and hunting") ; 128 S. Ct. at 2812 (" 'No doubt, a citizen who keeps a gun or pistol under judicious precautions, practices in safe places the use of it, and in due time teaches his sons to do the same, exercises his individual right.' "). Even *Heller's* dissenters acknowledged the decision protected carrying of arms for self defense outside of the home: "[g]iven the presumption that most citizens are law abiding, and the reality that the need to defend oneself may suddenly arise in a host of locations outside the home, I fear that the District's policy choice may well be just the first of an unknown number of dominoes to be knocked off the table. *Id.* at 2846 (Stevens, J., dissenting). In light of all that, the *Heller* Court described the right to arms as "most acute" when defending hearth and home. *Id.* at 2817. It certainly did not rule that the right only existed in one's home.

from the right "to bear" arms, nor to designate bearing arms as a "non-core" part of the Second Amendment right having a second-class status.  In short, *McDonald* expressly and emphatically rejected the notion that the Second Amendment right, or any part of it, is somehow second-class. *Id.* at 3044. *McDonald* categorically rejected the proposition that bearing arms outside the home is any less fundamental than keeping arms in the home.

### 2. The Seventh Circuit has held squarely that Second Amendment rights do not begin and end at one's front door

Following *Heller* and *McDonald,* the Seventh Circuit directly faced the question of "whether the Second Amendment creates a right of self-defense outside the home" in the case of *Moore v. Madigan*, 702 F. 3d 933, 935 (2102).  That decision involved two consolidated cases where the district courts had ruled that there was no Second Amendment right to carry a firearm in public for self-defense.   The Seventh Circuit, in a decision authored by Judge Posner, reversed and invalidated the Illinois statutes that barred carrying of firearms in public after finding that they impermissibly burdened Second Amendment rights without justification.

In reaching its decision, the Seventh Circuit noted that although both "*Heller* and *McDonald* do say that 'the need for defense of self, family, and property is most acute' in the home [citation omitted]… that doesn't mean it is not acute outside the home." *Id.* at 936.  And, it also noted that "*Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' [citation omitted]  Confrontations are not limited to the home." *Id.*

Going further, the *Moore* court acknowledged that it could not "ignore the implication of the analysis [in *Heller* and *McDonald*] that the constitutional right of armed self-defense is broader than the right to have a gun in one's home." *Id.* at 935.  After all, it stated, "[t]he first sentence of the *McDonald* opinion states that 'two years ago, in *District of Columbia v. Heller,* we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense' [citation omitted]  and later in the opinion we read that '*Heller* explored the right's origins, noting that the 1689 English Bill of Rights explicitly protected a right to keep arms for self-defense [citation omitted]  and that by 1765, Blackstone was able to assert that the right to keep and bear arms was `one of the fundamental rights of Englishmen,'

[citation omitted]   And immediately the Court adds that 'Blackstone's assessment was shared by the American colonists.'" *Id.*  To the Seventh Circuit, such language clearly pointed to broad rights to have a firearm available for self-defense outside the home, which were clearly protected by the Second Amendment.

Finally, the *Moore* court reasoned that the language of the Second Amendment supported its ruling that the Second Amendment protected a right to carry firearms in public for self defense.  It wrote that the Amendment's enumeration of "[t]he right to 'bear' as distinct from the right to 'keep' arms is unlikely to refer to the home. To speak of 'bearing' arms within one's home would at all times have been an awkward usage." *Id* at 936.   It therefore concluded that a "right to bear arms thus implies a right to carry a loaded gun outside the home."  *Id.*

The decision in *Moore* is an outright rejection of the extremely narrow reading of *Heller* that Defendants urge here.  Following that court's reasoning, there really should be no doubt that the Second Amendment reaches far more than self-defense in the home.

### 3.   The Seventh Circuit also has ruled that Second Amendment protects against infringement of ancillary conduct that is necessary to exercise one's core right to self-defense

Another case out of the Seventh Circuit expands on the prior cases to find that the Second Amendment protects not only the right to carry a firearm for self defense but also protects ancillary matters and access to all things necessary for the proper exercise of that core right.  In *Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011),  the court comprehensively analyzed the Second Amendment rights enumerated in *Heller* and *McDonald* in connection with a challenge to the statutory scheme that the City of Chicago enacted (entitled the "Responsible Gun Owners Ordinance") when its total ban on handgun possession was invalidated in *McDonald. Id.* at 689.   The new ordinance mandated one hour of training at a firing range "as a prerequisite to lawful gun ownership [citation omitted] yet at the same time prohibit[ed] all firing ranges in the city." *Id.* The Plaintiffs contended that "the Second Amendment protects the right to maintain proficiency in firearm use — including the right to practice marksmanship at a range — and the City's total ban on firing ranges is unconstitutional." *Id. at* 690.  But the trial court denied their motion for a preliminary injunction.

