DONNA R. ZIEGLER [142415]
County Counsel
By:  MARY ELLYN GORMLEY [154327]
Assistant County Counsel
SAMANTHA N. STONEWORK-HAND [245788]
Associate County Counsel
Office of County Counsel
COUNTY OF ALAMEDA
1221 Oak Street, Suite 450
Oakland, California 94612
Telephone:    (510) 272-6700

Attorneys for County of Alameda, Alameda
Board of Supervisors, Wilma Chan,
Nate Miley, and Keith Carson

UNITED STATES DISTRICT COURT

NORTHERN DIVISION OF CALIFORNIA

| | |
|---|---|
| JOHN TEIXEIRA, STEVE NOBRIGA, GARY GAMAZA, CALGUNS FOUNDATION (CGF), INC., SECOND AMENDMENT FOUNDATION (SAF), INC., and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES (Cal-FFL),<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA, ALAMEDA BOARD OF SUPERVISORS (as a policy making body), WILMA CHAN in her official capacity, NATE MILEY in his official capacity, and KEITH CARSON in his official capacity,<br><br>Defendants. | Case No.: CV12-3288 (WHO)<br><br>**DEFENDANT COUNTY OF ALAMEDA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:       September 4, 2013<br>Time:       2:00 p.m.<br>Location:  Ctrm 2, 17th Floor<br>                 450 Golden Gate Ave<br>                 San Francisco, CA |

## I.   INTRODUCTION

Although Second Amendment jurisprudence is complex and evolving, this case is simple. Even assuming Plaintiffs' factual allegations are true, they have failed to sufficiently plead an equal protection or Second Amendment claim as a matter of law. Plaintiffs' equal protection claims fail because the First Amended Complaint does not contain facts sufficient to show that Defendants intentionally granted conditional use permits and variances to other similarly-situated businesses while denying them to Plaintiffs. Plaintiffs failed to identify a comparator that was treated differently. The lack of a comparator is fatal to their equal protection claims. Plaintiffs have also failed to allege anything more than conclusory allegations in support of their Second Amendment claims. Alameda County Land Use Ordinance 17.54.131 is presumptively lawful and there are no allegations to rebut this presumption. Even if the Ordinance were not presumptively lawful, there are no allegations demonstrating that the Ordinance substantially burdens the core Second Amendment right. Further, the Ordinance, as previously held by this Court, is constitutional under any applicable level of scrutiny. Accordingly, this Court must grant Defendants' Motion to Dismiss without leave to amend.

## II.   MOTION TO DISMISS STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For the purposes of deciding a motion to dismiss, only well-pled factual allegations shall be accepted as true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). On a motion to dismiss, the Court may consider documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

## III. LEGAL ARGUMENT

### A. Plaintiff's Equal Protection Claims Must Fail

Plaintiffs assert a "class of one" equal protection claim. (FAC ¶¶ 69-75.) To sufficiently establish a class of one claim, a plaintiff must first allege that others, "similarly situated in every material respect" were treated differently. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). To survive a motion to dismiss the plaintiff must specifically identify the similarly-situated businesses. *See Vogt v. City of Orinda,* No. C 11–2595 CW, 2012 WL 1565111 at *3 (N.D. Cal. May 2, 2012); *Scocca v. Smith,* No. C-11-1318 EMC, 2012 WL 2375203 at *5 (N.D. Cal. June 22, 2012). A plaintiff must then show the difference in treatment was without rational basis, that is, the government action was "irrational and abusive," *Jicarilla*, 440 F.3d at 1211, and "wholly unrelated to any legitimate state activity." *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (quotation omitted).

The allegations in the FAC establish that retail gun shops are not "similarly situated in every material respect" to all other general retailers who are entitled to open shop in commercially zoned areas or federal firearm licensees who are not open for retail sales. Retail gun shops and individuals who purchase and/or acquire firearms are strictly regulated by both state and federal law. (FAC ¶¶ 21, 66.) No other general retailers are subject to these broad restrictions. Plaintiffs have failed to identify specific comparators, and in light of *Iqbal*, their threadbare generalized pleading is insufficient to state a class of one equal protection claim. *Kansas Penn Gaming, LLC*, 656 F.3d at 1219 (citing *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010)); *Vogt,* 2012 WL 1565111 at *3; *Scocca,* 2012 WL 2375203 at *5.

Plaintiffs have also failed to sufficiently plead that Defendants intentionally treated them differently without a rational basis. Gun stores are but one of many types of businesses that require CUPs or are subject to distance restrictions. (Doc. #44-1 at pp. 8-10.) Even if Defendants did treat retail gun shops differently, this difference in treatment is for a rational reason – specifically because all other general retailers do not sell products that are as heavily

regulated by the state and federal government. Accordingly, Plaintiffs' equal protection claims must fail.

