UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN TEIXEIRA, et al.,

        Plaintiffs,

  v.

COUNTY OF ALAMEDA, et al.,

        Defendants.

Case No.  12-cv-03288-WHO

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE**

Re: Dkt. No. 44

## INTRODUCTION

When the Supreme Court decided in *District of Columbia v. Heller,* 554 U.S. 570 (2008), that the Second Amendment confers an individual right to possess handguns in the home for self-protection—a right which the Supreme Court later held, in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), was incorporated against states and municipalities through the Fourteenth Amendment—it took pains to assure that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008).  The Supreme Court identified these sorts of laws as "presumptively lawful regulatory measures" and emphasized that "our list does not purport to be exhaustive." *Id.* at 627 n.26.  That assurance was reiterated in *McDonald*.  130 S. Ct. at 3047.

In this case, plaintiffs John Teixeira, Steve Nobriga, and Gary Gamaza (collectively, the "individual plaintiffs"), as well as The Calguns Foundation, Inc., Second Amendment Foundation, Inc., and California Association of Federal Firearms Licensees, Inc., seek on Second Amendment

and Equal Protection grounds in their First Amended Complaint ("FAC") to invalidate an Alameda County ordinance that prohibits a gun store from being located within 500 feet of any residential district, school, other gun store, or establishment that sells liquor.  Because the ordinance is a presumptively lawful regulatory measure under *Heller*, and because there is a rational basis to treat gun stores differently than other commercial retailers, after consideration of the parties' briefs, argument of counsel, and for the reasons below, the Motion to Dismiss filed by defendants County of Alameda, Alameda Board of Supervisors (the "Board of Supervisors"), Supervisor Wilma Chan of the Alameda Board of Supervisors in her official capacity, Supervisor Nate Miley of the Alameda Board of Supervisors in his official capacity, and Supervisor Keith Carson of the Alameda Board of Supervisors in his official capacity is GRANTED WITH PREJUDICE.

## FACTUAL BACKGROUND

The plaintiffs allege the following facts:  In the fall of 2010, Teixeira, Nobriga, and Gamaza formed a partnership called Valley Guns and Ammo ("VGA") to open a gun store in Alameda County.  FAC ¶ 26.  VGA conducted "market research" prior to opening its store and concluded that "a full service gun store located in San Lorenzo would be a success, in part, because existing retail establishments (e.g., general sporting good [sic] stores) do not meet customer needs and demands" based on feedback from approximately 1,400 "gun enthusiasts." FAC ¶ 27.

In November 2010, the individual plaintiffs were informed that any gun store could not be located within 500 feet of any residentially zoned district, school, other gun store, or establishment that sells liquor ("disqualifying property") as mandated by Alameda County Land Use Ordinance § 17.54.131 (the "Ordinance").  FAC ¶ 32.  This "is a recent land use regulation."  FAC ¶ 34.  In addition, any applicant for a gun store license must obtain a conditional use permit from the County.  FAC ¶ 33.  Alameda County only requires conditional use permits for retail stores selling guns.  FAC ¶ 35.  On information and belief, the plaintiffs allege that as of February 2013, Alameda County had 29 Federal Firearm Licensees, many of whom "are not located in commercial buildings open for retail firearm sales."  FAC ¶ 36.  The plaintiffs also allege on

1    information and belief that the Ordinance's requirements have not been imposed on "many" of the

2    29 licensees, who are either not complying or were never required to comply with the restrictions

3    imposed against VGA.  FAC ¶ 37.

4        The Alameda County Planning Department told VGA that the 500-foot measurement

5    would be taken from the closest door in the proposed gun store to the front door of any

6    disqualifying property.  FAC ¶ 38.  Based on this requirement, the individual plaintiffs leased

7    property at 488 Lewelling Boulevard, San Leandro, California.  FAC ¶ 39.  The property only has

8    one door facing Lewelling Boulevard.  FAC ¶ 40.  A survey the individual plaintiffs obtained

9    showed that no disqualifying property is within a 500-foot radius of the front door of VGA's

10   property.  FAC ¶¶ 41-42.

11       On November 16, 2011, the West County Board of Zoning Adjustment (the "Zoning

12   Board") was scheduled to hold a hearing to determine whether VGA should be issued a

13   conditional use permit and a variance (although the hearing was ultimately rescheduled).  FAC

14   ¶ 44.  A staff report based on information publicly available prior to the hearing concluded that

15   VGA's property was less than 500 feet from a disqualifying property and recommended denying a

16   variance.  FAC ¶ 44.  It concluded that "[t]he measurement taken from the closest exterior wall of

17   the gun shop to the closest property line of a residentially zoned district is less than 500 feet in two

18   directions."  FAC Ex. A at 8.  Specifically, the gun shop was measured to be 446 feet away from

19   residences on Albion Avenue and 446 feet away from residentially zoned properties on Paseo del

20   Rio in San Lorenzo Village, which is separated from the gun shop by Interstate 880.  FAC Ex. A.

21   at 8.  The County "measured from the closest building exterior wall of the gun shop to the

22   property line of the residentially zoned district."  FAC Ex. A at 3.  The report reflects that there are

23   no other disqualifying properties within 500 feet of the gun store.  FAC Ex. A at 8.

