```
                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

JOHN TEIXEIRA, STEVE NOBRIGA,   )
GARY GAMAZA, CALGUNS FOUNDATION )
(CGF), INC., SECOND AMENDMENT   )
FOUNDATION (SAF), INC., and     )
CALIFORNIA ASSOCIATION OF       )
FEDERAL FIREARMS LICENSEES      )
(CAL-FFL),                      )
                                )
          Plaintiffs,           )
                                )
   VS.                          )   No. C 12-3288 WHO
                                )
COUNTY OF ALAMEDA, ALAMEDA      )
BOARD OF SUPERVISORS (as a      )
policy making body), WILMA CHAN )
in her official capacity, NATE  )
MILEY in his official capacity, )
and KEITH CARSON in his         )
official capacity,              )
                                )
          Defendants.           )
_____)   Pages 1 - 17

                                 San Francisco, California
                                 Wednesday, September 4, 2013
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES**:

For Plaintiffs:
           **CHARLES W. HOKANSON**, Esq.
           Attorney at Law
           4401 Atlantic Boulevard
           Suite 200
           Long Beach, California 90807

(Appearances continued on next page)

Transcribed By:    Candace Yount, CSR# 2737, RMR, CCRR
                    Contract Court Reporter/Transcriber
                    U.S. District Court
               Computerized Transcription By Eclipse

**APPEARANCES (Continued)**:

For Plaintiffs (continued):

      Offices of Donald Kilmer
      1645 Willow Street
      Suite 150
      San Jose, California  95125
   BY: **DONALD E.J. KILMER**, **JR.,** Esq.


For Defendants:
      Office of the County Counsel
      County of Alameda
      1221 Oak Street
      Suite 450
      Oakland, California  94612
   BY: **MARY ELLYN GORMLEY**, Esq.
      **SAMANTHA STONEWORK-HAND**, Esq.

```
 1  Wednesday - September 4, 2013                           2:00 p.m.
 2                        P R O C E E D I N G S
 3                              ---oOo---
 4       THE CLERK:  Calling civil matter 12-3288, Teixeira vs.
 5  County of Alameda, et al.
 6       Counsel, please come forward and state your appearance.
 7       MS. GORMLEY:  Good afternoon, Your Honor.  Mary Ellyn
 8  Gormley on behalf of defendants County of Alameda.
 9       MS. STONEWORK-HAND:  Good afternoon, Your Honor.
10  Samantha Stonework-Hand on behalf of defendant County of
11  Alameda.
12       MR. HOKANSON:  Afternoon, Your Honor.  Charles
13  Hokanson on behalf of the plaintiffs.
14       MR. KILMER:  Good afternoon, Your Honor.  Donald
15  Kilmer on behalf of plaintiffs.
16       THE COURT:  Welcome.
17     So, let's take up the motion to dismiss first.  And I'd
18  like to divide things and first talk about the Second Amendment
19  claims and then go on to the equal protective claims.
20       MR. HOKANSON:  Thank you, Your Honor.  Mr. Hokanson.
21     May I proceed?
22       THE COURT:  Please.
23     So let me just tell you, Mr. Hokanson, where I'm coming at
24  this and then you can take your whacks at -- at where -- what
25  I'm thinking, because I'm -- with respect to the Second
```

1  Amendment claim, I'm planning to grant the moment -- the motion
2  to dismiss.
3      Here's why:  The -- I don't spend any time on the law of
4  the case.  I do agree with Judge Illston's analysis.  And I
5  think the -- what I wanted to hear is substantively why it's
6  wrong and not whether the law of the case applies, because it
7  seems to me that I -- *Heller* and Mc -- and *McDonald* expressly
8  allow this sort of regulation.  To me, it seems reasonable to
9  have an ordinance banning gunshots within 500 feet of
10 residential areas and schools.
11     I don't think this is a case like *Ezell*, which banned
12 firing ranges.  I don't think it's one like *Moore*, which banned
13 the carrying of guns.  And I don't think it's a burden on the
14 Second Amendment right to bear arms.  There are 20 gun stores
15 in Alameda County.