The Seventh Circuit reversed, but it also noted that "[t]o be fair [to the trial court], the standards for evaluating Second Amendment claims are just emerging, and this type of litigation is quite new." *Id.* at 690.   It then proceeded to analyze the plaintiffs' claims in perhaps the most instructive opinion yet regarding Second Amendment claims (and which will discussed in much more detail below).

In the end, after setting out the appropriate framework for analysis of claims that governmental action improperly burdens rights protected by the Second Amendment, the *Ezell* court found that the City had not met its burden of justifying range ban law under the level of heightened scrutiny that it found to apply.   In so doing, the *Ezell* court held that the Second Amendment applied to protect all things necessary for an individual to exercise his or her right to self defense and to possess a firearm for that purpose and that the challenged law impermissibly impinged on that right.   It therefore remanded to the trial court with instructions to enter a preliminary injunction barring the enforcement of the City's firing range ban.

Accordingly, there is no merit to Defendants restrictive view of the holding in *Heller.*   The case stands for much more than individuals' rights to protect themselves in their homes.   It establishes a core right, protected by the Second Amendment, for an individual to keep and bear firearms for self-defense purposes.   And, Heller's progeny make clear that this right is not limited to the home and also extends to all things necessary for the proper exercise of the right.   Defendants cannot prevail here by arguing to the contrary  -- there is no support for such an argument.

## C.      There is no "presumption of lawfulness" to be applied here

Defendants' last argument attempts keep the court from reaching the merits in this action by asserting that dicta in *Heller* amounts to some sort of binding precedent that all laws throughout the country existing as of the time of that decision are entitled to an evidentiary "presumption" of validity that Plaintiffs must "rebut" in order to state a claim for infringement of Second Amendment rights.   The argument is ironic given Defendants insistence on narrowly reading the issue that the Court actually did decide.   Regardless, the argument is plainly wrong.

Cases are not precedent for issues that they do not decide. *People v. Banks*, 53 Cal. 2d 370, 389, 1 Cal. Rptr. 669, 348 P.2d 102 (1955);  *Eatwell v. Beck*, 41 Cal. 2d 128, 136, 257 P.2d 643 (1953) ("It is

elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court); *Cf. Thomas v. Bible,* 983 F. 2d 152 (1993) ("the issue in question must have been 'decided either expressly or by necessary implication in [the] previous disposition.'"); *Jackson v. State of Alabama State Tenure Com'n,* 405 F.3d 1276, 1283 (11th Cir. 2005) ("only those legal issues that were actually, or by necessary implication, decided in the former proceeding" are binding).

In *Heller,* the issue before the court was whether certain Washington D.C. statutes impinged upon individuals' Second Amendment rights.  That was the issue that the Court decided.  It was not faced with, and did not rule upon, all laws from every jurisdiction that might affect Second Amendment rights.  Its statement that many longstanding laws were "presumptively" valid is dicta, not precedent.  There is no indication that the Court had local zoning ordinances in mind when it rendered its decision; if it had, the Court would have no doubt discussed the specifics of such laws as well as the legal requirements related to evidentiary presumptions and presumed facts in detail.  But it did not. The dicta that Defendants' rely upon is thus best seen as an offhand prediction that long standing laws related to certain aspects of firearms would survive heightened scrutiny if and when the validity of those laws was challenged (and perhaps an assurance to some that the sky was not falling).  Nothing more.

More fundamentally, a "presumption of validity" of the kind that Defendants argue for would be completely inconsistent with the tenets of the *Heller* and *McDonald* decisions.  As the Seventh Circuit stated in *Ezell* when deciding on an appropriate level of review for the statutes at issue there: "Although the Supreme Court did not [specify the required level of scrutiny] in either *Heller* or *McDonald,* the Court did make it clear that the deferential rational-basis standard is out, ***and with it the presumption of constitutionality***. [citation omitted]  This necessarily means that the City bears the burden of justifying its action under some heightened standard of judicial review."  651 F.3d at 706 (*emphasis added*).  Furthermore, *McDonald* specifically rejected allowing "state and local governments to enact any gun control law that they deem to be reasonable ", which would be permissible if the presumption that Defendants suggest actually existed. 130 S.Ct. at 3046.