### B. Plaintiffs' Second Amendment Claims Must Fail

This Court has already ruled that while the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) held that there is an individual right to bear arms for use in self-defense particularly in the home, there is no case that recognizes a right to sell firearms. (Doc. #37 at 8:15-23.) The *Heller* court stated, and the *McDonald* court affirmed, that certain regulations are "presumptively lawful" including: "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27, n.26; *McDonald*, 130 S. Ct. at 3047. Following *Heller*, this Court ruled that the Ordinance is presumptively lawful and that there were no allegations that rebutted the presumption of validity. (Doc. #37 at 6:26-9:13.) This is now the law of the case and need not be revisited. Although the application of the law of the case doctrine is discretionary, *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000), this is precisely the situation in which it would apply.[1] *Id.* Thus, the Ordinance should be considered presumptively lawful and it should be Plaintiffs' burden to state allegations sufficient to rebut that presumption. The FAC fails to meet this burden.

#### 1. Even If The Court Were To Revisit The Analysis, The Ordinance Is Constitutional Under Any Standard Of Scrutiny

Plaintiffs argue that something akin to a First Amendment analysis should be applied to claims of Second Amendment infringement, and Defendants do not disagree. *See e.g. United States v. Vongxay*, 594 F.3d 1111, 1117 (9th Cir. 2010) ("The protections of the Second Amendment are subject to the same sort of reasonable restrictions that have been recognized as limiting, for instance, the First Amendment"); *Hall v. Garcia*, No. C10-03799, 2011 WL 995933

---

[1] "Under the [law of the case doctrine], a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *Id.* It is undisputed that this Court has already explicitly ruled on this issue in the identical case. (Doc. #37.)

at *4 (Mar. 17, 2011). *See also United States v. Marzzarella*, 595 F.Supp.2d 596, 606 (W.D.Pa.2009) (suggesting that a ban on guns with obliterated serial numbers should be judged under a standard comparable to that "applicable to content-neutral time, place and manner restrictions," and upholding the ban partly because it leaves "open ample opportunity for law-abiding citizens to own and possess guns"), *aff'd*, 614 F.3d 85, 95 (3d Cir. 2010). Several Circuits, in the wake of *Heller* and *McDonald* have used a two-pronged approach to examine Second Amendment challenges, analogous to the framework used when addressing First Amendment rights. First the Court considers whether the challenged law imposes a substantial burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, the inquiry is complete. If the law does impose a burden, the court evaluates the law using a type of intermediate scrutiny. See *United States v. Marzzarella,* 614 F.3d 85, 89 (3d Cir. 2010); *Heller v. District of Columbia*, 670 F.3d 1244, 1251–53 (D.C. Cir. 2011) (hereinafter "*Heller II*"); *Ezell v. City of Chicago*, 651 F.3d 684, 702–04 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010); *see also Scocca*, 2012 WL 2375203 at *6 (holding that although the *Nordyke v. King*, 644 F.3d 776 (9th Cir. 2012) panel decision is no longer binding authority the reasoning of the panel decision is still persuasive -i.e., that "heightened scrutiny does not apply unless a regulation substantially burdens the right to keep and to bear arms for self-defense." *Nordyke*, 644 F.3d at 783.)

        a.    The Ordinance Does Not Impose A Substantial Burden On The Core Second Amendment Right

The Second Amendment protects "the right to possess a handgun in the home for the purpose of self-defense." *McDonald*, 130 S. Ct. at 3050 (2010). *Heller* recognized that "the right to keep and bear arms, like other Constitutional rights, is limited in scope and subject to some regulation." *United States v. Chester*, 628 F.3d 673, 676 (4th Cir. 2010). Neither of the Seventh Circuit cases that Plaintiffs so heavily rely on alter this analysis. (Opp. at 8-10, 12-15.) *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) and *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), unlike the Ordinance, addressed regulations that were complete bans on conduct that

1  directly burdened the core Second Amendment right.  The law in *Ezell* prohibited firing ranges
2  and effectively served as a prohibition on legal gun ownership in Chicago.  While the Seventh
3  Circuit struck down the law as unconstitutional, it nevertheless recognized that Chicago could
4  promulgate "sensible zoning and other appropriately tailored regulations" to address its
5  legitimate concerns regarding firing ranges.  *Ezell*, 651 F.3d at 709.  In *Moore*, the challenged
6  law was a ban on carrying a ready to use weapon outside the home.  702 F.3d at 934.  After
7  holding that the ban was unconstitutional, the *Moore* court recognized that reasonable limits can
8  be placed on that Second Amendment right.  *Id.* at 942 ("we order our mandate stayed for 180
9  days to allow the Illinois legislature to craft a new gun law that will impose reasonable
10 limitations, consistent with the public safety and the Second Amendment as interpreted in this
11 opinion, on the carrying of guns in public.").  Reasonable regulation is permissible even in the
12 Second Amendment context.  *See Marzzarella*, 614 F.3d at 89.