24       The staff report tentatively found a "public need" to "provide the opportunity to the public

25   to purchase firearms in a qualified, licensed environment."  FAC Ex. A at 9.  The report also

26   tentatively found that the proposed use relates to other land uses and facilities in the vicinity, and

27   that the store would not "materially affect adversely the health or safety of persons residing or

28   working in the vicinity, or be materially detrimental to the public welfare or injurious to property

3

or improvements in the neighborhood." FAC Ex. A at 9. However, the report found that the gun store would be "contrary to the specific intent clauses or performance standards for the District in which it is to be considered" based on the fact that the location does not meet the 500-foot rule. FAC Ex. A at 9. It noted that one of the residential sites is on the other side of a highway, "which cannot be traversed," but the other site "can be easily accessed." FAC Ex. A at 10. The plaintiffs allege that there is a fence between the gun store and the latter site, but the report does not reflect this. FAC ¶¶ 46(f)(ii)(2) and 46(g)(i). The report tentatively found that a variance for the gun store "will be detrimental to persons or property in the neighborhood or to the public welfare" because it is less than 500 feet away from the residentially zoned properties near Albion Avenue, but "there would be no detriment" to San Lorenzo Village due to the highway. FAC Ex. A at 11.

The Zoning Board held the hearing on December 24, 2011, after which it issued a revised staff report. The revised report acknowledged that different ways of defining the starting point for the measurement would alter the distance to the nearest residentially zoned property. FAC Ex. B at 5. Nonetheless, under all three ways it applied (starting from the gun shop's building wall, front door, or property line), the Zoning Board still found the gun shop to be less than 500 feet away from the closest residence. FAC Ex. B. at 5. Based on these measurements, the staff recommended denying a conditional use permit and variance to VGA. FAC Ex. B at 2.

The plaintiffs used the front door of the gun shop as a starting point to measure distance, however, and submitted its own figure showing that the gun shop was at least 532 feet away from the closest residence. FAC ¶ 47(c). The plaintiffs claim that the Zoning Board's measurements are wrong because it measured "from the front doors of the disqualifying residential properties to the closest possible part" of VGA's building—"a brick wall with no door." FAC ¶ 45. By "moving the end-points," VGA did not qualify for a variance. FAC ¶ 45.

Despite the staff report's recommendation, the Zoning Board passed a resolution granting VGA a conditional use permit and variance. FAC Ex. C. In a December 16, 2011, letter, the individual plaintiffs were informed that the resolution would be effective on December 26, 2011, unless an appeal was filed with the Alameda County Planning Department. FAC ¶¶ 50, 52. On February 23, 2012, the individual plaintiffs were informed that the San Lorenzo Village Homes

4

1   Association filed an appeal on or after December 29, 2011, challenging the Zoning Board's

2   resolution.  FAC ¶ 52.  On February 28, 2012, the Board of Supervisors, "acting through

3   Supervisors CHAN, MILEY and CARSON voted to sustain the late-filed appeal" and overturned

4   the Zoning Board's decision, thereby revoking the conditional use permit and variance granted to

5   VGA.  FAC ¶ 54.

6        The plaintiffs allege that the Board of Supervisors "appeared to be acting with deliberate

7   indifference to the rights of the Plaintiffs and overt hostility to the fact that it was a gun store."

8   FAC ¶ 55.  They argue that the report found no public safety concerns with granting the permit

9   and variance, and that the 500-foot rule is "wholly arbitrary" and "erroneous and unreasonable."

10   FAC ¶ 55.  The individual plaintiffs tried to find other properties that they could use as a gun

11   store; they also commissioned a study, which found that "there are no parcels in the

12   unincorporated areas of Alameda County which would be available for firearm retail sales" due to

13   the 500-foot rule.  FAC ¶¶ 60-61.

14   **PROCEDURAL BACKGROUND**

15        On June 25, 2012, the plaintiffs filed their original complaint asserting four causes of

16   action:  (1) denial of Due Process; (2) denial of Equal Protection; (3) violation of the Second

17   Amendment on its face; and (4) violation of the Second Amendment as applied.  Dkt. No. 1 ¶¶ 48,

18   50, 52, 54.[1]  Following the defendants' motion to dismiss (Dkt. No. 13) and the plaintiffs motion

19   for a preliminary injunction (Dkt. No. 21), on February 26, 2013, the Honorable Susan Illston

20   dismissed with leave to amend the plaintiffs' Equal Protection and Second Amendment claims,

21   and denied the plaintiffs' motion for a preliminary injunction (Dkt. No. 37).