16     So all of those things make me think that the Second
17 Amendment claims are doomed, but -- but please go ahead and
18 tell me why I'm wrong.
19         **MR. HOKANSON:**  Okay.  Rather than attack it credibly
20 like that, let me try it a different way.
21     As we argued in our brief, the -- the trend of the law is
22 to use First Amendment analogues to the Second Amendment right.
23 Both are intangible rights.  Both of them seem to follow sort
24 of the same route.
25     And, in fact, in the reply brief, the defendants agreed

1   that it was appropriate to look for First Amendment analogues,
2   but then they went to a substantial burden analysis which
3   appears Your Honor's kind of accepted.  Unfortunately, that's
4   the wrong step.
5       If you accept that First Amendment analogues should apply,
6   then where you go is to the zoning rules dealing with adult
7   bookstores.  Those are the most directly-on-point analogous
8   situations in First Amendment law.  And there's a three-part
9   test in -- in those cases.
10      And, in fact, the plaintiffs (sic) cited to the leading
11  case, *Renton*.  But there are others and they were actually
12  cited in our Complaint.
13      The three-part test first looks at whether or not there's
14  a ban.  In this case, you have to concede that it's not a ban.
15      The second test looks at whether or not it is
16  content-based.  If it is content-based, then it's presumptively
17  invalid.
18      In this instance, we know that it is directed directly at
19  firearm sales because that's what the legislative finding was.
20  "We want to regulate gun sales."  So I would argue that, in the
21  analogous situation, is a -- is content-based and, therefore,
22  it's presumptively invalid.
23      But even if you find that it's not content-based by
24  suggesting, as I think your Court -- the Court alluded to, that
25  we're really dealing with secondary effects, and that's

something that's also conceded in the reply.

If you're dealing with secondary effects, then the law is that there has to be legis -- specific legislative findings and evidence on which the legislature can find that there are secondary effects and that this will ameliorate those secondary effects. And the -- And the leading case on that is *City of L.A. v. Alameda Books*.

And the Ninth Circuit held in that case that the City of Los Angeles couldn't rely on a report that was about 20 years old that details certain crime findings.

The Supreme Court ultimately overturned that and said, "No, it's reasonable for them to rely on that." That report said, "Crime increases when we have these adult bookstores congregated together. It's reasonable for them to rely on that evidence."

In this case, in stark contrast, there are no legislative findings, and that's the key. Rather, what you have, from the evidence that was submitted by the defendants, is simply the -- the legislative body saying, "We are engaged in this process of wanting to regulate firearms." There's no justification. There's no suggestion that gun stores have any secondary effects.

And Your Honor said it seems reasonable, but -- and the plaintiffs argue, well, look at all these different things that could happen.

1     All of that is speculative and, more importantly, it's
2  beside the point.  Because the issue is, did the legislative
3  body have some evidence on which it could rely to find that
4  there were secondary effects that could be ameliorated by this
5  zoning rule.
6     And it's clear that there -- it's clear that there is no
7  such evidence by what's been submitted.
8     So, I would submit, Your Honor, that following that line
9  of cases, you should find that the statute is presumptively --
10 (clearing throat) -- excuse me, I'm getting -- getting a little
11 hoarse -- presumptively invalid -- I'm okay -- presumptively
12 invalid but, secondarily, even if it's not presumptively
13 invalid, then we have gotten by the pleading stage, and now the
14 question is going to be, can they come up with even more facts?
15    And going to *Ezell*, just to -- I know you've taken a
16 different factual situation.  But it definitely says, when you
17 are facing a motion to dismiss, all you have to do is allege
18 statute and standing and you get by the motion.  And we've done
19 that.  I think we're entitled to go forward.
20         **THE COURT:**  Okay.  So do you -- How do you deal with
21 the fact that both *Heller* and *McDonald* have this express
22 language that seems to deal precisely with this situation?
23         **MR. HOKANSON:**  I don't -- I'm sorry.
24         **THE COURT:**  Go ahead.