Simply put, the dicta in *Heller* that Defendants rely upon to suggest there is some presumption of validity of their zoning ordinances cannot support the weight they place upon it.  The *Heller* Court did issue some blanket "amnesty" ruling that approved of all existing laws that might be alleged to infringe

upon Second Amendment rights.  It could not do so.  Such issues were not before the Court.
Accordingly, Defendants' argument regarding this supposed presumption provides no basis to grant their
motion and dismiss this case.

>    **D.    Employing A Proper Analytical Framework To Plaintiffs' Claims Must Result In
>    Denial Of Defendants' Motion Because They Bear The Burden Of Justifying The
>    County's Laws And Have Not Even Tried To Do So**

As noted above, the most comprehensive and instructive post-*Heller* case regarding the
analytical framework to be applied to assertions that government conduct impermissibly infringes upon
rights protected by the Second Amendment is *Ezell v. City of Chicago.* Its discussion shows that
Defendant's motion must be dismissed as to Plaintiffs' Second Amendment claims because a plaintiff
meets its pleading burden on a facial challenge simply by meeting a standing requirement and setting out
the statute which is alleged to be unconstitutional.  Then, Defendants have the burden of showing that
Plaintiffs' claimed rights are not protected by the Second Amendment or that "the strength of the
government's justification for restricting or regulating the exercise of Second Amendment rights"
satisfies a heightened level of scrutiny. They have not even tried to do so.

The *Ezell* court began its analysis by observing that the "district court on the wrong foot [in ruling
on plaintiff's motion for limit injunction] by accepting the City's argument that its ban on firing ranges
cause[d] only minimum harm to the plaintiffs... and that this harm [could] be adequately compensated by
money damages." 651 F.3d at 694.  It further noted that this "confused approach" caused several legal
errors concerning "(1) the organizational plaintiffs' standing; (2) the nature of the plaintiffs' harm; (3) the
scope of the Second Amendment right as recognized in *Heller* and applied to the States in *McDonald*;
and (4) the structure and standards for judicial review of laws alleged to infringe Second Amendment
rights." *Id.*  The court then reviewed each of those errors.

It began by finding that each of the individual and organizational defendants had the requisite
standing to challenge the firing range ban.  Then, it went on to discuss the requirements of irreparable
harm and inadequacy of any legal remedy that are prerequisites of an injunction.  It found that the "City's
misplaced focus on the availability of firing ranges outside the city also infected the district court's
evaluation of irreparable harm" in that it "framed the relevant harm as strictly limited to incidental travel

burdens" associated with going to those out-of –city ranges.  *Id.* at 697.

The *Ezell* court went on to explain that it was inappropriate and "profoundly mistaken" to "assume that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction."  *Id.*  It reasoned that "the Second Amendment, [like the First Amendment] protects similarly intangible and unquantifiable interests" and the clear rule in the First Amendment context that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place" applied with equal force in the context of the Second Amendment. *Id.*  The court colorfully stated that it would be "hard to imagine anyone suggesting that Chicago may prohibit the exercise of a freespeech or religious-liberty right within its borders on the rationale that those rights may be freely enjoyed in the suburbs" and also that such an "arguments should be no less unimaginable in the Second Amendment context." *Id.*  This portion of the court's opinion effectively disposes of Defendants' argument here that the existence of other gun stores in other parts are the County means, in and of itself, there is no substantial impingement of rights protected by the Second Amendment.

From there, the court went on to discuss the plaintiff's' likelihood of success on the merits. In so doing, it set up a framework to be followed in analyzing Second Amendment litigation. It observed that "*Heller* focused almost exclusively on the original public meaning of the Second Amendment, consulting the text and relevant historical materials to determine how the Amendment was understood at the time of ratification. This inquiry led the Court to conclude that the Second Amendment secures a pre-existing natural right to keep and bear arms; that the right is personal and not limited to militia service; and that the "central component of the right" is the right of armed self-defense, most notably in the home. *Id.* at 701 (*citing Heller,* 554 U.S. at 595, 599-600, 128 S.Ct. 2783 and *McDonald,* 130 S.Ct. at 3036-37, 3044).

However, *Ezell* court also noted that *Heller* did not specify a standard of scrutiny to be applied to claims of Second Amendment infringement. Rather, the "Court said [that the laws attacked in *Heller*] were unconstitutional '[u]nder any … standard[] of scrutiny.'' *Id.*  *Ezell* went on to state that "[f]or our purposes, however, we know that *Heller's* reference to 'any standard of scrutiny' means any *heightened* standard of scrutiny [because] the Court specifically excluded rational-basis review." *Id.*