13        Even if the scope of the Second Amendment extended to a right to acquire or sell
14 firearms, which no case has recognized and the County disputes, the Ordinance does not
15 unconstitutionally burden protected conduct.  The Ordinance permits Plaintiffs to open a gun
16 store anywhere that is more than 500 feet from a residentially-zoned district and other sensitive
17 places.  The Ordinance is exactly the type of sensible zoning regulation that puts reasonable
18 geographic limitations on where firearms may be bought or sold.  Because the Ordinance does
19 not impose a substantial burden on the core Second Amendment right, the Court's inquiry should
20 end.

           b.    Even If The Ordinance Does Impose A Substantial Burden It Satisfies
                 Constitutional Scrutiny

22        Much like in the First Amendment context, there is no one-size-fits-all standard of review
23 for Second Amendment challenges.  In *Chester*, the Fourth Circuit reasoned that,

24             Gun-control regulations impose varying degrees of burden on
               Second Amendment rights, and individual assertions of the right
26             will come in many forms. A severe burden on the core Second
               Amendment right of armed self-defense should require strong
27             justification. But less severe burdens on the right, laws that merely
               regulate rather than restrict, and laws that do not implicate the

> central self-defense concern of the Second Amendment, may be more easily justified.

*United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) (citation omitted).  Because the Ordinance does not implicate the core self-defense concern of the Second Amendment and merely regulates rather than restricts, at most it should be scrutinized under intermediate scrutiny – i.e. whether there is "reasonable fit" between the challenged regulation and a "substantial" government objective.  *Id.*

The County's interest in protecting public safety and preventing harm in populated, well-traveled, and sensitive areas such as residentially-zoned districts is well-established as a substantial government objective.  *See e.g., U.S. v. Salerno*, 481 U.S. 739, 745 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984); *Hall v. Garcia*, No. C 10–03799 RS, 2011 WL 995933 at * 5 (N.D. Cal. Mar. 17, 2011).  Further, the County has an interest in protecting against the potential secondary effects of gun stores.  Gun stores can be targets of the exact persons that should be excluded from purchasing and possessing weapons; therefore it is reasonable to regulate them such that they are located away from residential areas.  *Suter v. City of Lafayette* (1997) 57 Cal. App. 4th 1109, 1132.  Finally, there is a substantial interest in preserving the character of residential zones.  *City of Renton v. Playtime Theatres*, 475 U.S. 41, 50 (1986) (holding that the preserving the quality of a municipality's neighborhoods and overall quality of urban life is "vital").  Here there is a reasonable fit between prohibiting commercial firearms sales within 500 feet from residentially-zoned areas and protecting public safety, potential secondary effects, and preserving the quality of unincorporated Alameda County's residential neighborhoods.

In addition, the Ordinance does not unnecessarily burden Plaintiffs' Second Amendment rights.  This law has no impact on Plaintiffs' rights to possess a handgun at home or on other private property.  Plaintiffs do not assert that there is a shortage of places to purchase guns in or near Alameda County; in fact, the Big 5 Sporting Goods, which is 607 feet from Plaintiffs' proposed site, sells both firearms and ammunition, (Doc. #37 at 9:18-22), and there are a total of twenty gun stores in Alameda County.  (RJN, Exh I.)  Therefore, even if the Court were to apply

1  the strictest of scrutiny applicable the law would still be upheld.  In fact, other courts in this
2  district have upheld similar regulations.  *See Hall*, 2011 WL 995933 at *5 (upholding a
3  regulation prohibiting gun possession within 1000 feet of a school under intermediate scrutiny,
4  but noting that the regulation would survive "[u]nder any of the potentially applicable levels of
5  scrutiny" because of the substantial government interest in protective citizens from gun violence
6  in sensitive spaces).  Accordingly, the Court must dismiss Plaintiffs' Second Amendment claims
7  as a matter of law.

8        C.      **Individual Defendants Must Be Dismissed**

9        The claims against Supervisors Chan, Miley, and Carson in their official capacities are
10 duplicative of the claims against the Board.  *Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th
11 Cir. 1986).  Plaintiffs previously had no objection to dismissing these defendants.  (Doc. #22 at
12 ¶45.)  Accordingly, any claims against the individual defendants should be dismissed with
13 prejudice.

14       D.      **Leave To Amend Must Be Denied**

15       Although Courts may grant leave to amend whenever "justice so requires," it is within
16 the Court's discretion to deny leave to amend when an amendment would be futile.  *In re*
17 *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 990 (9th Cir. 2008).
18 When the plaintiff has previously amended the complaint the Court has especially broad
19 discretion.  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  Plaintiffs have
20 again failed to sufficiently state either an equal protection or Second Amendment claim and any
21 amendment would be futile.  Accordingly, leave to amend should be denied.
25 ///
22 ///
23 ///
24 ///
26 ///
27 ///
28

## IV. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint without leave to amend.

Dated: August 2, 2013

DONNA R. ZIEGLER
County Counsel, in and for the
County of Alameda, State of California

By   /s/   *Mary Ellyn Gormley*
MARY ELLYN GORMLEY
Assistant County Counsel

Attorneys for County of Alameda, Alameda Board of Supervisors, Wilma Chan, Nate Miley, and Keith Carson