22        The plaintiffs filed the FAC on April 1, 2013.  Dkt. No. 40.  In it, the plaintiffs assert that

23   the 500-foot rule "is not reasonably related to any possible public safety concerns," and that

24   Alameda County is unable to "articulate how the '500 Foot Rule' is narrowly tailored to achieve

25   any legitimate government interest."  FAC ¶ 63.  The First Cause of Action alleges that the

26   defendants "have intentionally discriminated against" the individual plaintiffs by "not requiring

27

28   [1] The parties later stipulated to dismissing the Due Process claim.

United States District Court
Northern District of California

5

the [conditional use permit] of similar situated parties" and that they violated the Equal Protection Clause as applied to the individual plaintiffs. FAC ¶¶ 68-75. The Second Cause of Action challenges the requirements for getting a conditional use permit, in particular, the 500-foot rule, which allegedly gives gun stores "different treatment from similarly situated retail businesses," as unconstitutional on its face under the Equal Protection Clause. FAC ¶ 74. The Third Cause of Action challenges the Ordinance as "hav[ing] no proper basis" and being "constitutionally impermissible" on its face under the Second Amendment. FAC ¶ 78. The Fourth Cause of Action alleges that the 500-foot rule "is irrational as applied to the facts of this case" and thus violates the Second Amendment as applied to the individual plaintiffs. FAC ¶ 80. The plaintiffs seek declaratory and injunctive relief stating that the Board of Supervisor's grant of the San Lorenzo Village Homes Association's appeal was improper and that the 500-foot rule is unconstitutional facially and as-applied, and they also seek damages and attorney's fees.

The defendants then moved to dismiss the FAC. Dkt. No. 44.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). However, a complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. Similarly, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement," *id.* (quotation marks and brackets omitted), and the court need not "assume the truth of legal conclusions merely because they are

cast in the form of factual allegations," *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).[2]

**DISCUSSION**

## I.      LAW OF THE CASE

The plaintiffs argue that the Court's "ruling on the prior motion to dismiss [Order Granting Defendants' Motion to Dismiss and Denying Plaintiffs' Motion for a Preliminary Injunction ("Order")] was clearly erroneous." Opp'n 1. They dispute the Court's conclusion that the Ordinance is "presumptively valid," and say that the Court was incorrect to "suggest[] that there was [no] Second Amendment right outside of one's home" (which the Court did not suggest). Opp'n 1. They assert that because the ruling was only an order of this Court and not an appellate court, the Court "is absolutely free to, and should," revisit its earlier Order since the "law of the case" doctrine does not apply here. Opp'n 6.

While it is true, as the plaintiffs say, that the "law of the case" doctrine prohibits a trial court from revisiting a decision by an appellate court, Opp'n 1, it is not true that the doctrine does not caution a trial court against reconsidering its own prior decisions. *See United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (stating that "reconsideration of legal questions previously decided should be avoided"). The Ninth Circuit has said that "[u]nder the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue *previously decided by the same court*, or a higher court, in the same case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)) (emphasis added). "Issues that a district court determines during pretrial motions become law of the case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004). "The doctrine is a judicial invention designed to aid in the efficient operation of court affairs, and is founded upon the sound public

---

[2] At oral argument on the Motion to Dismiss the FAC, plaintiffs conceded that they had no additional facts to allege in support of their claims.

United States District Court
Northern District of California

1    policy that litigation must come to an end." *Smith*, 389 F.3d at 948 (citations and quotation marks

2    omitted). At the same time, the "law of the case" doctrine is "not an inexorable command,"

3    *Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 686 (9th Cir. 1988) (citation omitted), and is

4    "discretionary." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

5         Asking the Court to wholly revise its interpretation of the law applied in an earlier motion

6    to dismiss merely because a new motion to dismiss is pending, without providing the Court

7    "strong and reasonable [grounds for deciding] that the earlier ruling was wrong," goes against the

8    purpose and intent of the doctrine. *Smith*, 389 F.3d at 949. Here, the Court will exercise its

9    discretion to follow the law as explained in its earlier Order.

10   **II.      PLAINTIFFS DO NOT STATE A CLAIM UNDER THE SECOND AMENDMENT.**

11        **A. Third Cause of Action: Facial Second Amendment Challenge**

12        Plaintiffs facially challenge the Ordinance under the Second Amendment. "A facial

13   challenge to a legislative [a]ct is, of course, the most difficult challenge to mount successfully,

14   since the challenger must establish that *no* set of circumstances exists under which the [a]ct would

15   be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added). Plaintiffs fail to

16   sufficiently allege that the Ordinance is facially unconstitutional under the Second Amendment.