25         **MR. HOKANSON:**  I don't think it deals with this

situation. It really is -- It really is dicta.

And as I read the cases, frankly, I think that Justice Scalia's comment's really directed to the dissent because the dissent was saying, well, if you knock this one down, we're going to have this row of dominoes that go down. And I really think that Scalia's saying these -- these laws -- these long-standing laws are presumptively valid, was really just a bump to the dissent.

But it is clear dicta. It is nothing more than that.

The Court can't issue -- They could not possibly have issued a ruling that says every law that is -- that affects the Second Amendment is valid.

**THE COURT:** Yeah, but -- Well, it is dicta. It is from the Supreme Court. It was picked up again and reaffirmed in *McDonald*. And then there is the Ninth Circuit case that I can't pronounce that said that it applies in the Ninth Circuit. What am I supposed to do with that?

**MR. HOKANSON:** I don't think that there is a Ninth Circuit case that says -- that relies on the presumption that was stated in *Heller*.

**THE COURT:** No, it does state the language at the bottom here or something.

(Pause in proceedings.)

**MR. HOKANSON:** Oh, yes, I'm familiar with the case you're talking about, Your Honor.

1        I don't think that that situation is analogous, but I will
2   say this:  It is much more likely that Justice Scalia was
3   talking about things like the national firearm statutes that
4   have been around really for a long time.
5        This statute is fairly recent.  It's 1998.  That's not
6   ancient, it's not yesterday, but it is relatively recently in
7   legislative history.
8        This is a -- rather than a long-standing, "No, you can't
9   have guns.  We're going to have background checks.  Nobody gets
10  a machine gun," which have been around for -- for a long time,
11  this -- this is not a long-standing statute.
12           **THE COURT:**  Let me hear from you, Miss Gormley.
13           **MS. STONEWORK-HAND:**  Samantha Stonework-Hand for the
14  Defendants, Your Honor.
15       First of all, I'd like to address the First Amendment
16  analogue.
17       Defendants do agree that this case can be analyzed similar
18  to the First Amendment and *Ezell* actually discusses this.  It
19  talks about the *Heller* language and the carveout of the *Heller*
20  language, and those are exceptions to the Second Amendment.
21       And *Ezell* also compares that list of presumptively lawful
22  regulatory measures to those classes of speech in the First
23  Amendment that are categorically unprotected, like obscenity
24  and defamation and (inaudible).  And it says just as some
25  categories of speech are categorically unprotected, so, too,

1  are with the Second Amendment.
2      And because *Heller* had called out commercial sale of
3  firearms, that is -- that is some activity that is
4  categorically unprotected and, therefore, the law is not
5  subject to further Second Amendment review.  And that's in the
6  case that plaintiff relies so heavily on.
7      Further, with regard to evidence, we were going to take
8  that line of analysis (inaudible) switched (inaudible) we shall
9  regarding the secondary (inaudible).
10     The recent Third Circuit case, *Drake v. Filko* that
11 defendants filed following the reply, discusses why, one, that
12 courts -- should courts have substantial deference to the
13 legislators' predictive judgments.
14     And in this case, the predictive judgment of the County is
15 that keeping gun stores away from sensitive areas, such as
16 schools and daycare centers, as well as the residentially-zoned
17 districts, furthers substantial interest and public safety and
18 preserving the character of the residential zone.
19     Further, the Third Circuit discusses why it's not
20 surprising.  There is a long legislative history from these
21 laws that, because as of yet in 1998, or in that case, there
22 was no -- there was -- *Heller* hadn't been decided yet.  There
23 was no individual right to bear arms that the legislator could
24 have kept in the back of his mind to develop this legislative
25 history.  And so it's not surprising that we don't have a

1   voluminous history, the cited studies regarding crime.
2       At the time, it was just common sense and reasonable that
3   you would keep gun stores away from residentially-zoned
4   districts.
5       Finally, regarding the long-standing (inaudible)
6   ordinance, it's true it was enacted in 1998, which is 15 years
7   ago.  However, also, in *Drake v. Filco*, it teaches that the
8   analysis of whether an ordinance in long-standing doesn't -- it
9   need not turn the history of the particular ordinance.