In light of its review, it found that the relevant "passages from *Heller* holds several key insights about judicial review of laws alleged to infringe Second Amendment rights" and set out a two-step framework for inquiry and analysis. *Id.* at 702.  "First, the threshold inquiry in some Second Amendment cases will be a 'scope' question: is the restricted activity protected by the Second Amendment right in the first place?" *Id.*  Answering this first question where a local government regulation is challenged requires analysis of how Second Amendment rights were understood at the time the Fourteenth Amendment was ratified. And, the *Ezell* court noted that the "Supreme Court's free-speech jurisprudence contains a parallel for this kind of threshold 'scope' inquiry" where "some categories of speech are [held to be] unprotected as a matter of history and legal tradition." *Id.*  Following that kind of analysis, "***if the government can establish*** that a challenged firearms law regulates activities falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment ... then the analysis can stop there; the regulated activity is categorically unprotected and the law is not subject to further Second Amendment review." *Id.* at 702-03 (*emphasis added*).  However, "[i]f the government cannot establish this-if the historical evidence is inconclusive or suggest that the regulated activity is not categorically unprotected-then there must be a Second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* at 703.

Turning to application of its announced framework to the challenged firing range ban, the *Ezell* court found that historical sources suggested that target practice to be proficient in the use of a firearm was with the scope of the Second Amendment when it was ratified.  It then proceeded "to the second inquiry, which asks whether the City's restriction on range training survives Second Amendment scrutiny … [and]  this requires [the reviewing court] to select an appropriate standard of review. Although the Supreme Court did not do so in either Heller or McDonald, the Court did make it clear that the deferential rational-basis standard is out, and with it the presumption of constitutionality. … **This necessarily means that the City bears the burden of justifying its action under some heightened standard of judicial review.**" *Id.* at 706 (*emphasis added*).

To select an appropriate standard of review, the court turned to "First Amendment analogues" which it found to be suggested by both *Heller* and *McDonald*.  Indeed, the court stated that because of the suggestions in those cases, the Seventh "and other circuits ha[d] already begun to adapt First

Amendment Doctrine to the Second Amendment context." *Id.* at 706-07. It next reasoned that in "free-speech cases, the applicable standard of judicial review depends on the nature and degree of the governmental burden on the First Amendment right and sometimes also on the specific iteration of the right" and gave examples of various regulations and the standard under which they were to be reviewed. *Id.* at 707-08.

Applying the two step analytical framework set out in *Ezell* in this case mandates denial of Defendants' motion. The decision makes clear that when a facial challenge is involved, a plaintiff only need allege his standing to challenge the law and the enactment of the law itself. *Id.* at 697 ("[i]t is enough that '[we] have only the[statute] itself' and the "statement of basis or purpose that accompanied its promulgation'"). From there, the burden shifts to the government. To prevail, it can show through historical evidence that the rights allegedly impinged upon are outside of the scope of the Second Amendment or it can justify the infringement under heightened scrutiny. In this case, Defendants have done neither. They offer no historical evidence and their only argument that the rights alleged to be infringed upon here are outside of the scope of the Second Amendment is the indefensible position that the Second Amendment only protects a right to self defense in one's home. Similarly, Defendants make no *bona fide* effort to show that the burdens the challenged laws place upon protected rights. Instead, they argue that there is a presumption of validity, which argument is not only indefensible, it was expressly rejected in *Heller* and *McDonald*. Accordingly, Defendants have not met *their* burdens and their motion to dismiss Plaintiffs' Second Amendment claims must be denied.

## IV. Defendants' Own Evidence Belies Their Arguments And Shows Plaintiffs' Equal Protection Claims Are Valid

Defendants' arguments with regard to Plaintiffs' equal protection claim suggest that they either do not understand the factual allegations or are being obtuse. Plaintiff's allegations are simply that they are being treated differently than other retailers because they are a gun shop and that there is no justification for such disparate treatment. They further allege that the very requirement that they obtain a conditional use permit to operate their business when other retailers are not required to do so violates their right to equal protection. And, they allege that Defendants have no evidence or proper basis to

suggest that operation of a gun shop will have any deleterious effects on the surrounding community that would justify restrictions upon them. Finally, Plaintiffs allege that Defendants are using zoning laws to redline or ban retail gun stores from Unincorporated Alameda County.   All of that amounts to adequate pleaded equal protection claims.

Nonetheless, Defendants argue (in several different ways) that "Plaintiff fails to identify any similarly situated business" and that this is fatal to the equal protection claims in the first amended complaint.   They are wrong.  Plaintiffs' position is that they are similarly situated with all other general retailers who are entitled to open shop in commercially zoned areas in unincorporated Alameda County without having to apply for and obtain an additional conditional use permit, with its many additional restrictions.  Defendants' motion scoffs at that comparison, arguing such "comparators are so patently dissimilar to Plaintiffs, who seek to open a retail gun store offering training, gunsmithing, sales of new and used firearms and ammunition … that Plaintiffs do not come close to meeting their burden of showing that they are "prima facie identical" or "arguably indistinguishable" from Plaintiffs.."  They even state that  "[n]o rational person could regard Plaintiffs' circumstances to be similar to those of their alleged comparator."