17        The Court noted in its earlier Order that "[n]either the Supreme Court nor the Ninth Circuit

18   has articulated the precise methodology to be applied to Second Amendment claims." Order 7.

19   Drawing from other authorities, however, the Court applied a two-step analysis that most other

20   courts have applied in this context. As the Fifth Circuit explained it, "the first step is to determine

21   whether the challenged law impinges upon a right protected by the Second Amendment—that is,

22   whether the law regulates conduct that falls within the scope of the Second Amendment's

23   guarantee; the second step is to determine whether to apply intermediate or strict scrutiny to the

24   law, and then to determine whether the law survives the proper level of scrutiny." *Nat'l Rifle*

25   *Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 194

26   (5th Cir. 2012) (citing *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)); *Heller v. Dist.*

27   *of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) (Heller II); *Ezell v. City of Chicago*, 651 F.3d

28   684, 701-04 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United*

United States District Court
Northern District of California

8

1   *States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85,

2   89 (3d Cir. 2010).  *But see United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010).).

3            The first step of the analysis is dispositive in this case:  under the Supreme Court's

4   decisions in *Heller* and *McDonald*, the Ordinance is presumptively lawful.  Critically, as

5   previously noted, the Supreme Court has cautioned that *nothing* in the *Heller* opinion "should be

6   taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as

7   schools and government buildings, or laws imposing conditions and qualifications on the

8   commercial sale of arms."  *Heller*, 554 U.S. at 626-27.  The Supreme Court explained that its list

9   of "presumptively lawful regulatory measures" was "not [] exhaustive."  *Id.* at 627 n.26.  It

10  reiterated these principles two years later in *McDonald*, 130 S. Ct. at 3047 ("We repeat those

11  assurances here."), and the Ninth Circuit followed them in *Nordyke v. King*, 681 F.3d 1041, 1044

12  (9th Cir. 2012).[3]

13           The Ordinance, which requires that gun stores obtain a permit to operate and be at least

14  500 feet away from sensitive locations are regulatory measures, is quite literally a "law[] imposing

15  conditions and qualifications on the commercial sale of arms," which the Supreme Court

16  identified as a type of regulatory measure that is presumptively lawful.  *Heller*, 554 U.S. at 626-

17  27.  In addition, the Ordinance shares the same concerns as "laws forbidding the carrying of

18  firearms in sensitive places" because it requires the selling of guns to occur at least 500 feet away

19

20  ---

[3] The plaintiffs argue that *Heller*'s discussion of presumptively lawful regulatory measures is

21  merely dicta and provides "no basis" to decide this case.  Opp'n 10-12.  The Ninth Circuit has

    explicitly rejected the contention that this portion of *Heller* is somehow not controlling.  In *United*

22  *States v. Vongxay*, the court said, "[The defendant] nevertheless contends that the Court's

    language about certain long-standing restrictions on gun possession is dicta, and therefore not

23  binding.  We disagree."  594 F.3d 1111, 1115 (9th Cir. 2010).  Even if the Supreme Court's

    statements were dicta, as the Ninth Circuit has repeatedly said, courts "do not treat considered

24  dicta from the Supreme Court lightly."  *United States v. Augustine*, 712 F.3d 1290, 1295 (9th Cir.

    2013).  Given the importance of the issues of first impression addressed by *Heller*, and the fact

25  that the Supreme Court reaffirmed its statements about presumptive lawfulness again in

    *McDonald*, 130 S. Ct. at 3047 ("We repeat those assurances here."), the plaintiffs cannot seriously

26  argue that the Supreme Court's analysis was not "considered."  This Court follows the Supreme

    Court's guidance.

27

28

United States District Court
Northern District of California

from schools, residences, establishments that sell liquor, and other gun stores. *Id.* It is not a total ban on gun sales or purchases in Alameda County. On its face, the Ordinance is part of the Supreme Court's non-exhaustive list of regulatory measures that are constitutional under the Second Amendment. *Id.*

While both the Supreme Court and the Ninth Circuit left unanswered precisely how broad the scope of the Second Amendment is, *Nordyke*, 681 F.3d at 1044, they have not extended the protections of the Second Amendment to the sale or purchase of guns. Plaintiffs have failed to explain how the Ordinance unconstitutionally burdened their "core right to possess a gun in the home for self-defense articulated in *Heller*" or any right they have to sell or purchase guns—"a right which the U.S. Supreme Court has yet to recognize." Order 8. The Ninth Circuit observed that "[t]he Supreme Court has made it clear that the government can continue to regulate commercial gun dealing." *United States v. Castro*, No. 10-50160, 2011 WL 6157466, at *1 (9th Cir. Nov. 28, 2011), *cert. denied*, 132 S. Ct. 1816 (2012). In *Nordyke v. King*, the Ninth Circuit upheld an Alameda County ban on guns on County property due to such property's nature as a "sensitive" place. 681 F.3d at 1044. As another court in this circuit held, "*Heller* said nothing about extending Second Amendment protection to firearm manufacturers or dealers. If anything, *Heller* recognized that firearms manufacturers and dealers are properly subject to regulation . . . ." *Mont. Shooting Sports Ass'n v. Holder*, CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010), *adopted by* CV-09-147-DWM-JCL, 2010 WL 3909431, at *1 (D. Mont. Sept. 29, 2010).