10      It doesn't -- It need not turn the history of a particular
11  ordinance in the particular jurisdiction.  In fact, they look
12  to comparable laws in other cities and states in that case
13  regarding the Open Carry law.  And, here, *Heller* already
14  designated regulations on commercial-zoned property of sales of
15  arms that's long-standing.
16      And if -- It doesn't -- Alameda County didn't have to
17  impact this law in 1910 in order for it to be held as a
18  long-standing ordinance.  It was something that was
19  historically regulated.
20          **THE COURT:**  Mr. Hokanson.
21          **MR. HOKANSON:**  Yes.  Thank you, your Honor.
22      *Renton* was around a long time before 1998, and *Renton*
23  deals with what you can and cannot do with your zoning
24  regulations to deal with businesses that you don't want.
25          And, secondarily . . .

1    Sometimes, it's difficult to present this side of the
2 argument because it's very easy to say, well, gun sales, you
3 know, don't want them around.  Neighborhoods, you don't want
4 them around.  Bars, you don't want them around.
5    It's very easy to conclude that without thinking.  But you
6 really have to think about them.  And you have to think about
7 what interest does a local legislative body have in deciding
8 whether or not a given building is occupied by a gun store or a
9 general retailer?  Really, not much.
10    There's certainly no evidence in this record that there
11 are any secondary offense from -- from a gun store, that it
12 would decrease property values or lead to crime.
13    Certainly, I would say that the inferences are to the
14 contrary, because is so highly regulated at the Federal and
15 State level.
16        **THE COURT:**  But isn't that a distinction between all
17 those other stores?  Isn't that a reason why the County might
18 want to take a different look if it is close to a store, the
19 drugstore or something like that?
20        **MR. HOKANSON:**  Two responses, Your Honor.  The first
21 one is -- is no, because, the -- from a city's level, those
22 kinds of regulations don't matter any more than Federal
23 regulations related to a bank matter.  That's not within the
24 city's purview.
25    But second -- But the second answer is really a more

```
 1  direct answer, and that's this:  The city didn't do that.  The
 2  city didn't -- Notwithstanding what counsel has told you about
 3  the city made this substantial judgment, and this and that, the
 4  fact of the matter is, from the record that they supplied, you
 5  can see that that is not the case.
 6       There is nothing in the legislative record that says
 7  anything other than, "We want to regulate firearm sales," and
 8  that's not their job.
 9          THE COURT:  All right.  Well, let's move on and --
10  Unless you have anything you want to add, let's move on to the
11  equal protection claims.
12       And I just -- I want to make sure -- You said this in the
13  brief and I just want to make sure that I'm not missing
14  anything else.
15       The equal protection claim that you have is that there's
16  no justification for disparate treatment of gun shops vis-à-vis
17  other commercial retailers.
18          MR. HOKANSON:  That's correct.  That's part of it.
19          THE COURT:  Well, it's --
20          MR. HOKANSON:  That's the main part, Your Honor.
21  That's what is in issue in this motion.
22       The First Cause of Action alleges a class of -- of one
23  intentional treatment.
24       And our -- our response to the motion focused, rather, on
25  the second claim and one of the paragraphs in the first claim
```

1  that focuses on the fact that gun stores are treated
2  differently than -- than retailers, general retailers.
3        **THE COURT:**  And so, then, the -- the argument of
4  public safety.  Why doesn't public safety differentiate your --
5  your gun shop and the drugstores and the other commercial
6  retailers?
7        **MR. HOKANSON:**  Sure.  Again, it's a two-fold answer.
8       The first answer is, there's no evidence in the record
9  that gun stores are any more dangerous or invite unsavory
10 characters or -- or have any secondary effects on the
11 neighborhood that another general retailer wouldn't have.
12 There really is nothing here.
13      You can say public safety, but parroting those words
14 doesn't get you through the legislative door.  It doesn't get
15 you the evidence that -- that this is an appropriate statute to
16 address the substantial interest.