However, the County's own conduct and evidence belies the stridency of Defendants' motion. Exhibit H to Defendants' request for judicial notice contains a December 22, 1997 memorandum from the Alameda County Community Development Agency to the County Board of Supervisors that states:

**Presently, a store that sells firearms is not distinguished from other retail stores and this is use is simply permitted in the basic retail zoning district.**
**[RJN, ex H, page 5.]**

Defendants should hardly be heard now to claim that gun stores are patently dissimilar to other retailers when until relatively recently, the County itself made no distinction between stores that sell firearms and other retailers.

And, the same exhibit shows that the County intentionally sought to treat business that sell firearms differently for the stated purposed of furthering a "policy for regulation of firearm sales" without any factual basis for distinguishing between firearm and other retailers. The County even wanted to make sure that its new law "require[d] the [CUP] process to consider factors beyond the usual findings for a Conditional Use Permit, [such as a] 500 foot minimum spacing from a firearms store to other sensitive land uses." (*Id.*) But there are no facts or detailed legislative findings that support singling out gun stores. The closest thing to that is a conclusory statement from the County Planning Commission that "stores that sell firearms require a greater degree of scrutiny than possible when they are regulated as a used that is simply permitted by the Zoning Ordinance and this is better regulated when a Conditional Use Permit is required." Of course, that merely begs the question and doesn't set forth any facts justifying the alleged need for greater scrutiny.

In sum, then, Defendants own evidence shows that gun stores, like the one that Plaintiffs wish to open, have historically been treated no differently than other retailers. But, fairly recently, the County decided it wanted to "regulate firearms sales" by imposing additional regulatory burdens in the path of opening and operating a gun store. The County's own documents show that it did so intentionally and without any facts to justify the new distinction it wanted to impose. All that, in and of itself, manifestly states a viable claim for violation of equal protection. More to the point, Defendants' only argument to dismiss the equal protection claims here is that Plaintiffs failed to indentify a sufficiently similar "comparator." But even if that were true, Defendants have supplied the missing information by admitting that it historically treated gun stores no differently that other retailers. As such, the motion with respect to Plaintiffs' equal protection claim must be denied.

//

//

//

**V.     Conclusion**

All of the arguments that that Defendants offer in support of their motion to dismiss are unavailing.  The "law of the case" doctrine does not apply here to mandate that its new motion be granted just because its past one was granted.  And, more fundamentally, the prior decision granting Defendant's motion to dismiss Plaintiffs' Second Amendment claims was based upon clearly erroneous reasoning that the Amendment only protects the right to keep a firearm in one's home for self defense and that *Heller* dicta established some sort of evidentiary presumption that all laws then existing were to be deemed valid.  Neither of those propositions is true.  Subsequent courts applying *Heller* and *McDonald* hold that Second Amendment rights exist outside the home and further that the Amendment protects ancillary matters that are necessary for the exercise of the core right of self defense.

These same cases make clear that under a proper analytical framework, it is the government that bears the burdens of establishing the appropriateness of its conduct that might impinge upon Second Amendments rights.  It can do so by historical evidence that the regulated activity did not come within the scope of the Second Amendment at the time of the ratification of the Fourteenth Amendment.  Or, it can do so by showing that its regulation meets a heightened standard of scrutiny. In this case, Defendants have done neither.  Their motion to dismiss Plaintiffs' Second Amendment claims should therefore be denied.

Similarly, Defendant's motion to dismiss Plaintiffs' equal protection claims must be denied.  The only challenge made to those claims is that Plaintiffs cannot show they are similarly situated to other retailers, but have been inappropriately treated differently.  However, the evidence that Defendants themselves submit with their motion establishes that the County itself treated gun stores, like the one that Plaintiffs want to open, exactly the same as other retailers until very recently.  And, then it decided (without any properly articulated basis for doing so) that it wanted to intensify its regulation of firearms sales so it decided to treat gun stores differently than other retailers by taking away their right to open a

store in any properly zoned area and making them apply for a conditional use permit, which could be withheld at the whim of the government.  That is the essence of a properly pleaded claim of an equal protection violation.  Defendants' motion must be denied in its entirety.

Respectfully Submitted

July 19, 2013

_Charles W Hokanson_

_____

Charles W. Hokanson
Attorney for Plaintiffs