Nor is the Court aware of any authority outside the Ninth Circuit that would support plaintiffs' claims. The Fourth Circuit has explicitly held that "although the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm." *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011). Analogizing from the First Amendment context, the Fourth Circuit in *Chafin* cited the Supreme Court's decision in *United States v. 12 200-Foot Reels of Super 8mm. Film* for the proposition that "the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others." 413 U.S. 123, 128 (1973). And the

1    Third Circuit's understanding is persuasive that the "longstanding limitations" listed in *Heller*—

2    such as laws regulating the sale of guns—are "exceptions to the right to bear arms." *United States*

3    *v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010).

4            The plaintiffs cite to two Seventh Circuit cases as support for deeming the Ordinance

5    unconstitutional: *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), and *Moore v. Madigan*,

6    702 F.3d 933 (7th Cir. 2012).  Neither helps them.  In *Ezell v. City of Chicago*, where the Seventh

7    Circuit applied the same two-step approach detailed above to assess whether the lower court erred

8    in denying a preliminary injunction against the law at issue, the circuit court found that the

9    plaintiffs showed a strong likelihood of establishing that a ban on firing ranges in Chicago violated

10   the Second Amendment.  But *Ezell* is inapposite because, as the Seventh Circuit noted, "[t]he

11   City's firing-range ban is not merely regulatory; it *prohibits* the law-abiding, responsible citizens

12   of Chicago from engaging in target practice." *Ezell*, 651 F.3d at 708.  *Ezell* recognized the

13   difference between a ban and "laws that merely regulate rather than restrict, and modest burdens

14   . . . may be more easily justified." *Id.*  Here, the Ordinance merely regulates how far a gun store

15   must be from certain types of sensitive establishments—a requirement that gun stores be at least

16   500 feet from certain areas is far from the total ban on firing ranges in *Ezell*.

17           The plaintiffs' reliance on *Moore v. Madigan* is similarly misplaced because that case also

18   involved a near-total ban, this time on carrying a gun in public.  The Seventh Circuit found the law

19   to be unconstitutional, but stated that "reasonable limitations, consistent with the public safety,"

20   could save the law.  702 F.3d at 942.  *Moore* does not help the plaintiffs any more than *Ezell* does:

21   the Ordinance is not a ban, and possessing a gun implicates a different interest than selling one.

22   The Ordinance is a "reasonable limitation[], consistent with the public safety" that creates a

23   "barrier" that is "*de minimis*."  Order 9.

24           Given the *Heller* court's recognition that "laws imposing conditions and qualifications on

25   the commercial sale of arms" are "presumptively lawful," and the fact that the Ordinance falls

26   squarely into that category by its terms, the plaintiffs fail to adequately allege that the Ordinance is

27   facially unconstitutional.  They are unable to show that there is "no set of circumstances [] under

28   which the Ordinance would be valid." *Salerno*, 481 U.S. at 745.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   The Court's decision that the Ordinance is presumptively lawful makes unnecessary any

2   analysis under the second step in the Second Amendment inquiry, i.e., applying the applicable

3   level of constitutional scrutiny.  Suffice it to say, the Ordinance would pass any applicable level of

4   scrutiny.

5        First, the Ordinance is based on important governmental objectives.  Alameda County has

6   an "interest in protecting public safety and preventing harm in populated, well-traveled, and

7   sensitive areas such as residentially-zoned districts."  Reply 6.  It "has an interest in protecting

8   against the potential secondary effects of gun stores" and "a substantial interest in preserving the

9   character of residential zones."  *Id.*  The Supreme Court has held that "[t]he State's interest in

10  protecting the well-being [and] tranquility . . . of the home is certainly of the highest order."

11  *Frisby v. Schultz*, 487 U.S. 474, 484 (1988).  The Ninth Circuit also held that local governments

12  "have a substantial interest in protecting the aesthetic appearance of their communities" and "in

13  assuring safe [] circulation on their streets."  *Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th

14  Cir. 1998); *see also Schneider v. State of N.J., Town of Irvington*, 308 U.S. 147, 160 (1938)

15  (holding that municipalities have an interest in "public safety, health, [and] welfare").