17      Without the -- And here it gets to the second part.
18 Without those legislative findings, and without some basis when
19 the statute was enacted, to say that this statute is addressed
20 to secondary effects, there's no way you can say that it is not
21 content-based and, therefore, presumptively invalid.
22      There is no evidence in the record.  And, in fact, the
23 record says pretty clearly that that kind of:  Why are we doing
24 this?  What are we trying to achieve?  What's the evidence that
25 there's a problem here that we're trying to address?  The

1  record is very clear that none of that ever happened and, on
2  that basis alone, the statute should be invalid.
3         **THE COURT:** Miss Stonework-Hand.
4         **MS. STONEWORK-HAND:** There's actually a California
5  case, *City of -- City of Lafayette*, that says it is reasonable
6  to keep gun stores away from residentially-zoned districts
7  simply because gun stores are heavily regulated, their patrons
8  are heavily regulated, their owners are heavily regulated, and
9  exactly the type of person should not be in a gun store can
10 be -- can be attracted to that area so there is secondary
11 effect.
12     And it is public safety to keep them away from the
13 (inaudible) but it is a part of the burden of (inaudible).
14        **THE COURT:** What about the *City of Lafayette* case,
15 Mr. Hokanson?
16        **MR. HOKANSON:** Very limited case, said that gun --
17 said that zoning can address -- I guess I shouldn't
18 characterize it as "very limited."
19     It said that zoning can address gun shops. It did not say
20 that the legislature could do away with the findings of -- the
21 legislative findings necessary in order to regulate.
22        **THE COURT:** Do you have anything further, Miss Hand?
23        **MS. STONEWORK-HAND:** (Shaking head.)
24        **THE COURT:** So another thing that I'm thinking about
25 is, if I end up sticking with where I'm tentatively going, are

1   there other facts, Mr. Hokanson, that you would want and be
2   able to need to address the concerns that Judge Illston has
3   expressed and that I've expressed here?
4           **MR. HOKANSON:**  Well, you never want to give up --
5           **THE COURT:**  No, I --
6           **MR. HOKANSON:**  -- the bigger part of the apple; right?
7   Because --
8           **THE COURT:**  I've been -- I've been where you're
9   standing.  I just -- The -- This is an issue that ultimately
10  you'll probably seek some other review and -- but -- but I
11  just -- I'd like to know whether there's something else that's
12  there that -- that you would want to take another crack at the
13  pleading.
14          **MR. HOKANSON:**  I really don't think so, Your Honor.  I
15  think that we have -- we have pled the sufficient facts.
16       If -- If Your Honor decides against us, you know, we'll --
17  we'll go forward.
18          **THE COURT:**  So, I will take this under advisement and
19  I am -- and -- and I'll try and get an order out pretty
20  quickly.
21       And -- And then I appreciate your candor and -- and the
22  arguments of both of you today were quite good.
23       And I don't think there's much reason to have a Case
24  Management Conference at the moment.  If -- If we come back,
25  then we can deal with scheduling at that time.

Candace Yount, CSR# 2737, RMR, CCRR
Contract Court Reporter - United States District Court

1        **MR. HOKANSON:** Very well.
2        **MR. KILMER:** Thank you, Your Honor.
3        **THE COURT:** Anything else?
4        **MS. STONEWORK-HAND:** Thank you, Your Honor.
5             (Speaker not at microphone:)
6        **UNIDENTIFIED SPEAKER:** On the case management, would
7   the Court's order (inaudible) case management (inaudible)?
8        **THE COURT:** What we would end up doing is, if I allow
9   leave to amend, when we came back here, I suspect there would
10  be another motion to dismiss and then we could deal with it at
11  that time.
12       **UNIDENTIFIED SPEAKER:** All right. (Inaudible)?
13       **THE COURT:** Yes.
14     All right. Thanks very much.
15       **UNIDENTIFIED SPEAKER:** Thank you, Your Honor.
16            (The proceedings concluded at 2:22 p.m.)

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____

Candace Yount, Contract Transcriber

Friday, March 7, 2014