16       Second, there is a reasonable fit between the Ordinance and its objectives.  Alameda

17  County's Ordinance only regulates *where* a gun store may be located, restricting them from being

18  within 500 feet of sensitive places.  While keeping a gun store 500 feet away from a residential

19  area does not guarantee that gun-related violence or crimes will not occur, the law does not require

20  a perfect match between the Ordinance's means and objectives, nor does the law require the

21  Ordinance to be foolproof.  For these same reasons, another judge in this district has upheld a

22  restriction against gun possession within 1,000 feet of a school—double the distance mandated by

23  the Ordinance here—stating that such a regulation would be constitutional "[u]nder any of the

24  potentially applicable levels of scrutiny."  *Hall v. Garcia*, No. 10-cv-3799-RS, 2011 WL 995933,

25  at *4 (N.D. Cal. March 17, 2011).

26       At oral argument, plaintiffs suggested for the first time that the appropriate analysis for

27  regulations that impinge on Second Amendment rights is the three-part analysis used in First

28  Amendment cases involving adult bookstores and movie theaters:  whether the ordinance is a ban

or a time, place and manner regulation; whether the ordinance is content neutral or content based; and, whether the ordinance is designed to serve a substantial government interest and reasonable alternative avenues of communication remain available. *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 46-47, 50 (1986) (holding that a municipal ordinance that prohibited any adult movie theater from being within 1,000 feet of any residential zone, family dwelling, church, park, or school is valid). The Court is unaware of (nor do the plaintiffs cite) any authority that applied this analysis in the Second Amendment context, nor will it adopt this analytical framework because a gun store, by its nature, does not have the expressive characteristics that allow for this sort of content-based analysis. If it did, the Ordinance would pass muster anyway. First, as discussed above, the Ordinance merely regulates the places where gun stores may be located, i.e., away from sensitive locations, but it does not ban them. Second, the Ordinance is content-neutral because it is aimed at the secondary effects of gun stores on the surrounding neighborhood, not to suppress gun ownership. *City of Renton*, 475 U.S. at 48. Finally, as discussed above, the Ordinance was designed to serve a substantial government interest. Furthermore, reasonable locations to operate a gun store in Alameda County exist, as evidenced by the many stores that sell guns there. Thus even if this alternative analysis were applicable, it would not help the plaintiffs.

The crux of *Heller* and *McDonald* is that there is a "personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 130 S. Ct. at 3044. *See United States v. Morsette*, 622 F.3d 1200, 1202 (9th Cir. 2010) ("*Heller* and *McDonald* concern the right to possess a firearm in one's home for self-defense."). But that does not mean that there is a correlative right to sell firearms. As discussed above, the Ordinance is presumptively valid. It survives any applicable level of scrutiny or alternative analysis proposed by the plaintiffs. Because the plaintiffs fail to adequately allege that "no set of circumstances exists under which the [Ordinance] would be valid," *Salerno*, 481 U.S. at 745, their facial challenge under the Second Amendment cannot succeed. *See United States v. Kaczynski*, 551 F.3d 1120, 1125 (9th Cir. 2009) ("a generally applicable statute is not facially invalid unless the statute can *never* be applied in a constitutional manner") (quotation marks omitted).

**B.  Fourth Cause of Action:  As-Applied Second Amendment Challenge**

The plaintiffs also make an as-applied challenge to the Ordinance.  "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular [] activity, even though the law may be capable of valid application to others." *Foti*, 146 F.3d at 635.  But the plaintiffs plead no facts showing that the Ordinance is unconstitutional as applied to them, and for the reasons discussed with respect to their facial challenge they have failed to state a claim.

The FAC states that the Ordinance "is irrational as applied to the facts of this case and cannot withstand any form of constitutional scrutiny" and has "no proper basis and [is] constitutionally impermissible."  FAC ¶¶ 80-81.  These assertions are nothing more than "legal conclusions . . . cast in the form of factual allegations" and cannot support a cause of action.  *W. Min. Council*, 643 F.2d at 624.

The plaintiffs also allege that "existing retail establishments (e.g., general sporting good [sic] stores) do not meet customer needs and demands.  In fact, gun stores that can provide the level of personal service contemplated by VGA are a central and important resource for individuals trying to exercise their Second Amendment rights" because "they also provide personalized training and instruction in firearm safety and operation."  FAC ¶ 27.  The plaintiffs also state that "[t]he burdens on the plaintiffs and their customers' Second Amendment rights include . . . a restriction on convenient access to a neighborhood gun store," resulting in customers' "having to travel to other, more remote locations."  FAC ¶ 45.

Assuming the plaintiffs have standing to represent their prospective customers' interests, it is hard to understand how these facts would support an as-applied challenge.  They are equally applicable to any prospective gun store owner or customer.  Further, these allegations are insufficient to show that Alameda County residents' right to possess guns is impinged by the Ordinance.  Although the plaintiffs allege that some customers may appreciate additional gun stores that provide a better level of "personal service" and "personalized training and instruction," the plaintiffs do not allege that customers cannot buy guns in Alameda County or cannot receive training and instruction.  The FAC makes quite clear that there *are* existing retail establishments operating in Alameda County that provide guns.  Indeed, the FAC admits that Teixeira himself

United States District Court
Northern District of California

1    "had previously owned a gun store in Castro Valley," located in Alameda County.  FAC ¶ 29.

2    Teixeira makes no allegation that the Ordinance hampered his ability to operate a gun store before,

3    nor do the plaintiffs allege that the "existing retail establishments" that sell guns are unable to

4    comply with the Ordinance.

5         The Court is unaware of any authority stating or implying that the Second Amendment

6    contemplates a right to "convenient access to a neighborhood gun store."  FAC ¶ 45.  The Second

7    Amendment's core right of the individual to possess guns is not impinged by the Ordinance as

8    applied to the plaintiffs since it merely regulates the distance that all gun stores must be from

9    certain sensitive establishments.  The Ordinance is presumptively lawful.  The plaintiffs' Second

10   Amendment as-applied challenge does not state facts sufficient to support a cause of action.

11   **III.   PLAINTIFFS DO NOT STATE A CLAIM UNDER THE EQUAL PROTECTION**

12   **CLAUSE.**

13       **A.  Second Cause of Action:  Facial Equal Protection Challenge**

14        The essence of the plaintiffs' Equal Protection claims is that gun shops "are being treated

15   differently than other retailers because they are [] gun shop[s] and [] there is no justification for

16   such disparate treatment."  Opp'n 15.  The plaintiffs point out that gun stores are required to

17   obtain conditional use permits while other retailers are not—allegedly for no apparent reason—

18   thus violating their right to Equal Protection.  *Id*. at 15-16.

19        As with the facial challenge to the Ordinance under the Second Amendment, to succeed on

20   a facial challenge under the Equal Protection Clause, the plaintiffs must show "that no set of

21   circumstances exists under which the [a]ct would be valid."  *Salerno*, 481 U.S. at 745.  And as

22   with the facial Second Amendment challenge, the plaintiffs fail to adequately plead that the

23   Ordinance is facially unconstitutional under the Equal Protection Clause.

24        In *Freeman v. City of Santa Ana*, the Ninth Circuit explained that "[t]he first step in equal

25   protection analysis is to identify the [] classification of groups."  68 F.3d 1180, 1187 (9th Cir.

26   1995) (citations omitted).  "To accomplish this, a plaintiff can show that the law is applied in a

27   discriminatory manner or imposes different burdens on different classes of people."  *Id.*  Based on

28   the class identified, the next step is to determine the appropriate level of scrutiny.  *Id.*  "[U]nless a

United States District Court
Northern District of California

classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

The plaintiffs cite no authority that gun store owners are a protected class because they have an "inherently suspect characteristic," or, as discussed above, that there is a "fundamental right" to selling guns. Even assuming that gun shops constitute a cognizable class, Alameda County need only have a rational basis for passing the Ordinance.

Under the rational basis test, a "classification must be upheld against equal protection challenge if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (emphasis added). "A legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. . . . Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Id.* at 320-21 (citations and quotation marks omitted).

The Ordinance passes the rational basis test. The plaintiffs have not "allege[d] facts sufficient to overcome the presumption of rationality that applies to government classifications." *See Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) (applying the rational basis standard on a motion to dismiss). Under a section titled "Facts Relating to the '500 Foot Rule,'" the plaintiffs merely state in conclusory fashion that the Ordinance "is not reasonably related to any possible public safety concerns a retail gun store might raise . . . [n]or does Alameda County articulate how the '500 Foot Rule' is narrowly tailored to achieve any legitimate government interest." FAC ¶ 63. Without pleading facts to support these conclusions, the plaintiffs have not sufficiently pleaded a cause of action. Nonetheless, the defendants explain that the 500-feet rule is intended to "protect[] public safety and prevent[] harm in populated, well-traveled, and sensitive areas such as residentially-zoned districts," as well as to "protect[] against

16

the potential secondary effects of gun stores" and to "preserv[e] the character of residential zones."  Reply 6.  They also justify their classification of gun stores separate from other retail stores based on "the many state and federal laws that regulate retail firearm sales."  Br. 7 (citing FAC ¶¶ 17, 19-25).  As discussed above, these are legitimate aims and rationales for a local government to act upon.  To establish the constitutionality of the Ordinance, the defendants do not have to demonstrate that treating gun stores differently from other retailers is the best way to achieve those goals.  The Ordinance satisfies the rational basis test.[4]

### B.  First Cause of Action:  As-Applied Equal Protection Challenge

The plaintiffs fail to allege that the Ordinance as applied to them violates their Equal Protection rights.  "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [government] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated."  *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citation omitted).  The plaintiff bears the burden of pleading what other entities are similarly situated with him and how they are so.  *Scocca v. Smith*, No. 11-cv-1318-EMC, 2012 WL 2375203, at *5 (N.D. Cal. June 22, 2012).  "A class of one plaintiff must show that the discriminatory treatment was intentionally directed just at him, as opposed to being an accident or a random act."  *N. Pacifica*, 526 F.3d at 486 (ellipses and quotation marks omitted).  Showing that the treatment was "intentional" does not require showing subjective ill will.  *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

The plaintiffs fail to adequately allege that the defendants treated the individual plaintiffs differently from any other similarly situated party, or that the defendants did so intentionally and without a rational basis.  The plaintiffs state, "Plaintiffs' position is that they are similarly situated

---

[4] Even if the Ordinance had to satisfy a heightened level of scrutiny because it jeopardizes the exercise of a fundamental right, it would do so easily.  Because gun stores are especially susceptible to issues of public safety, which the Ordinance is intended to address, the statutory classification is undoubtedly "substantially related" to Alameda County's "important governmental objective" of "protecting public safety and preventing harm."  Reply 6; *see Clark*, 486 U.S. at 461 ("To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective.").  The plaintiffs allege no facts to show that this is not the case.

with all other general retailers who are entitled to open shop in commercially zoned areas." Opp'n 16. They argue that their allegation that they "are being treated differently than other retailers because they are a gun shop and that there is no justification for such disparate treatment," coupled with their assertion that "Defendants are using zoning laws to redline or ban retail gun stores from Unincorporated Alameda County," is sufficient to plead a violation of Equal Protection. Opp'n 15-16. The plaintiffs point to the fact that before the Board of Supervisors passed the Ordinance, gun stores were "not distinguished from other retail stores." RJN Ex. H at 4. Thus, they argue that the defendants should be estopped from claiming that gun stores are dissimilar to other retailers. Opp'n 16.

The plaintiffs meet none of the criteria to successfully plead that they are "a class of one." Their allegations appear equally applicable to any other prospective gun store owner covered by the Ordinance. There is a rational basis for the Ordinance. And there is no allegation with facts showing that the plaintiffs were treated differently than others similarly situated. The plaintiffs reiterated at oral argument, as they said in their papers, that they believe gun stores are similarly situated to other commercial retailers that do not sell weapons. This is simply wrong, as underscored by plaintiffs' recognition that gun stores are "strictly licensed and regulated by state and federal law." By those laws and regulations Congress and state legislatures have demonstrated their understanding that gun stores are different from, say, clothing or convenience stores. FAC ¶¶ 17-24.

Finally, the plaintiffs' argument that the defendants have no right to enact the Ordinance merely because gun stores were not regulated in this manner before cannot be taken seriously—otherwise, new legislation could never be passed.

Because the plaintiffs fail to adequately plead that the defendants intentionally treated the individual plaintiffs differently from others similarly situated with no rational basis, they fail to adequately allege a violation of Equal Protection as the Ordinance was applied to them.[5]

---

[5] To the extent the plaintiffs plead that they are being treated differently than the other 29 Federal Firearm Licensees, their claim still fails. At oral argument, the plaintiffs made clear that this is not their claim, but the FAC is somewhat ambiguous on this point so the Court will address it in

United States District Court
Northern District of California

**CONCLUSION**

The plaintiffs fail to adequately plead that the Ordinance is facially unconstitutional under the Second Amendment and Equal Protection Clause.  The plaintiffs also fail to adequately plead that the Ordinance was unconstitutionally applied to them under the Second Amendment and Equal Protection Clause.

At oral argument, the Court inquired whether the plaintiffs could or wished to plead any additional facts in a further amendment to their complaint.  The plaintiffs declined.  Accordingly, the First Amended Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: September 9, 2013



_____
WILLIAM H. ORRICK
United States District Judge

---

passing. The plaintiffs allege that many of those licensees "are not located in commercial buildings open for retail firearm sales," and that the Ordinance's requirements have not been imposed on "many" of the 29 licensees, who are either not complying or were never required to comply with the restrictions imposed against VGA.  FAC ¶¶ 36-37.  However, the plaintiffs do not explain or provide any facts to show how these licensees are similarly situated with the individual plaintiffs.  *Scocca*, 2012 WL 2375203, at *5.  Even assuming the 29 licensees are similarly situated, the plaintiffs do not allege any facts to *plausibly* show that the defendants *intentionally* treated the individual plaintiffs differently or that the defendants did so without a rational basis beyond the defendants' bare assertions, e.g., that the defendants sought to "trick" the individual plaintiffs or "red-lin[e] them out of existence."  FAC ¶¶ 45, 63.